UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA             :
                                     :
            -v.-                     :          S1 10-CR-654 (H.B.)
                                     :
DOMINICK P. CAROLLO,                 :
STEVEN E. GOLDBERG, and              :
PETER S. GRIMM,                      :
                                     :
            Defendants.              :
                                     :
———————————————————————              :

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION
TO DISMISS THE SUPERSEDING INDICTMENT AS TIME-BARRED AND
TO COMPEL THE PRODUCTION OF A DETAILED BILL OF PARTICULARS**

Howard E. Heiss
Mark A. Racanelli
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
*Attorneys for Defendant Peter S. Grimm*

John S. Siffert
Daniel M. Gitner
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, New York 10110
Telephone:  (212) 921-8339
*Attorneys for Defendant Steven E. Goldberg*

Walter F. Timpone
MCELROY, DEUTCH, MULVANEY &
CARPENTER LLP
1300 Mt. Kemble Ave.
Morristown, NJ 07962
Telephone:  (973) 993-8100
*Attorneys for Defendant Dominick P. Carollo*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ...................................................................................................................... 3

I.     The Superseding Indictment Should be Dismissed as Time-Barred. ............................... 3

       A.     The GIC Transactions Specified in the Indictment Are Time-Barred. ................. 4

       B.     The Government's "Stream of Payments" Theory Does Not Extend the
           Limitations Period ...................................................................................................... 5

           1.     The Alleged Conspiracies Were Complete when GICs Were Won. ......... 6

           2.     The Routine Interest Payments Were Not Acts "in Furtherance of"
               the Crimes Charged in the Indictment. ...................................................... 9

           3.     The Government's "Stream of Payments" Theory Would
               Essentially Eviscerate the Purpose of the Statute of Limitations. ........... 14

       C.     Count Seven Should Be Dismissed Because the Indictment Fails to Allege
           Any Conduct Whatsoever Within the Limitations Period. ................................. 16

II.    The Government Should be Required to Provide a More Detailed
     Bill of Particulars. ................................................................................................ 16

CONCLUSION ................................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*United States v. Bin Laden*,
   92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) ......................................................... 17

*United States v. Benussi*,
   216 F. Supp. 2d 299 n. 98 (S.D.N.Y. 2002).................................................. 12

*United States v. Colon-Munoz*,
   192 F.3d 210 (1st Cir. 1999)............................................................................. 11

*United States v. Crossley*,
   224 F.3d 847 (6th Cir. 2000) ......................................................................... 5, 6

*United States v. Davidoff*,
   845 F.2d 1151, 1154 (2d Cir. 1988) ............................................................ 17

*United States v. De La Mata*,
   266 F.3d 1275 (11th Cir. 2001) ................................................................. 13, 15

*United States v. Doherty*,
   867 F.2d 47 (1st Cir. 1989)..................................................................... *passim*

*Fiswick v. United States*,
   329 U.S. 211 (1946)............................................................................... 11, 15

*Grunewald v. United States,*
   353 U.S. 391 (1957).................................................................... 5, 9, 11, 15

*United States v. Hare*,
   618 F.2d 1085 (4th Cir. 1980) ........................................................ 12, 13, 15

*United States v. Hitt*,
   249 F.3d 1010 (D.C. Cir. 2001) ................................................................. 6, 13

*Krulewitch v. United States*,
   336 U.S. 440 (1949)........................................................................................ 15

*United States v. Marion*,
   404 U.S. 307 (1971)......................................................................................... 1

*United States v. Nacchio*,
   2006 WL 2475282 (D. Colo. 2006) .......................................................... 17

*United States v. Salmonese*,
   352 F.3d 608 (2d Cir. 2003).................................................................. 11, 12

*United States v. Southland Corp.*,
   760 F.2d 1366 (2d Cir. 1985)...................................................................... 4

*United States v. Savin*,
   2001 WL 243533 at *4 (S.D.N.Y. 2001) ................................................. 17

*Toussie v. United States*,
   397 U.S. 112 (1970)........................................................................... 12, 14, 16

*United States v. Roshko*,
   969 F.2d 11 (2d Cir. 1992)............................................................................. 6

*United States v. Walsh*,
   194 F.3d 37, 47 (2d Cir. 1999) ................................................................... 16

**Statutes**

18 U.S.C. § 1343 .................................................................................. 2, 4, 16

18 U.S.C. § 201 .......................................................................................... 12

18 U.S.C. § 3282 .......................................................................................... 4

18 U.S.C. § 371 ......................................................................................... 2, 4

26 U.S.C. § 6531 .......................................................................................... 4

## INTRODUCTION

Defendants respectfully submit this joint motion to dismiss the Superseding Indictment as time-barred and to compel the production of a detailed bill of particulars.

