UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
  UNITED STATES OF AMERICA
                                              :
          - v-                                :
                                                     **10 CR. 654 (HB)**
                                              :
  DOMINICK P. CAROLLO,                          **OPINION AND ORDER**
  STEVEN E. GOLDBERG, and                     :
  PETER S. GRIMM,
                                              :
                     Defendants.
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Hon. HAROLD BAER, JR., District Judge:**

      Before the Court are three motions for which oral argument took place on Tuesday, August 9, 2011. On July 1, 2011, Dominick Carollo, Steven Goldberg and Peter Grimm ("Defendants") filed a Motion to Dismiss the superseding indictment filed on May 31, 2011 ("the Indictment") as barred by the statute of limitations and a Motion to Compel a Detailed Bill of Particulars, and Defendant Goldberg, joined by Defendant Carollo, filed a Motion to Dismiss several counts as multiplicitous. For the following reasons, the motions are granted in part and denied in part.

      I.   Factual Background

      This case involves conspiracy and wire fraud in connection with various Guaranteed Investment Contracts ("GICs").[1] The Indictment charges Defendants with six counts of conspiracy (Counts 1 through 6) and one count of wire fraud (Count 7). The Indictment alleges that Defendants conspired with various GIC brokers and related entities to manipulate the bidding process to cause GICs to be awarded in a manner that defrauded the issuers and the IRS by artificially lowering the interest rates in the GICs and thereby depriving the issuers of revenue from higher interest rates and the United States from higher tax revenue.

---

[1] In general, financial services companies sell GICs to municipal bond issuers seeking to invest the proceeds of their bond offerings for a specific period of time in exchange for a fixed interest rate. The bond issuers use brokers to obtain bids from competing GIC providers, and the bond issuers award the GIC to the provider who offers the most attractive terms (e.g., highest interest rate).

II.  Analysis

1. **Motion to Dismiss the Superseding Indictment as Barred by the Statute of Limitations**

Wire fraud and general conspiracies carry a five-year statute of limitations, *see* 18 U.S.C. § 3282(a), while the statute of limitations on conspiracies to defraud the United States is six years.  26 U.S.C. § 6531(1).  However, a ten-year statute of limitations applies "if the offense affects a financial institution."  18 U.S.C. § 3293(2).[2]

The Defendants move on the grounds that either a five or six-year statute of limitations applies to all counts and that the conspiracies and wire fraud concluded when the GICs were awarded, and thus fall outside the applicable statute of limitations periods.[3]  The government argues (a) that Counts 4, 5 and 7 are subject to the ten-year statute of limitations because the offenses affected a financial institution and (b) that the interest paid in connection with the GICs at issue in Counts 1 through 6 took place within the applicable statute of limitations period.

   A.  *Whether a ten-year statute of limitations applies to Counts 4, 5, and 7.*

The issue of whether a ten-year statute of limitations applies turns on whether the alleged facts in Counts 4, 5 and 7 "affect a financial institution" within the meaning of 18 U.S.C. § 3293(2).  The government argues that during the time period between six and ten years before the filing of the Indictment, Financial Institutions A and B actively participated in the conduct alleged in Counts 4, 5 and 7 by facilitating illegal kickback payments, exposing those financial institutions to a risk of civil liability and related fines and expenses, and consequently fall within the scope of the language "affects a financial institution."  The Defendants argue that the Indictment does not allege violations pursuant to § 3293, and even if the banks were involved in swaps that affected the fraud, there is no allegation that the banks suffered any actual loss, thus the alleged conspiracies fail the "affects a financial institution" test.

---

[2] The "offense" includes the violation of, or conspiracy to violate, 18 U.S.C. §1343, which defines wire fraud.

[3] *See United States v. Southland Corp.*, 760 F.2d 1366 (2d Cir. 1985) (In a dual-object conspiracy case in which each object carried a different statute of limitations, affirming special verdict jury charge instructing that in order to convict the defendant of a conspiracy to violate the Travel Act the jury had to find an overt act within five years of the return of the indictment but to convict the defendant of a conspiracy to defraud the United States, it needed to find an overt act within six years.).  The conspiracy counts in the Indictment relate back to July 27, 2010, the date the grand jury returned the original indictment.  *See United States v. Grady*, 544 F.2d 598, 601-02 (2d Cir. 1976).  The transactions establishing the GICs and the alleged wire fraud in Count 7 took place before the five and six-year statute of limitations periods but within the ten-year statute of limitations period.  However, the purported subsequent interest payments for Counts 1 through 6 were made within the five and six-year statute of limitations periods.  *See* Indictment ¶¶ 22(g)(iii), 30(g)(iii), 38(g)(iii), 47(g)(iii), 57(g)(iv), 64(g)(iii).

