UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| V. | :    S1-10-CR-654 (HB) |
| DOMINICK P. CAROLLO, STEVEN E. GOLDBERG, and PETER S. GRIMM, | : : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO CLARIFY OR RECONSIDER THE APPLICABILITY OF SECTION 3293'S TEN-YEAR STATUTE OF LIMITATIONS TO COUNTS FOUR AND FIVE**

On August 25, 2011, the Court dismissed Count Seven of the Superseding Indictment ("Indictment") holding that the ten-year statute of limitations provided by 18 U.S.C. § 3293(2) for wire fraud schemes or conspiracies that affect financial institutions was inapplicable in the absence of any actual loss or a non-*de minimis* risk of loss by a financial institution. Opinion and Order ("Order") 3. The Court also observed that Section 3293 is "not applicable to the present case," apparently believing that no financial institution suffered any actual loss from any of the charged offenses because the Indictment does not allege an actual loss. *Id.* As the Government intends to prove at trial, however, Financial Institution A suffered an actual loss due to the conspiracies alleged in Counts Four and Five, and therefore was directly and actually affected by those conspiracies. Specifically, the evidence will show that Financial Institution A paid $160 million in penalties, disgorgement, and restitution for its knowing participation in those conspiracies.

The Government asks the Court to clarify that its order does not preclude the Government from offering this evidence and from obtaining a jury instruction on Section 3293 with respect to Counts Four and Five if this evidence establishes a factual basis for the requisite effect on a financial institution. Alternatively, if the Court's order intended to preclude this evidence and a Section 3293 instruction, the Government asks the Court to reconsider in light of the actual loss incurred by Financial Institution A in this case and allow the Government to show the actual effect at trial. In either case, the Court should reserve judgment on the applicability of Section 3293 to Counts Four and Five until it hears the facts at trial.

## BACKGROUND

On July 1, 2011, Defendants jointly moved to dismiss the Indictment's seven counts as time-barred. The Government opposed the motion arguing that three of the counts were subject to the ten-year statute of limitations provided by 18 U.S.C. 3293(2) because the wire fraud conspiracies alleged in Counts Four and Five and the wire fraud scheme alleged in Count Seven affected a financial institution. In its opposition, the Government focused on the legal applicability of Section 3293 to this case because the Government is not required to prove its case in advance of trial. Apart from Section 3293, the Government also argued that the conspiracies alleged in Counts One through Six continued within a five-year limitations period because conspirators committed overt acts in furtherance of the conspiracies (the payments at suppressed rates) within that period. Defendants replied that the "penalties [the financial institutions] were exposed to related to the alleged fraud" were too indirect to qualify as effects under Section 3293(2), but did not dispute the penalties' existence.[1] Defendants also argued that the payments did not qualify as overt acts.

---

[1] Reply Memorandum of Law in Support of Defendants' Joint Motion to Dismiss the Superseding Indictment as Time-Barred 5.

2

The Court granted the joint motion in part and denied it in part. It agreed with the Government that the payments constitute overt acts in furtherance of the conspiracies and therefore ordered the six conspiracy counts to proceed to trial. Order at 5. But the Court concluded that the wire fraud scheme alleged in Count Seven was time-barred because the financial institutions had suffered no actual loss but only, at most, a *de minimis* risk of loss. *Id.* at 3.

## ARGUMENT

Despite the absence of any provision explicitly authorizing clarification or reconsideration, it is well-established that the Court has discretion to clarify or, if necessary, reconsider its order. *See, e.g., United States v. Clark*, 984 F.2d 31, 33 (2d Cir. 1993); *United States v. Wilson*, 493 F. Supp. 2d 469, 475-77 (E.D.N.Y. 2006). The Court should exercise that discretion here to reserve judgment on whether Section 3293's ten-year limitations period applies to Counts Four and Five until it hears the Government's evidence at trial of the effect that those counts' conspiracies had on Financial Institution A. At that point, the Court can determine whether the millions of dollars of actual losses suffered by the bank due to its participation in the conspiracies satisfy Section 3293's requirement that the offenses affected a financial institution.

At trial, the Government will show Financial Institution A knowingly participated in the Counts Four and Five conspiracies and paid millions of dollars in penalties as a result.[2] In Count Four, Defendant Grimm conspired with Financial Institution A's subsidiary, Broker D, to steer

---

[2] This memorandum does not purport to make a full proffer of all evidence showing how the conspiracies charged in Counts Four and Five affect financial institutions by causing them actual losses and exposing them to non-*de minimis* risk of further loss, but rather is intended to alert the Court that the Government has such evidence to prove the requisite effect at trial. In addition, much of the evidence, such as proof of the banks' knowing participation in the conspiracies, will also be offered in the Government's case-in-chief to prove things other than an effect that triggers the applicability of Section 3293.

3

certain transactions to Grimm's employer, Provider B. In return for its subsidiary's assistance, Financial Institution A knowingly received kickbacks from Provider B in the form of additional, unearned revenue via swap transactions. Indictment ¶¶ 42-47. In Count Five, defendant Goldberg conspired with CDR to manipulate certain transactions and had Financial Institution A's subsidiary knowingly submit intentionally losing bids upon CDR's request to help CDR steer certain transactions to Goldberg's employer, Provider A. In exchange, Financial Institution A knowingly facilitated the payments of kickbacks from Provider A to CDR disguised as broker fees, again related to swap transactions with the winning provider. Indictment ¶¶ 56-57.

