UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>DOMINICK P. CAROLLO,<br>STEVEN E. GOLDBERG, and<br>PETER S. GRIMM,<br><br>Defendants. | S1 10-CR-654 (H.B.) |

# DEFENDANTS' MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION TO CLARIFY OR RECONSIDER THE APPLICABILITY OF 18 U.S.C. § 3293'S TEN-YEAR STATUTE OF LIMITATIONS TO COUNTS FOUR AND FIVE OF THE INDICTMENT

Howard E. Heiss
Mark A. Racanelli
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
*Attorneys for Defendant Peter S. Grimm*

John S. Siffert
Daniel M. Gitner
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 921-8339
*Attorneys for Defendant Steven E. Goldberg*

Walter F. Timpone
MCELROY, DEUTCH, MULVANEY & CARPENTER LLP
1300 Mt. Kemble Ave.
Morristown, NJ 07962
Telephone: (973) 993-8100
*Attorneys for Defendant Dominick P. Carollo*

Defendants respectfully submit this memorandum of law in opposition to the government's motion to clarify or reconsider the application of the 10-year statute of limitations in 18 U.S.C. § 3293(2). There is nothing to clarify or reconsider. The evidence the government wants to introduce to show an "effect" on Financial Institution A for purposes of Section 3293(2)—that the bank paid certain litigation-based fines and expenses and may pay others— falls far beyond what the statute and courts allow and well within the "litigation expenses" this Court has already ruled off-limits. That the bank chose—for any number of reasons, including to avoid a business-ending indictment—to pay a fine to buy peace with the government is not competent evidence that the bank suffered a loss because of the charged offense, as required by the statute. Moreover, such evidence would unfairly prejudice defendants and violate their confrontation rights under *Crawford v. Washington*, 541 U.S. 36 (2004).

I.  **This Court's Decision Need Not Be Reconsidered Because Financial Institution A's Settlement With Regulators And Contingent Litigation Costs Are Too Attenuated, As A Matter Of Law, To Constitute An "Effect" Under 18 U.S.C. § 3293.**

This Court has ruled that costs associated with litigation are insufficiently connected to the offense of wire fraud to extend the limitations period to 10 years under 18 U.S.C. § 3293(2). The Court held that while the government has "merely argue[d]" that the charged conduct exposed Financial Institution A to a risk of loss, it did not provide "much explanation as to what that risk is *other than the expenses associated with litigation*." (Order and Op. 3, Aug. 25, 2011) (emphasis added). Evidence of "expenses associated with litigation"—money paid in settlement of an investigation and that may be paid in connection with a class action—should not be admitted at trial based on that ruling. Those costs are unsustainably attenuated from the charged fraud. The Court properly rejected the government's expansive interpretation of the statute as untenable, and there is no basis for reconsidering that ruling. *See Cordero v. Astrue*, 574 F. Supp. 2d 373, 380 (S.D.N.Y. 2008) (motions to reconsider are "not intended to be a

1

vehicle for a party dissatisfied with a court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided . . . [nor] to advance new facts, issues or arguments not previously presented to the court"); *Colodney v. Continuum Health Partners, Inc.*, No. 03 Civ. 7276, 2004 WL 1857568, at *1 (S.D.N.Y. Aug. 18, 2004) ("[A] motion for reconsideration cannot be granted . . . solely on a party's disagreement with the Court's ruling. In order to succeed, [a party] would have to point to some fact or legal precedent overlooked by the Court that would alter its conclusion . . . .").[1]

The Antitrust Division proposes to show that Financial Institution A paid money to settle certain government investigations and "could be exposed" to money damages in connection with a civil lawsuit as evidence that the bank was sufficiently "affected" by the charged offense in order to satisfy Section 3293. (Gov't Br. 4-5). In the government's view, *any* loss suffered by a financial institution that remotely relates to a charged fraud would trigger Section 3293(2). But that position is contrary to the language of the statute and nearly every case interpreting it. Section 3293(2) states that a violation of the mail and wire fraud statutes extends the limitations period only if "the *offense* affects a financial institution." 18 U.S.C. § 3293(2) (emphasis added). The charged fraud, not its contingent, collateral litigation consequences, must be the thing that affects a bank.

That there must be a close connection between the charged fraud and the "effect" on a bank under Section 3293(2) has been recognized by every case but one interpreting the statute.[2]

---

[1] Because there is no analogous criminal rule, courts in the Second Circuit apply Local Civil Rule 6.3 when considering a motion to reconsider in a criminal case. *See United States v. Pena Ontiveros*, No. 07 Cr. 804, 2008 U.S. Dist. LEXIS 47135, at *12 (S.D.N.Y. June 16, 2008).