The conduct alleged in the Superseding Indictment is long outdated. Of the seven guaranteed investment contract ("GIC") transactions charged, either as overt acts or a substantive offense, *not one* occurred within six years of the government's initial Indictment—the longest statutory limitations period that applies in this case. Indeed, all but three are approximately a decade old (or more), and the three most "recent" deals are more than seven years old.

To try to save its Indictment, the government alleges as overt acts certain required, back-office interest payments that relate to the transactions but that were made years later. The Indictment itself is clear, however, that the conspiracies alleged were complete when the GICs were awarded; any payments thereafter were not the object or acts in furtherance of any conspiracy. Moreover, the government's theory—that routine, administrative interest payments (made years, and sometimes *decades* after the GICs were won) can qualify as acts in furtherance of a conspiracy—would essentially eviscerate the statute of limitations in this case, allowing the government to bring these charges, if it chose, *as late as the year 2038*. That result is unsustainable as a matter of law and equity. The "irrebuttable presumption" when an indictment is based on such outdated conduct is that a "defendant's right to a fair trial would be prejudiced." *See United States v. Marion*, 404 U.S. 307, 322 (1971). Because the Indictment is deficient on its face, it should be dismissed.

If the Court does not dismiss the Indictment in its entirety, the government should be ordered to provide a more detailed bill of particulars. A bill of particulars is required in this case

to enable the defendants to understand the scope of the charges against them, prepare adequately for trial, and make sense of the massive discovery that the government has produced.

## STATEMENT OF FACTS

The Superseding Indictment alleges six conspiracy counts (Counts One through Six) and one count of substantive wire fraud (Count Seven).  The Indictment alleges that the defendants engaged in an industry-wide conspiracy to defraud certain municipal GIC issuers and the IRS. Counts One through Six each charge a conspiracy, in violation of 18 U.S.C. § 371, with two objects:  (i) to defraud municipal issuers by winning GICs in order to obtain pools of bond proceeds, in violation of 18 U.S.C. § 1343, and (ii) to obstruct the IRS' collection of taxes it was allegedly owed, in violation of 18 U.S.C. § 371 (a *Klein* conspiracy).  All defendants are named in Counts One through Three, Mr. Grimm alone is named in Count Four, and Mr. Goldberg alone is named in Counts Five and Six.  Count Seven charges Messrs. Carollo and Goldberg with wire fraud, in violation of 18 U.S.C. § 1343.

Nearly all the conduct alleged in the Indictment is undated.  For instance, in each conspiracy count the government outlines the "manner and means" by which each conspiracy was supposedly carried out and overt acts purportedly undertaken in furtherance of each conspiracy.  *See, e.g.,* Indictment at ¶¶ 21(a)-(k); 22(a)-(g).  The "manner and means" and overt acts recited are essentially repeated verbatim for each conspiracy, and the government provides no dates at all for almost all of that alleged conduct.

The only specific, dated conduct alleged in the Indictment relates to particular GIC transactions that the government asserts as overt acts for the conspiracy counts and as the subject of the substantive wire fraud count.  Specifically, the Indictment makes allegations about (i) the

bidding for and award of particular GICs, and (ii) interest payments defendants' employers made on those GICs—payments made sometimes years after the GICs were won.

As explained below, however, *not one* of the GIC transactions alleged in the Indictment was bid on or won within the limitations period. The bidding on each of those GICs—which is the conduct at the heart of the fraud the government alleges in this case—indisputably is time-barred. It is also undisputed that each of those GICs was awarded to defendants' employers beyond the limitations period.

The only conduct the Indictment alleges that is *not* time-barred consists of the contractually-required interest payments the defendants' employers made to the issuers under the GICs. Pursuant to the terms of each GIC, which varied from contract to contract, GIC providers were required to make these interest payments to municipal issuers, sometimes years or even decades into the future.

For instance, Count Four describes a GIC that Mr. Grimm bid on in December 2002. His conduct associated with that bid is plainly beyond the limitations period. But that count also alleges that four years later—in November 2006—Mr. Grimm's then-employer made an interest payment on that GIC. While that payment is within the limitations period, as explained below it is also plainly not an overt act in furtherance of the alleged conspiracy. Moreover, under the terms of that particular GIC, the interest payments on that GIC are scheduled to continue through the year 2032.

## **ARGUMENT**

## I.   **The Superseding Indictment Should Be Dismissed as Time-Barred.**

None of the relevant conduct alleged in the Indictment is within the applicable limitations period. The Indictment is therefore deficient on its face and should be dismissed.

## A.      The GIC Transactions Specified in the Indictment Are Time-Barred.

As noted above, the Superseding Indictment charges varying groups of defendants in six conspiracies, in violation of 18 U.S.C. § 371.  Each conspiracy alleges two objects:  (i) to defraud municipal issuers in violation of 18 U.S.C. § 1343 and (ii) to obstruct the functions of the IRS in violation of 18 U.S.C. § 371.  The Indictment also charges defendants Carollo and Goldberg with wire fraud in violation of 18 U.S.C. § 1343.