The law appears relatively clear that where illegal activity caused a financial institution to be susceptible to substantial risk of loss and that institution suffered actual loss, its participation in the fraud does not negate the applicability of the ten-year statute of limitations.  In *United States v. Bouyea*, the Court of Appeals held that the word "affects" indicates Congress intended § 3293 to cover actions broader than simply where the financial institution is "the object of the fraud," but to include a situation where, for instance, a $150,000 loss to a subsidiary of a financial institution affects the parent-financial institution.  152 F.3d 192, 195 (2d Cir. 1998); *see also United States v. Serpico*, 320 F.3d 691, 695 (7th Cir. 2003) ("we find it hard to understand how a bank that was put out of business as a direct result of the scheme was not "affected," even if it played an active part of the scheme"); *United States v. Daugerdas, et al.*, No. S3 09 Cr. 581 (WHP) (S.D.N.Y. Apr. 5, 2011) at *2 ("nothing in [§ 3293's] language precludes its application to a financial institution that participated in the fraud."); *United States v. Ohle*, 678 F. Supp. 2d 215, 228-29 (S.D.N.Y. 2010) (holding that a scheme affected a financial institution where a financial institution was "not only exposed to substantial risk but experienced actual losses").

However, the law is less clear regarding whether illegal activity that caused a financial institution to simply be susceptible to risk of loss but where no loss was caused falls within the scope of the language "affects a financial institution."  In *United States v. Agne*, the First Circuit held that "even assuming, without deciding, that being exposed to a risk of loss is sufficient to 'affect' a bank … we cannot agree with the district court that this defendant created such a risk." 214 F.3d 47, 52 (1st Cir. 2000).

Here, the government does not allege that Financial Institutions A and B suffered any actual loss, and merely argues that the kickback arrangements exposed them to a risk of loss without providing much explanation as to what that risk is other than the expenses associated with litigation.  Although Congress intended the language "affects a financial institution" to be broadly construed, *Bouyea*, 152 F.3d at 195, this Court cannot interpret § 3293 to be so broad as to allow a ten-year statute of limitations to apply where, as here, the government has not alleged that the financial institutions suffered any actual loss or at most the risk of loss is *de minimis*. Therefore, § 3293 is not applicable to the present case.  Given that the government has not alleged facts that occurred within the applicable five year statute of limitations period with respect to the wire fraud count, which it conceded at oral argument, Count 7 is dismissed.

> B. *Whether the payment of artificially suppressed interest payments constitutes overt acts in furtherance of the conspiracies in Counts 1 through 6.*

The issue of whether the payment of artificially suppressed interest constitutes overt acts in furtherance of the conspiracies alleged turns on the nature and object of the conspiracies. The government argues that the object of the conspiracies was to "deprive issuers of money by causing them to award investment agreements and other municipal finance contracts at artificially determined or suppressed rates, and to deprive the municipal issuers of the right to control their assets by causing them to make economic decisions based on false and misleading information" and to "defraud the United States … and the IRS by impeding … [the] collection of revenue due … from the municipal issuers." Indictment ¶¶ 19-20. The government contends that the payment of artificially suppressed interest payments constitutes overt acts in furtherance of those conspiracies. The Defendants argue that the object of the charged conspiracies was to win GICs and once accomplished the conspiracies were at an end.

In *United States v. Salmonese*, the Second Circuit held that a conspirator's receipt of anticipated profits from the fraudulent sales of financial instruments is an "overt act in furtherance of an economically-motivated conspiracy" and therefore the indictment alleged an offense within the five-year statute of limitation period. 352 F.3d 608, 616 (2d Cir. 2003). The Court explained that "where a conspiracy's purpose is economic enrichment, the jointly undertaken scheme continues through the conspirator's receipt of 'their anticipated economic benefits.'" *Id*. at 615 (citing *United States v. Mennuti*, 679 F.2d 1032, 1035 (2d Cir. 1982)).[4] However, the Court also recognized that there are some situations where the economic benefit may be too attenuated relative to the aim of the central conspiracy. The Court distinguished the facts in *Salmonese* from those of *United States v. Doherty*, 867 F.2d 47 (1st. Cir. 1989). In *Doherty*, the First Circuit held that increased salary payments achieved by police officers via a conspiracy to illegally obtain promotional exams could not constitute overt acts. 867 F.2d at 61. While the salary increases were part of the intended effect of the conspiracy, the court stated "where receiving the payoff merely consists of a lengthy, indefinite series of ordinary, typically

---

[4] *See also United States v. Girard*, 744 F.2d 1170 (5th Cir. 1984) (conspiracy to defraud the government in contracted work is not over until the conspirator deposits the final payment check from the government); *United States v. Walker*, 653 F.2d 1343 (9th Cir. 1981) (holding where conspiracy to defraud the federal government by artificially lowering bids for government timber sales, sale of harvested timber constitutes the final overt act of conspiracy).

noncriminal, unilateral actions, such as receiving salary payments, *and* there is no evidence that any concerted activity posing the special societal dangers of conspiracy is still taking place, we do not see how one can reasonably say that the conspiracy continues." *Id.* (emphasis in original).