The Government will also show that various government agencies investigated this and related conduct. In May 2011, Financial Institution A entered into a series of agreements with the Department of Justice, the Securities and Exchange Commission, the Internal Revenue Service, and 25 state attorneys general requiring the bank to pay $160 million in penalties, disgorgement of profits from illegal conduct, and restitution to the victims harmed by its employees' manipulation and rigging of the bidding of investment agreements for municipal bond proceeds. In connection with the agreement with the SEC, on May 6, 2011, the District Court for the District of New Jersey entered a final judgment on the SEC's complaint ordering Financial Institution A to pay over $9.6 million in disgorgement and a civil penalty of $32.5 million. The final judgment also identified in an attachment the 105 transactions that served as the basis for the bank's penalty and disgorgement.

The Government will show that the $160 million agreements and final judgment implicate many of the same investment agreement transactions as the conspiracies alleged in Counts Four and Five. Specifically, 5 of the 105 transactions implicated by the final judgment are also identified on the voluntary bill of particulars as affected by the charged conspiracy in Count

Four. And 17 of the 105 transactions are identified on the voluntary bill of particulars as affected by the charged conspiracy in Count Five. As a result, Financial Institution A has already suffered a direct and actual loss for its participation in the conduct charged in Counts Four and Five.

In addition, the Government can show that Financial Institution A remains a defendant in the primary civil class action suit regarding the same underlying conduct charged in Counts Four and Five. *See Hinds County, Miss. v. Wachovia Bank N.A.*, 08 Civ. 2516 (S.D.N.Y.). If those plaintiffs succeed, the bank could be exposed to potential treble damages and could be held jointly and severally liable for the acts of its co-conspirators. Thus, even though Financial Institution A has entered into settlements with several federal agencies and half the state attorneys general regarding the conduct at issue here, it remains at a non-*de minimis* risk of suffering additional and substantial losses.

To be sure, while the Indictment implicates Financial Institution A in Counts Four and Five, it does not, as the Court rightly observed, allege the bank's actual losses or the risk of further loss. But an indictment need only allege the offense's elements, fairly inform a defendant of the charge, and enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). "There is no necessity for the indictment to negate any defenses which might be raised." *United States v. Fargas*, 267 F. Supp. 452, 455 (S.D.N.Y. 1967); *see also United States v. Sisson*, 399 U.S. 267, 288 (1970). Thus, the indictment need not negate an affirmative defense based on the statute of limitations. *United States v. Cook*, 84 U.S. 168, 178-80 (1872); *United States v. Titterington*, 374 F.3d 453, 456-57 (6th Cir. 2004); *see also United States v. Martinez*, No. S1 94 CR 219,

5

1995 WL 10849, at *2 (S.D.N.Y. Jan. 12, 1995) (denying pre-trial motion to dismiss based on statute of limitations as premature).

Nor must the Indictment on its face allege facts to satisfy the exception provided by Section 3293(2) to the five-year limitations period generally applicable to wire fraud conspiracies. Rather, even if the Indictment contained no allegations of effect, the Government at trial can defeat a statute of limitations defense (or at least receive a ten-year statute of limitations instruction) by proving that the conspiracies affected Financial Institution A and thus that Section 3293(2) applies.

The Supreme Court considered a similar situation in *Cook*: an indictment that appeared on its face to charge crimes committed outside the two-year limitations period and a statute that extended that limitations period if the defendant had fled from justice. 84 U.S. at 172-73. The *Cook* defendant could not take exception, by demurrer, to the indictment's sufficiency, the Court explained, because courts "will not quash an indictment because it appears upon its face that it was not found within the period prescribed in the limitation, as such a proceeding would deprive the prosecutor of the right to reply or give evidence . . . that the defendant fled from justice and was within the exception." *Id.* at 179-80. The same rule applies even if the statute of limitations does not contain any exceptions because "time is not of the essence of the offence." *Id.* at 180.

Thus, "as in *Cook*, a court may not dismiss an indictment just 'because it appears on its face that it was not found within the [limitations] period' because to do so 'would deprive the prosecutor of the right to reply or give evidence, as the case may be, that the defendant . . . was within the exception [to the limitations period].'" *Titterington*, 374 F.3d at 457 (quoting 84 U.S. at 179-80). Accordingly, the application of Section 3293(2) to Counts Four and Five is not barred because the Indictment does not specifically state that the charged offenses occurred

within that limitations period, identify the applicable statute of limitations, or allege the factual basis for the extension beyond the ordinarily applicable limitations period. *Titterington*, 374 F.3d at 456-57. As in *Cook* and *Titterington*, the Government should have the opportunity to prove that Section 3293(2) applies and extends the limitation period from five years to ten years.

## CONCLUSION

Because Financial Institution A suffered actual losses and thus was directly affected by the conspiracies alleged in Counts Four and Five under Section 3293, we request that the Court clarify its order to allow the Government to offer evidence at trial of the conspiracies' effect on the bank and to receive a ten-year limitations period instruction if that evidence establishes a factual basis for the requisite effect. Alternatively, if the Court's order was intended to preclude this evidence and a Section 3293 instruction, we request that the Court reconsider and allow the Government to show the actual effect at trial and reserve judgment on whether to give a Section 3293 instruction until the Court hears that evidence.

DEIRDRE A. McEVOY
Chief, New York Field Office
Antitrust Division
U.S. Department of Justice

Dated:   New York, New York
         September 1, 2011

Respectfully submitted,

ANTONIA R. HILL
STEVEN TUGANDER
KEVIN B. HART
JOSEPH MUOIO
Attorneys, Antitrust Division
U.S. Department of Justice
26 Federal Plaza, Room 3630
New York, New York 10278
(212) 335-8000