[2] The exception is *United States v. Ohle*, 678 F. Supp. 2d 215 (S.D.N.Y. 2010), which held litigation costs incurred by a bank to settle civil claims to be a sufficient "effect." As explained in defendants' reply papers in support of

2

While courts applying Section 3293(2) have held that a bank need not be the intended or actual victim of a fraud to feel its effects, they have also held that the effect must be "*sufficiently direct.*" *United States v. Bouyea*, 152 F.3d 192, 195 (2d Cir. 1998) (emphasis added). In *Bouyea*, the Second Circuit found the effect of a wire fraud scheme "sufficiently direct" where a bank's subsidiary borrowed money from the parent financial institution to issue a loan based on defendant's fraudulent submissions. *Id.* The fraud caused the bank to issue a loan on which it suffered a loss; that loss, therefore, was the direct result of the fraud. *Id.*

There is no allegation that defendants sought to defraud Financial Institution A or that defendants' conduct directly caused a loss. The evidence the government seeks to introduce to show an "effect" on the bank is entirely different and fails to meet the legal standard. The decision by Financial Institution A—a public company in a regulated industry—to pay a fine and buy peace with the government to avoid an almost certainly catastrophic indictment was not a loss directly caused by the conduct charged in the Indictment. It was a loss directly caused by the bank's cost-benefit analysis. And like any such analysis, it was not necessarily driven by whether the bank in fact had liability, let alone liability specifically tethered to the charges in the Indictment. The Antitrust Division does not allege—nor do we see how it can—that Financial Institution A settled with the government solely, or even predominantly, because of the conduct in the Indictment. It is just as plausible that the bank believed it had strong defenses but paid the fine as a direct result of its aversion to risk.

The recent decision by Morgan Stanley to settle similar claims in the *In re Municipal Derivatives Antitrust Litigation* class action demonstrates the point. *See* MDL No. 1950, No. 08-cv-02516 (S.D.N.Y. 2008). In that case, plaintiffs alleged that Morgan Stanley conspired with

---

their motion to dismiss, however, *Ohle* cannot be reconciled with the mainstream of Section 3293(2) cases, which set limits on the kind of effect that can trigger an extension of the limitations period.

3

brokers and providers to restrain competition for municipal derivatives. The notice to class members announcing the settlement said that Morgan Stanley agreed to pay $6.5 million *but that* "[i]*n its investigation, Class Counsel has not discovered any meaningful evidence that Morgan Stanley participated in the alleged conspiracy during 1992 to the present.*" Decl. of Katherine Kinsella, Ex. 4 at 2, *In re Mun. Derivatives Antitrust Litig.*, MDL No. 1950, No. 08-cv-02516 (S.D.N.Y. June 21, 2011) (emphasis added) (attached as Exhibit A). Despite no "meaningful" evidence of wrongdoing, Morgan Stanley nonetheless paid money to settle the case.

The other evidence the government points to—the possibility that Financial Institution A *might* pay to settle or *could* pay damages in a class action—is even more attenuated. (Gov't Br. 5). The bank has paid no money whatsoever to plaintiffs in that case. Whether a jury awards damages after a trial is currently unknowable, as is whether the bank will decide to settle the claims. And if it does settle, that decision would be driven by the same cost-benefit analysis as its choice to settle with the government. In short, *none* of the loss the government proposes to prove to show an effect on the bank is a "sufficiently direct" result *of the charged offense.*

The defect in the government's position is also reflected in its consequences. The government's position would result in a mini-trial on the collateral issue of *why* Financial Institution A paid the fine—whether it did so, as the government contends, as a direct result of the charges or for other reasons. There is no dispute that the evidence of an "effect" that the government points to is only admissible if the government can show that it is a loss *resulting* from the offense. But the practical implications of a mini-trial on that issue would raise evidentiary and constitutional problems, which we discuss below.