Wire fraud carries a five-year statute of limitations, while the statute of limitations on *Klein* conspiracies is six years.  18 U.S.C. § 3282(a); 26 U.S.C. § 6531(1).  The government brought the initial Indictment on July 27, 2010.  To fall within the wire fraud limitations period, therefore, the government must specify an overt act in furtherance of the fraud (for the conspiracy charges) and a fraudulent wire communication (for the substantive charge) that took place on or after ***July 27, 2005***.  And to sustain the charge of conspiracy to obstruct the IRS, the government must specify an overt act in furtherance of that conspiracy occurring on or after ***July 27, 2004***.[1]  The Indictment does neither:

- The overt act alleged in Count One is based on a GIC transaction that occurred in ***May 2004***;

- The overt act alleged in Count Two is based on a GIC transaction that occurred on ***January 10, 2002***;

- The overt act alleged in Count Three is based on a transaction that occurred in ***November 2000***;

- The overt act in Count Four is based on a transaction that occurred in ***December 2002***;

- The overt act in Count Five is based on a transaction that occurred in ***September 2002***;

---

[1]  *See United States v. Southland Corp.*, 760 F.2d 1366 (2d Cir. 1985) (In a dual-object conspiracy case in which each object carried a different statute of limitations, affirming special verdict jury charge instructing that in order to convict the defendant of a conspiracy to violate the Travel Act the jury had to find an overt act within five years of the return of the indictment but to convict the defendant of a conspiracy to defraud the United States, it needed to find an overt act within six years.).

- The overt act in Count Six is based on a transaction that occurred in ***January 2004***; and

- The only transaction mentioned in Count Seven, the substantive count, occurred on ***October 23, 2003***.

Every one of the GIC transactions specified in the Indictment, therefore, is time-barred.

### B.   The Government's "Stream of Payments" Theory Does Not Extend the Limitations Period.

The government tries to avoid this flaw in its Indictment by relying on a theory that is unworkable:  it alleges as overt acts routine interest payments that defendants' employers were required to make on the GICs they won.[2]  The government asserts that some of those scheduled payments, which continued for years after the GICs were awarded, were made within the limitations period (even though the underlying GICs themselves indisputably were won beyond that period).  For example, Count One alleges that defendants' employer made interest payments from July 2004 through November 1, 2005, on a GIC awarded in May 2004; Count Two alleges an interest payment made on June 20, 2006, on a GIC won in January 2002; and Count Three alleges an interest payment on June 30, 2006, on a GIC won in November 2000.

As explained below, however, in trying to solve its statute of limitations problem the government reaches for "overt acts" that are not in furtherance of the conspiracies, as they must be.  *See Grunewald v. United States*, 353 U.S. 391, 396 (1957) (reversing a conspiracy conviction where the government failed to prove "that at least one overt act in furtherance of the conspiracy was performed" within the applicable statutory period).  The only reasonable reading of the Indictment is that the charged conspiracies were complete when the GICs were bid on and

---

[2]  As we discuss in Section I.C., with respect to the substantive wire fraud charge, Count Seven, the government has alleged no conduct at all, including any interest payments, within the five-year limitations period.  The crime of wire fraud is complete at the time of the communication.  According to the Indictment, the relevant communications associated with Count Seven took place in 2003.  The charge is plainly time-barred.  *See United States v. Crossley*, 224 F.3d 847, 859 (6th Cir. 2000) (concluding "that the offense of mail fraud is completed and the statute of limitations begins to run on the date on which the defendant, depending on the specific use of the mails charged in the indictment, 'places,' 'deposits,' 'causes to be deposited,' 'takes,' or 'receives' mail, or 'knowingly causes' mail 'to be delivered' as part of the execution of a scheme to defraud").

awarded.  The Indictment does not allege *any continuous conduct at all by defendants after the GICs were awarded*, let alone conduct supposedly in furtherance of the conspiracies.  The only conduct alleged after those awards, and within the limitations period, was the required payment by defendants' employers of interest on GICs they won.  But those payments were not acts in furtherance of the conspiracies; they were the automatic, routine, and administrative consequences of winning a GIC.

Moreover, the government's argument would eliminate the purpose of having a statute of limitations.  For many GICs, the scheduled interest payments continued *for decades*.  Under the government's theory, conduct associated with the bidding on *any* GIC, no matter when it occurred—even as long as 10, 20, or 30 years ago—could be prosecuted today based on a single continuing interest payment.  That position is unsupportable.  It is contrary to law, renders almost meaningless the statute of limitations itself, and violates basic principles of fairness.