In the instant case, the purported efforts by Defendants to profit through paying artificially lowered interest rates are in my view closer to the scheme in *Salmonese* to fraudulently sell financial instruments and incur economic gain.  Here, as in *Salmonese*, the central aim of the conspiracies is economic benefit and the subsequent payments represent a definite series of acts in furtherance of those conspiracies.  The interest payments here are not nearly as attenuated as the salary increases in *Doherty* that followed the conspiracy to distribute police officer promotional exams.  As such, the payment of artificially depressed interest payments constitutes overt acts in furtherance of the conspiracies and the conspiracy counts will proceed to trial.

**2.  Motion to Dismiss Several Counts in the Superseding Indictment as Multiplicitous**

"Whether the government's proof shows a single conspiracy or multiple conspiracies is a question of fact for a properly instructed jury." *United States v. Berger*, 224 F.3d 107, 114 (2d Cir. 2000).  Defendant Goldberg, joined by Defendant Carollo in a letter dated August 8, 2011, argues that the Indictment exposes the defendants to multiple punishments for the same offense because each count involves the same defendant, victim and general scheme, and varies only by the broker involved in awarding the GIC, and that the defendant withdrew from at least some of the alleged conspiracies.  While that may very well possibly be true, the government opines that it will prove multiple conspiracies at trial and that the determination of whether a defendant committed one or many conspiracies is a factual issue appropriate for the jury, and I agree.[5]

**3.  Motion to Compel a Detailed Bill of Particulars**

A Bill of Particulars is appropriate to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (internal citation and quotation marks omitted).  "A district court should deny a request for a bill of particulars 'if the information sought by defendant is provided in the

---

[5] In reaching this conclusion, the Court has considered Defendants' memoranda and letters of August 18 and 22, 2011.  Goldberg argues alternatively that he withdrew from the conspiracies in Counts 1 through 3; he will have the opportunity to prove that at trial as well.

indictment or in some acceptable alternate form.' The Second Circuit has cautioned, however, that the prosecution does not fulfill its obligations 'merely by providing mountains of documents to defense counsel who were left unguided' as to the nature of the charges pending." *United States v. Harding*, 273 F. Supp. 2d 411, 429-30 (S.D.N.Y. 2003) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987)).

The Defendants argue that the government has not met its obligation to provide adequate notice of the charges. Defendants argue that the government's June 13, 2011 "voluntary bill of particulars," which identifies 242 deals without specifying what occurred in each deal, coupled with massive amounts of paper, does not provide adequate notice of the charges. The Defendants seek answers to the following three questions:

Question 1: In what way are the alleged misrepresentations untrue?
Question 2: When did Mr. Goldberg participate in the conspiracies charged in Counts 1-5?
Question 3: Who were the victims of the 60 transactions at issue; how were they victimized?

The government argues that it has provided more than sufficient information for the Defendants to adequately prepare for trial, prevent surprise, and interpose a plea of double jeopardy in any subsequent prosecution. Nevertheless, on August 19, 2011 the government wrote to provide the answer to Question 2 and has agreed to provide answers to Question 3 within 30 days of the date of the oral argument. With respect to Question 1, the Defendants provided the Court with a letter on August 18, 2011 identifying the terms on which they seek clarity, and on August 23, 2011, the government responded to some of the inquiries. This Court finds the government's response with respect to Questions 1 and 2 sufficient.

### III. Conclusion

The motion to dismiss Count 7 as barred by the statute of limitations is GRANTED. The government is directed to provide a response to Question 3 within ten (10) days of the date of this opinion. All other motions are DENIED. The Clerk of the Court is instructed to close all open motions in this case. Additionally, where the Pretrial Scheduling Order permits the parties to file any remaining substantive motions by November 7, 2011, which will be fully briefed by December 15, 2011, this will not be an opportunity to reargue any issues already decided by the Court in this opinion or otherwise.

**SO ORDERED.**
New York, New York
August 25, 2011                                            _____ U.S.D.J.