In addition, if the Court were to allow evidence of the settlement, defendants would be entitled to discovery relating to the bank's communications with the DOJ, SEC and IRS that led

4

to the settlement—and specifically whether there is evidence that the bank settled because of undue pressure from the government or the mere threat of indictment. Like the discovery and evidentiary hearing that Judge Kaplan ordered in *United States v. Stein* to allow those defendants to determine whether KPMG stopped paying defendants' legal fees because of pressure from the government, defendants should be permitted full discovery on why Financial Institution A settled. *See* Mem. and Order, *United States v. Stein*, S1 05 Cr. 0888 (S.D.N.Y. Apr. 12, 2006) (attached as Exhibit B, including correspondence referred to therein). That discovery would involve an enormous effort. The government and Financial Institution A, for example, should be required to produce emails, correspondence, and notes of meetings between the bank and the regulators relating to the investigation of the bank, arguments the bank made about why it should not be charged, and settlement negotiations. If the discovery shows that the government pressured the bank to settle or the bank settled to avoid the possibility of indictment—regardless of the merits—that would be critical to rebutting the government's claim that the bank paid because of the charged fraud, and nothing more.

These problems do not arise in cases where the loss to a bank is directly caused by the alleged fraud, as where a defendant victimizes a bank. They arise here only because the proffered evidence is collateral to, and does not prove, the charged fraud. In the cases we have found interpreting Section 3293(2), these issues did not come up because the evidence of the effect on a bank *was* directly related to the fraud. In *Bouyea*, for instance, the government offered documentation of the loan issued by the parent bank to its subsidiary, the defendant's fraudulent loan application and a record of money transfers. 152 F.3d at 195. That evidence showed that the defendant's misrepresentations led the bank to make a loan it otherwise would not have made; it related directly to the fraud—indeed, it proved the fraud—and there was

5

therefore no question about its admissibility. Here, the fact that Financial Institution A paid a fine is *not* proof of the fraud and would be unduly prejudicial.

## II. The Settlement Evidence Is Inadmissible Under the Confrontation Clause and Unduly Prejudicial.

The government's attempt to show injury to a financial institution fails under the Confrontation Clause, and the proffered "evidence" is highly prejudicial yet hardly probative.

### A. *Crawford v. Washington*

Introducing the government's proposed evidence would violate defendants' confrontation rights under *Crawford v. Washington*, 541 U.S. 36 (2004). The government presumably intends to offer, through an employee of Financial Institution A, the bank's settlement agreement with regulators. Defendants have a right to cross-examine the bank about the circumstances under which it agreed to pay the fine to test the government's theory that it was the direct result of the charged offense. But we cannot cross-examine an agreement. The agreement says only what the bank agreed to pay and the conduct at issue. In that sense, it is no different from a plea allocution by a co-conspirator who does not testify at trial. In fact, Financial Institution A's agreement with DOJ reads almost exactly like an allocution. It includes a statement by which the bank "admits, acknowledges and accepts responsibility of its former employees," and describes the conduct for which the bank took responsibility: that its employees supposedly entered into "unlawful agreements" to manipulate the bidding on certain municipal contracts, among other things. The Second Circuit has held that that type of evidence is inadmissible under *Crawford* because it does not allow a defendant to cross-examine the alleged co-conspirator about circumstances leading to the plea. *See United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004) ("[A] plea allocution by a co-conspirator who does not testify at trial may not be

6

introduced as substantive evidence against a defendant unless the co-conspirator is unavailable and there has been a prior opportunity for cross-examination.").

Indeed, the constitutional problem with introducing Financial Institution A's settlement is even more pronounced than with the introduction of a plea allocution. An allocution at least is governed by the protections of Rule 11 of the Federal Rules of Criminal Procedure. Those protections ensure that the co-conspirator affirms under oath that he is, in fact, guilty, was not pressured or coerced into pleading, and was not promised anything for the plea. *See* FED. R. CRIM. P. 11(b)(1). *None* of that is true of the unsworn agreement between Financial Institution A and the government. There is no assurance that the bank entered into it because it did something wrong and was not pressured or promised anything in return. And that is precisely the aspect of the settlement that underscores why it is not probative of whether the bank suffered a loss directly as a result of the charged fraud.

Nor would the problem be cured were the government to offer a bank witness to testify about the settlement. That testimony would shed little more light than the bare agreement on the critical issue of whether the bank paid a fine directly because of the charged offense. The settlement related to alleged conduct by a number of bank employees over the course of many years. Defendants would be entitled to cross-examine any bank witness about the specifics of that conduct and how it factored into the decision to buy peace with the government, if it factored in at all. Given the circumstances here, including the age and number of the transactions at issue, any witness probably would have insufficient knowledge. And it is unlikely that any witness called to testify about the fact of the settlement will know first-hand what actually occurred on the institution's municipal bond desk.