### 1.    The Alleged Conspiracies Were Complete when GICs Were Won.

A conspiracy is complete when its central criminal purpose has been attained.  *See United States v. Roshko*, 969 F.2d 11 (2d Cir. 1992); *see also United States v. Crossley*, 224 F.3d 847, 859 (6th Cir. 2000) (to determine the appropriate date from which the statute of limitations period runs, the court looks to "the date on which the defendant completed the crime").  The Indictment itself shows that the charged conspiracies were complete at the time the GICs were awarded.  Because that happened beyond the limitations period, the conspiracies are time-barred. *See United States v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001) ("To determine the scope of the alleged conspiratorial agreement, the court is bound by the language of the indictment.").

The Indictment could not be clearer that the alleged purpose of the charged conspiracies was for defendants and others *to win GICS*.  Defendants and other GIC providers allegedly wanted access to pools of bond proceeds raised by municipal issuers that the issuers intended to

invest until they were ready to spend that money on government projects.  See Superseding

Indictment at ¶¶ 9-11.  The providers obtained access to those proceeds by winning GICs—the

vehicles by which the issuers invested the bond proceeds.  *Id.* at ¶¶ 10-11.  According to the

Indictment, defendants and others unfairly obtained those GICs—and therefore unfairly obtained

the issuers' bond proceeds—by engaging in certain conduct that allowed them to win the GICs

on favorable terms.  *Id.* at ¶¶ 19-20.  This alleged conduct included getting "last looks" from GIC

brokers, giving them "courtesy bids" and making "swap payments."  As a result of this conduct,

the Indictment alleges, the issuers were deprived of their money or the right to control their

assets, and the IRS was obstructed in the collection of taxes it was supposedly owed.  *See id.*

The government's theory has always been that the issuers were entitled to better terms on the

GICs, and that they would have done something else with their money if they knew how the

GICs had been bid.  And the IRS allegedly was harmed because higher interest rates on the GICs

would have increased the chance that some money would have been returned to the Treasury as

tax arbitrage.

     Even crediting that theory, however, the objective of the alleged conspiracies would have

been met when the GICs were won and the bond proceeds were invested.  Any benefit to

defendants and any harm to the issuers or the IRS plainly would have occurred *when GIC*

*agreements were entered into and their terms were set.*

     The Indictment makes this point clearly.  For instance, it alleges that a key object of the

wire fraud conspiracies was to deprive municipal issuers of money by "*causing them to award*

*investment agreements and other municipal finance contracts*" on improper terms.  *See id.* at

¶¶ 19, 27, 35, 44, 54, & 61 (emphasis added).  The Indictment also specifies a number of

"manner and means" by which each of the alleged conspiracies was carried out, which are almost

identical for each conspiracy.  Nearly every one of these "manner and means" concerns conduct associated with the bidding for, and award of, the relevant GICs.  The Indictment alleges that the conspirators did the following:

- Sought to control "*the bidding for*" GICs.  Superseding Indictment at ¶¶ 21(a), 29 (a), 37(a), 46(a), 56(a), & 63(a);

- Agreed on who "should and should not be solicited to *submit bids* for particular" GICs.  *Id.* at ¶¶ 21(b), 29 (b), 37(b), 46(b), 56(b), & 63(b);

- Discussed pricing, price levels, conditions "or other information *related to competing providers' bids*," determined what the provider's bids would be and submitted "*intentionally losing bids*."  *Id.* at ¶¶ 21(c), 21(d), 21(e), 29 (c), 29 (d), 29 (e), 37(c), 37(d), 37(e), 46(c), 46(d), 46(e), 56(c), 56(d), 56(e), 63(c), 63(d), & 63(e);

- Paid kickbacks to brokers "in exchange for [the brokers'] assistance in *controlling and manipulating the competitive bidding process*."  *Id.* at ¶¶ 21(f), 29 (f), 37(f), 46(f), 56(f), & 63(f);

- Made allegedly false statements and certifications that the "*bidding process*" complied with Treasury regulations.  *Id.* at ¶¶ 21(g), 21(h), 29 (g), 29 (h), 37(g), 37(h), 46(g), 46(h), 56(g), 56(h), 63(g), & 63(h); and

- Caused issuers "*to award*" GICs they would not have awarded if they "had true and accurate information *regarding the bidding process*."  *Id.* at ¶¶ 21(i), 29 (i), 37(i), 46(i), 56(i), & 63(i).

The Indictment also includes as a "means" of the conspiracy an allegation that the co-conspirators "perform[ed]" GICs "at artificially determined or suppressed rates that deprived and will continue to deprive" issuers of money.  *See, e.g., id.* at ¶ 21(j).  Presumably, the government crafted that language to try to bring within the conspiracies the interest payments made on the GICs after they were awarded.  But the allegation cannot obscure what is obvious from the rest of the Indictment:  the supposedly "artificially or suppressed rates" at issue were determined during the bidding, and the only reason they purportedly "deprived and will continue to deprive"

the issuers of money is due to what the government believes is an insufficient interest rate set at the time the GICs were awarded.[3]

It is plain from the Indictment, then, that the alleged conspiracies were complete when the GICs were bid on and won, and their terms were determined. If there was a moment when the defendants supposedly received a benefit at the expense of the issuers and IRS, it would have been then. And it is undisputed that *all of that* happened beyond the limitations period for the GICs alleged in the Indictment.