7

B.  **Federal Rule of Evidence 403**

The proffered evidence of loss to the financial institution is inadmissible, in any event, because the unfair prejudice to defendants outweighs its probative value. FED. R. EVID. 403.

For the reasons stated, the bank's decision to pay a fine to settle a government investigation—to say nothing of the mere possibility of a payment to plaintiffs—is not probative of whether it suffered a loss directly from the charged offense. Moreover, the undue prejudice resulting from the introduction of that evidence would be overwhelming. There is a significant danger that a jury will be led to conclude that defendants are guilty if the Court were to permit the jury to hear that the bank, which the government names as a co-conspirator, paid $160 million in penalties to settle an investigation involving bidding on municipal contracts. Any jury will naturally be tempted to infer, improperly, that no company would have paid such a sum if it had not done something wrong—and that if Financial Institution A did something wrong, so did defendants. The reality is that the bank's decision to pay that fine has nothing to do with whether defendants committed a crime. But this evidence would unfairly burden defendants with proving that point to a jury with $160 million ringing in its ears.

Permitting the proffered evidence also would enormously increase the burden on the defense. As noted above, the defense's discovery burden would be further expanded in a case in which that burden is already overwhelming. Moreover, while the government has stated that the conduct in this case is "implicated" by Financial Institution A's settlement because 22 of the transactions listed in the settlement are also listed among the 242 transactions in the government's Bill of Particulars,[3] that argument assumes that the government will prove all of those 22 transactions. Of those 22 deals, only nine appear on the list of 60 the government

---

[3] The government asserts that five of the transactions "implicated" in Financial Institution A's final judgment are in the Bill of Particulars for Count IV and 17 of the transactions "implicated" in the final judgment are in the Bill for Count V. (Gov't Br. 4-5).

8

represented to this Court it will limit itself to proving in its case-in-chief. Based on its argument now, the government appears to intend to prove an additional 13 transactions—beyond the 60 to which it said it would limit itself—for Counts IV and V alone to establish the conduct that was supposedly "implicated" by Financial Institution A's settlement. The addition of these transactions will significantly burden the defense, making it substantially more difficult to prepare for trial on the current schedule.

## CONCLUSION

For the foregoing reasons, the defendants respectfully request that the Court deny the government's motion to clarify or reconsider.

Dated: September 13, 2011
       New York, New York

Respectfully submitted:

Howard E. Heiss
Mark A. Racanelli
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
*Attorneys for Defendant Peter S. Grimm*

John S. Siffert
Daniel M. Gitner
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 921-8339
*Attorneys for Defendant Steven E. Goldberg*

Walter F. Timpone
MCELROY, DEUTCH, MULVANEY & CARPENTER LLP
1300 Mt. Kemble Ave.
Morristown, NJ 07962
Telephone: (973) 993-8100
*Attorneys for Defendant Dominick P. Carollo*

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>DOMINICK P. CAROLLO, STEVEN E. GOLDBERG, and PETER S. GRIMM,<br><br>Defendants. | S1 10-CR-654 (H.B.) |

## CERTIFICATE OF SERVICE

     I, Melissa Wangenheim, hereby certify that a true and correct copy of the Defendants' Memorandum in Opposition to the Government's Motion to Clarify or Reconsider the Applicability of 18 U.S.C. § 3293's Ten-Year Statute of Limitations to Counts Four and Five of the Indictment was served on all parties of record by the Court's ECF system, and by electronic mail on the following counsel, this 13th day of September, 2011:

| | |
|---|---|
| Antonia Hill, Esq.<br>**U.S. DEPARTMENT OF JUSTICE, ANTITRUST DIVISION**<br>26 Federal Plaza, Room 3630<br>New York, New York 10278 | Steven Tugander, Esq.<br>**U.S. DEPARTMENT OF JUSTICE, ANTITRUST DIVISION**<br>26 Federal Plaza, Room 3630<br>New York, New York 10278 |
| Kevin B. Hart, Esq.<br>**U.S. DEPARTMENT OF JUSTICE, ANTITRUST DIVISION**<br>26 Federal Plaza, Room 3630<br>New York, New York 10278 | Joseph Muoio, Esq.<br>**U.S. DEPARTMENT OF JUSTICE, ANTITRUST DIVISION**<br>26 Federal Plaza, Room 3630<br>New York, New York 10278 |

                                                        /s/ Melissa Wangenheim
                                                        Melissa Wangenheim