> **2.    The Routine Interest Payments Were Not Acts "in Furtherance of"
> the Crimes Charged in the Indictment.**

The only conduct alleged in the Indictment that occurred within the limitations period is the routine, scheduled interest payments defendants' employers made for years after they were awarded the GICs. To be sure, the government labels these payments acts "in furtherance" of the conspiracies, but the government's saying it does not make it so. *See Grunewald*, 353 U.S. at 397 (1957) (holding that it is for the Court, not the government, to decide "whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy" based on the "scope of the conspiratorial agreement").

The interest payments providers made after they won GICs were contractually required and routine. They were part of the process of administering GICs that had been awarded—and whose interest rates had been set—years earlier. The law draws a sharp distinction between conduct that is the apparent object of a conspiracy and conduct that ineluctably flows from that

---

[3] The Indictment also alleges a litany of overt acts for each conspiracy count which essentially mirror the "manner and means" allegations. *See, e.g.*, Superseding Indictment at ¶¶ 22(a)-22(g). But other than specific GIC transactions alleged (which are beyond the limitations period) and interest payments made on those transactions (which are not acts in furtherance of the conspiracies, as explained below), the government provides no date whatsoever for any of those overt acts.

conduct. The automatic, follow-on interest payments the government calls "overt acts" are the result, not the object, of the charged conspiracies.

*United States v. Doherty*, 867 F.2d 47 (1st Cir. 1989), is directly on point. In *Doherty*, the defendants were charged with conspiring to steal copies of police promotional exams in advance of the test with the goal of obtaining promotions and increased salaries. *Id.* at 51. One defendant received a stolen exam, and after taking the test was promoted to sergeant in 1979. The indictment was brought on July 29, 1986. The government needed to prove that there was an overt act in furtherance of the conspiracy on or after July 29, 1981. Attempting to stretch the statute of limitations to do that, the government relied on continuing salary payments the defendant received after July 29, 1981 (after he had received the stolen exam and was promoted to sergeant). On appeal, the court rejected the government's contention that a defendant's mere "receipt of salary payments after July 1981 can count as an 'overt act' for statute of limitations purposes" when the central goal of the conspiracy had been obtaining the exams years earlier. *Id.* at 61.

Writing for the court, then-Judge Breyer dismissed the government's argument that a conspiracy is not complete until its final "payoff" is received. The court ruled that "where receiving the payoff merely consists of a lengthy, indefinite series of ordinary, typically non-criminal, unilateral actions, such as receiving salary payments, *and* there is no evidence that any concerted activity posing the special societal dangers of conspiracy is still taking place, we do not see how one can reasonably say that the conspiracy continues." *Id.* The court held that the on-going receipt of payments is merely the result of the conspiracy—scheduled to continue long after any active cooperation had ceased—and cannot extend the conspiracy after its central goal has been achieved. *Id.* at 61-62.

The court relied on the Supreme Court's decision in *Fiswick v. United States*, 329 U.S. 211, 216 (1946), which held that even "[t]hough the result of a conspiracy may be continuing, the conspiracy does not thereby become a continuing one. *Continuity of action to produce the unlawful result, or . . . 'continuous cooperation of the conspirators to keep it up,' is necessary.*" *Id.* at 61 (emphasis added). Applying that principle, the court in *Doherty* found that the goal of the conspiracy was achieved—and the crime complete—at the time the defendant received his promotion, two years before the statutory period expired. *Id.* at 62. Because the government only alleged routine, unilateral receipt of payments within five years of the indictment, and did not allege any continuing cooperative conduct that posed any special dangers attendant to conspiracies, the charges were time-barred. *Id.* The court noted that a contrary result "would for all practical purposes wipe out the statute of limitations in this kind of conspiracy." *Id.* (citing *Grunewald*, 353 U.S. at 402); *see also United States v. Colon-Munoz*, 192 F.3d 210, 228-29 (1st Cir. 1999) (repayment of a bank loan years after loan funds were allegedly used to obtain property fraudulently does not extend the limitations period since there was "no allegation that [the defendant's] repayment of the . . . loan was itself illegal or that it involved the type of concerted activity through which conspiracies pose 'special societal dangers'"; a "conspiracy does not continue indefinitely simply because the fruits of the conspiratorial objective continue into the future") (citing *Doherty*, 867 F.2d at 61).

The Second Circuit has recognized and applied *Doherty's* reasoning. In *United States v. Salmonese*, 352 F.3d 608 (2d Cir. 2003), the Second Circuit distinguished the payments at issue in *Doherty* from the defendant's receipt of proceeds from the sale of fraudulently acquired securities, which was the only conduct alleged within the limitations period in that case. Unlike the "lengthy, indefinite series of ordinary, typically noncriminal, unilateral" payments in

11

*Doherty*, the defendant's receipt of proceeds occurred "within ten weeks" of when he obtained them. *Id.* at 616. Moreover, the entire purpose of the charged conspiracy in *Salmonese* was to sell securities and obtain the proceeds: "the receipt of benefits *depended on* selling the stripped warrants before their inflated market price collapsed." *Id.* (emphasis added). It was clear, therefore, that sale of the securities was not the *result* of the conspiracy, as the payments were in *Doherty*, but its object. *Cf. United States v. Benussi*, 216 F. Supp. 2d 299, 312 n. 98 (S.D.N.Y. 2002) (recognizing *Doherty* but holding that receipt of payments in that case, unlike in *Doherty*, constituted "one action, or a handful of actions, taking place over a limited period of time").

The Fourth Circuit, in *United States v. Hare*, 618 F.2d 1085 (4th Cir. 1980), reached the same result as *Doherty* on similar facts. In *Hare*, an IRS agent was indicted for violating 18 U.S.C. § 201(g), which makes it unlawful for a public official to receive anything of value because of the performance of an official act. *Id.* at 1086. That crime carries a five-year statute of limitations. *Id.* The indictment alleged that defendant unlawfully received an $11,000 loan with favorable interest and payment provisions. *Id.* Defendant received the loan in 1970, but the indictment was not returned until 1979. *Id.* To try to bring the conduct within the limitations period, the government argued that defendant "continued to receive the benefits of the loan (a favorable interest rate, liberal payment provisions, and an absence of late payment penalties) until he paid off the debt in January, 1975." *Id.* The court rejected that argument—an argument essentially identical to the one the government makes here:

> If the government's argument were accepted, the term of the loan would determine the application of the statute of limitations. *For example, a twenty-five year loan would permit prosecution under § 201(g) thirty years after the terms of the loan had been fixed and the loan proceeds had been received by the errant public official.* Such a result would be contrary to the Supreme Court's admonition in *Toussie v. United States*, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d

156 (1970), that federal statutes of limitations should be applied
strictly in order to further the congressional policy favoring repose.

*Id.* at 1086-87 (emphasis added).

The *Hare* court held that the crime was complete when the loan was obtained: "the

statutory period began running when the loan was received by the defendant . . . *and that . . .*

*statutory period did not begin to run anew each time the defendant made a payment subject to a*

*favorable interest rate . . . ." Id.* at 1087 (emphasis added). *See also United States v. Hitt*, 249

F.3d 1010 (D.C. Cir. 2001) (affirming dismissal of a wire fraud conspiracy on limitations

grounds where the only overt acts within the statutory period were shipments made after an

export license had been illegally obtained, noting that the shipments were not in furtherance of

the conspiracy because the conspiratorial goal had already been obtained); *United States v. De*

*La Mata*, 266 F.3d 1275, 1289 (11th Cir. 2001) (rejecting government's argument that

limitations period extended for as long as defendants received allegedly illegal lease payments;

"Taken to its logical conclusion, the collection of rents on a lease obtained by fraud, for a term of

99 years, would toll the statute of limitations for 99 years.  We think this goes too far.").

Obtaining GICs at favorable terms was the alleged object of the conspiracies charged in

this case, just like obtaining a loan on favorable terms was the object in *Hare*.  As with the loan

in *Hare*, the statutory period does not "run anew each time [a] defendant made a payment subject

to a favorable interest rate."  The only conduct alleged within the limitations period here is

unilateral, required,  interest payments made by defendants' employers for years following the

award of a GIC.  This is precisely the kind of "indefinite series of ordinary, typically non-

criminal, unilateral actions" that the court in *Doherty* ruled could not extend the statute.  The

alleged conspiracy in no way depended on the periodic interest payments on these GICs years

into the future.

Indeed, other than the payment by defendants' employers of that interest, the Indictment alleges no coordinated, continuing conduct by anyone—in fact, it does not allege that anyone did anything whatsoever—within the limitations period.  Like the receipt of salary payments in *Doherty*, those interest payments were made "well after, and isolated from, all other concerted activities" and posed "no further risk of conspiracy-associated dangers."  *Doherty*, 867 F.2d at 62.  In short, the interest payments, like the continuing salary payments in *Doherty*, were the "'result' of, not an act in furtherance of, the conspiracy."  *Id.*

### 3.      The Government's "Stream of Payments" Theory Would Essentially Eviscerate the Purpose of the Statute of Limitations.

The notion that the limitations period governing criminal prosecutions could depend on varying contractual obligations that can extend for decades is contrary to settled principles of fairness embedded within the statute of limitations itself.

The Supreme Court has held that a statute of limitations is "designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past."  *Toussie*, 397 U.S. at 114-15.  Under the government's theory, however, conduct relating to a GIC bid could be prosecuted until the very last interest payment on that GIC is made—which in some instances can be 20 or 30 years after the GIC was awarded.

Indeed, the scheduled interest payments for one GIC at issue in the Indictment in this case—the New Mexico Educational Assistance Foundation Senior Series, cited in Count Four— are set to continue until 2032.  It is the government's position that it could bring this prosecution against Messrs. Carollo, Goldberg, and Grimm with respect to that GIC—a GIC bid in 2002— ***as late as the year 2038***, as long as interest payments continued to be made.  But that is exactly the

extreme position rejected by the court in *Doherty* when it noted, "[p]resumably, in the government's view, if one successfully conspires to obtain a lifetime annuity through fraud, each monthly payment until the conspirator's death would constitute an overt act." 867 F.2d at 61. This extreme position was also rejected in *Hare* and *De La Mata*. *See Hare*, 618 F.2d at 1086-87; *De La Mata*, 266 F.3d at 1289. Permitting the government to proceed on its stream of payments theory would result in an essentially indeterminate extension of the statute of limitations, which the law forbids. *See Krulewitch v. United States*, 336 U.S. 440 (1949) ("[T]he assumption of an indefinitely continuing offense would result in an indeterminate extension of the statute of limitations."); *Grunewald*, 353 U.S. at 402 ("Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators."); *Fiswick*, 329 U.S. at 216 ("Though the result of a conspiracy may be continuing, the conspiracy does not thereby become a continuing one.").

Allowing the government to prosecute such outdated conduct also impedes the defendants' ability to defend themselves. It will be nearly impossible for defendants and witnesses to recall the details of transactions that occurred so long ago (some more than a decade old now), especially when there were *thousands* of GIC transactions during the seven-year span of the alleged conspiracy (1999 to 2006). But those details are critical. Evidence showing *why* a defendant bid the way he did on a particular transaction—the specifics of the GIC that would have led him to lower a bid, the nature of the relationship with a particular broker, whether the broker was playing the defendant against other providers so that the defendant would raise his bid—are critical to the defense in this case. We submit that those details are exculpatory. If, due to the age of these transactions, witnesses are unable to recall those specifics, the defendants will

be severely prejudiced.  That is precisely what the statute of limitations is designed to prevent.

*See Toussie*, 397 U.S. at 114-15.

> **C.**     **Count Seven Should Be Dismissed Because the Indictment Fails to Allege Any Conduct Whatsoever Within the Limitations Period.**

Count Seven charges defendants Goldberg and Carollo with the substantive offense of

defrauding a state authority in violation of 18 U.S.C. § 1343, an offense with a five-year statute

of limitations.  In connection with the alleged wire fraud, Carollo and Goldberg are charged with

paying a kickback to a brokerage firm, relating to an unidentified investment agreement for an

unidentified state authority.  This "scheme" was allegedly devised in October 2003, with the

arrangements for the payment to be made on or about October 23, 2003, and the actual payment

made, via interstate wire transfer, on November 3, 2003 (two weeks later).  In short, the count

describes activity that allegedly took place almost seven years before government brought the

Indictment, and contains *no* allegations of any conduct whatsoever within the limitations period.

It should be dismissed.[4]

## II.     The Government Should Be Required To Provide A More Detailed Bill of Particulars

A bill of particulars is necessary in this case to enable the defense to understand the scope

of the charges in the Indictment and to prepare adequately for trial.  A bill of particulars

"advise[s] the defendant of the specific acts of which he is accused."  *United States v. Walsh*, 194

F.3d 37, 47 (2d Cir. 1999).  In that regard, the government should provide a bill of particulars

that permits defendants "to identify with sufficient particularity the nature of the charge pending

---

[4] The government has explained that the new substantive Count Seven charged in the Superseding Indictment against Messrs. Goldberg and Carollo is a single transaction wire fraud based on the same transaction as the original Indictment's Count Twelve, which charged a conspiracy as to Mr. Carollo alone. *See* April 13, 2011 Letter from A. Hill to Judge Baer, page 4, n.2. The original Indictment was filed on July 27, 2010, and the Superseding Indictment was filed ten months later on May 31, 2011. Because Mr. Goldberg was not charged in the original conspiracy count brought in 2010, the government should not have the benefit of the earlier filing as to him, and the conduct in Count Seven is even further outside the statute of limitations.

against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose

a plea of double jeopardy should he be prosecuted a second time for the same offense." *United*

*States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (quoting *United States v. Bortnovsky*, 820

F.2d 572, 574 (2d Cir. 1987) (reversing convictions for failure to provide particulars)).  This is

especially true where discovery is extensive:  "the large volume of material disclosed is precisely

what necessitates a bill of particulars." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234

(S.D.N.Y. 2000).

     In this case, the government has produced a massive amount of discovery, which weighs

further in favor of ordering a more specific bill of particulars.  The government does not "meet

its obligation to provide adequate notice of the charges 'merely by providing mountains of

documents.'" *United States v. Savin*, 2001 WL 243533 at \*4 (S.D.N.Y. 2001) (quoting

*Bortnovsky*, 820 F.2d at 575); *accord Bin Laden*, 92 F. Supp. 2d at 234 ("sometimes, the large

volume of material disclosed is precisely what necessitates a bill of particulars"); *United States v.*

*Nacchio*, 2006 WL 2475282 (D. Colo. 2006) (bill of particulars warranted because "the boxcar

approach [of] . . . dumping vast quantities of documents and information on one's opposing party

does not always elucidate what is going on, so that the [d]efendant can adequately prepare for

trial").  Simply put, large document and data productions do not satisfy the government's

obligation to advise a defendant of the specific acts of which he is accused.  A defendant must

not be forced to "comb through" a "veritable mountain of documents" just to "attempt to guess"

at the contours of the charges. *Savin*, 2001 WL 243533 at \*3.

     Here, the government's June 13, 2011 "voluntary bill of particulars" (the "BOP") lists

242 deals, without identifying—other than in broad generalities—what alleged conduct occurred

in connection with each deal.  Instead, the BOP supplies three broad categories of conduct,

including one category that purportedly encompasses all 242 deals.  Because such a sprawling

BOP does little to identify "with sufficient particularity" defendants' alleged misconduct,

defendants by letters to the government dated June 16 and June 23, 2011, requested a bill of

particulars that would include specific categories of information reasonably necessary to apprise

them of certain essential details of their alleged misconduct.  While the government has not

responded as of the date of this motion, defendants anticipate that it will respond by the due date

for the government's opposition to this motion to compel.  If the government rejects defendants'

requests, defendants will brief this issue more thoroughly in their reply papers.

## CONCLUSION

For the foregoing reasons, the Superseding Indictment should be dismissed as time-barred or the government should be compelled to produce a detailed bill of particulars.

Dated: July 1, 2011
      New York, New York

                                      Respectfully submitted:

                                        Howard E. Heiss
                                        Mark A. Racanelli
                                        O'MELVENY & MYERS LLP
                                        7 Times Square
                                        New York, New York 10036
                                        Telephone:  (212) 326-2000
                                        *Attorneys for Defendant Peter S. Grimm*

                                        John S. Siffert
                                        Daniel M. Gitner
                                        LANKLER SIFFERT & WOHL LLP
                                        500 Fifth Avenue
                                        New York, New York 10110
                                        Telephone:  (212) 921-8339
                                        *Attorneys for Defendant Steven E. Goldberg*

                                        Walter F. Timpone
                                        MCELROY, DEUTCH, MULVANEY &
                                        CARPENTER LLP
                                        1300 Mt. Kemble Ave.
                                        Morristown, NJ 07962
                                        Telephone:  (973) 993-8100
                                        *Attorneys for Defendant Dominick P. Carollo*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>DOMINICK P. CAROLLO, STEVEN E.<br>GOLDBERG, and PETER S. GRIMM,<br><br>Defendants. | S1 10-CR-654 (H.B.) |

## CERTIFICATE OF SERVICE

   I, Emily B. Viglietta, hereby certify that a true and correct copy of the Notice of
Defendants' Joint Motion to Dismiss the Superseding Indictment as Time-Barred and to Compel
the Production of a Detailed Bill of Particulars, and the Defendants' Joint Motion to Dismiss the
Superseding Indictment as Time-Barred and to Compel the Production of a Detailed Bill of
Particulars was served on all parties of record by the Court's ECF system, and by first class mail,
postage prepaid on the following counsel, this 1st day of July, 2011:

| | |
|---|---|
| Antonia Hill, Esq.<br>**U.S. DEPARTMENT OF JUSTICE,**<br>**ANTITRUST DIVISION**<br>26 Federal Plaza, Room 3630<br>New York, New York 10278 | Steven Tugander, Esq.<br>**U.S. DEPARTMENT OF JUSTICE,**<br>**ANTITRUST DIVISION**<br>26 Federal Plaza, Room 3630<br>New York, New York 10278 |
| Kevin B. Hart, Esq.<br>**U.S. DEPARTMENT OF JUSTICE,**<br>**ANTITRUST DIVISION**<br>26 Federal Plaza, Room 3630<br>New York, New York 10278 | Joseph Muoio, Esq.<br>**U.S. DEPARTMENT OF JUSTICE,**<br>**ANTITRUST DIVISION**<br>26 Federal Plaza, Room 3630<br>New York, New York 10278 |

Emily B. Viglietta