UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X

UNITED STATES OF AMERICA                :

              v.                        :        S1-10-CR-654 (HB)

DOMINICK P. CAROLLO,                    :
STEVEN E. GOLDBERG, and
PETER S. GRIMM,                         :

              Defendants.               :

------------------------------------- X

### REPLY MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO CLARIFY OR RECONSIDER THE APPLICABILITY OF SECTION 3293'S TEN-YEAR STATUTE OF LIMITATIONS TO COUNTS FOUR AND FIVE

The Government respectfully submits this reply memorandum in support of its motion to clarify or reconsider the Court's August 25, 2011 order. In that motion, the Government asked the Court to allow it to offer evidence that the wire fraud conspiracies alleged in Counts Four and Five affected Financial Institution A. The Government also asked that the Court reserve judgment on whether the evidence shows the requisite effect under 18 U.S.C. § 3293(2), and thus whether that section's ten-year limitations period applies to these two counts until such evidence is presented. The Government believes it can offer admissible evidence at trial to prove the offenses caused the financial institution an actual loss—specifically, the many millions of dollars in penalties, disgorgement, and restitution Financial Institution A paid for its culpable participation in the conspiracies—to warrant a Section 3293(2) jury instruction on the statute of limitations.

Defendants make two premature and ultimately meritless arguments: 1) the actual losses are too attenuated from the offenses because it is "plausible" that the bank agreed to make these

payments for other reasons, and 2) the Government's evidence is inadmissible, citing both the Confrontation Clause, as interpreted in *Crawford v. Washington*, 541 U.S. 36 (2004), and Federal Rule of Evidence 403.[1] However, defendants' arguments turn on a flawed interpretation of Section 3293 that would, in practice, render the statute frequently inapplicable where the financial institution is a direct participant in the fraudulent conduct and thereby suffers actual and significant losses. Indeed, defendants argue that even where a financial institution "pay[s] a fine," in their view, to "buy peace with the government" regarding wrongdoing, the institution is not affected under the meaning of the statute. Defs. Opp. at 3. Defendants fail to cite to any legal authority for their interpretation, nor is their view reconcilable with *United States v. Ohle*, 678 F. Supp. 2d 215 (S.D.N.Y. 2010). Moreover, these arguments depend on an assessment of evidence that should, in the normal course, be offered by the Government at trial and only considered in the broader context of the trial evidence. Rather than ruling based on defendants' uninformed conjectures about evidence that has not yet been presented, the Court should follow the normal course by ruling on evidentiary objections at trial or, as appropriate, in specific motions *in limine*, and deciding if the admissible evidence proves the requisite effect after hearing that evidence. In any event, Defendants' concerns about the strength and admissibility of the Government's proof are unfounded.

## ARGUMENT

### I. The Offenses Charged in Counts Four and Five Caused Financial Institution A an Actual Loss Directly Affecting It

On August 25, 2011, the Court dismissed Count Seven as time-barred, holding Section 3293(2) inapplicable absent an actual or non-*de minimis* risk of loss by a financial institution.

---

[1] Defendants' Memorandum in Opposition to the Government's Motion to Clarify or Reconsider the Applicability of 18 U.S.C. § 3293's Ten-Year Statute of Limitations to Counts Four and Five of the Indictment ("Defs. Opp.") 3, 6-8.

Opinion and Order ("Order") 3. But in ordering the remaining counts to proceed to trial, the Court did not address whether the Government would be allowed to show an actual or non-*de minimis* risk of loss and thereby trigger Section 3293(2)'s ten-year statute of limitations. The Government asks the Court to clarify that the Government can offer effect evidence to prove that the offenses alleged in Counts Four and Five caused actual and significant financial losses to Financial Institution A.

Alternatively, if the Court's observation that Section 3293 is "not applicable to the present case" was intended to preclude effect evidence, the Court should reconsider. Order 3. That observation may have been based on the Court's belief that there was no loss because the Indictment contains no allegations of loss. But, as the Government's original opposition to Defendants' motion to dismiss argued, the Indictment only needs to allege offense elements. Mem. of Law in Opp. to Defs.' Mot. to Dismiss, to Strike, and to Compel a Bill of Particulars 5 (citing *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)). As a result, the Indictment does not allege, and is not required to allege, effect or actual loss for Section 3293(2) to apply. *See* Mem. of Law in Supp. of the Gov't's Mot. to Clarify or Reconsider the Applicability of Section 3293's Ten-Year Statute of Limitations to Counts Four and Five 5-7. In fact, as the Government is prepared to prove at trial, the offenses alleged in Counts Four and Five affected Financial Institution A by causing it an actual loss. Under these circumstances, even assuming reconsideration is necessary, and the local civil rule for reconsideration applies, (*see* Defs. Opp. 1-2 & n.1), the Government has satisfied that reconsideration standard.

The losses include Financial Institution A's paying $160 million in penalties, disgorgement, and restitution for its culpable participation in the underlying conduct, in part, charged in Counts

Four and Five.[2] Defendants argue that, despite these losses, the offenses did not affect the bank because these payments are merely litigation expenses citing the Court's statement: "Here, the government does not allege that Financial Institutions A and B suffered any actual loss, and merely argues that the kickback arrangements exposed them to a risk of loss without providing much explanation as to what that risk is other than the expenses associated with litigation." Order 3. *See* Defs. Opp. 1. But penalties and other payments exacted for wrongdoing can hardly be characterized as litigation expenses, which are normally understood to include attorneys' fees and other incidental costs in defending litigation.[3] Under Defendants' view, however, even if Financial Institution A and its executives were indicted, pleaded guilty pursuant to plea agreements, and were sentenced to pay large fines and serve long prison terms, these penalties would just be "expenses associated with litigation" because everything is merely the result of a cost-benefit analysis. Such an expansive "litigation expense" exception to Section 3293(2)'s

---

[2] The Government does not purport to make a full proffer of all evidence here, but the publicly available documents themselves support applying Section 3293(2) to Counts Four and Five. For instance, in its complaint against Financial Institution A, the SEC identified six representative tainted transactions that are illustrative of the fraudulent conduct, two of which correspond to transactions encompassed by Counts Four and Five. Financial Institution A's agreement with the SEC required that it pay tens of millions of dollars in disgorgement to victims harmed by its manipulation and rigging of bids—including monies for many of the same issuers victimized in specific transactions identified in the bill of particulars for Counts Four and Five. Furthermore, Financial Institution A admitted wrongdoing in its agreement with the U.S. Department of Justice, and stated that from 2001 to 2006 certain of its former employees entered into unlawful agreements to manipulate the bidding process and made payments and engaged in other activities in connection with those agreements. Given the settled law that a financial institution can be affected by virtue of its role as a co-conspirator rather than a victim, it is difficult to imagine what evidence would be adequate to prove that Financial Institution A was affected by its participation in the illegal conduct, if proof of settlements in which it admitted wrongdoing and agreed to pay millions of dollars in penalties, disgorgement, and restitution specifically connected to transactions encompassed by the charged offenses is inadequate.

[3] While the Government believes attorneys' fees incurred in a financial institution's defense of criminal and civil actions brought against the institution based on its involvement in the offense are cognizable effects under Section 3293(2), the Government understands that the Court disagrees and has not asked for reconsideration on this point.

4

effect test has no basis in the statute and would swallow the rule in circumstances, such as here, where the offense's effect results from the bank's participation in the criminal conduct.

Defendants also argue that the actual loss is "unsustainably attenuated from the charged fraud." Defs. Opp. 1. But the Government will offer witnesses and, potentially, documentary evidence to prove Financial Institution A's culpable participation in the offenses and that the payments were made because of that participation.[4] Defendants can contest this factual issue, but should do so by challenging the Government's evidence at trial, not with pretrial speculation about why Financial Institution A made the payments.

Defendants' concerns about the need for extensive discovery or a mini-trial on the issue of why Financial Institution A entered into the settlements are unfounded. Beyond the witness testimony about Financial Institution A's culpable participation (testimony that is relevant and will be offered regardless of the Section 3293(2) issue), the Government anticipates calling only a very small number of witnesses to address the issue of the Financial Institution A's payment of penalties, restitution, and disgorgement. If the defense is entitled to additional discovery, it will be limited and produced in advance for their preparation at trial.

To the extent Defendants contend that, as a matter of law, such penalties cannot show an effect, their contention conflicts with this Court's recognition that the law is "relatively clear that where illegal activity caused a financial institution to be susceptible to substantial risk of loss and that institution suffered actual loss, its participation in the fraud does not negate the applicability of the ten-year statute of limitations." Order 3. To be sure, Section 3293(2) requires that the

---

[4] Defendants' comparison of Financial Institution A's payments to Morgan Stanley's no-fault settlement of class actions where class counsel found no "meaningful evidence that Morgan Stanley participated in the alleged conspiracy" (Defs. Opp. 3-4) is inapposite. The Government has found and will present "meaningful evidence" that Financial Institution A culpably participated in the Counts Four and Five conspiracies and made the payments as a result.

5

wire fraud conspiracy's effect is sufficiently direct. *See United States v. Bouyea*, 152 F.3d 192, 195 (2d Cir. 1998). But where criminals enlist a financial institution in their fraudulent conspiracies and schemes, and its participation causes the institution a financial loss, including the payment of penalties, restitution, disgorgement, and damages, that effect is direct. As Judge Sand explained in *United States v. Ohle*, monetary settlements related to the charged wire fraud conspiracy satisfy *Bouyea*'s sufficiently direct standard because the "effect on Bank A was direct." 678 F. Supp. 2d 215, 229 (S.D.N.Y. 2010). Specifically, Ohle and his co-conspirators used Bank A as an "active participant in the fraud" knowing "they were exposing [the bank] to risk if their fraud was uncovered." *Id.* As a result, the offense exposed the bank to substantial risk and caused it actual loss in the form of $24 million in settlements with its clients. *Id.*

*Ohle* does not, as Defendants suggest (Defs. Opp. 2 & n.2), dismiss the need for a close connection between the charged offense and the effect. Rather, the court found just such a connection, specifically rejecting the argument that the effect was too remote. 678 F. Supp. 2d. at 229. Through Ohle's use of the bank in the conspiracy, the court explained, "Ohle put Bank A at substantial risk" and that "risk resulted in millions of dollars of losses for the financial institution." *Id.* And thus, "the losses were a *direct and foreseeable result* of the [charged] conspiracy." *Id.* (emphasis added).

Nor does *Ohle* conflict with the purpose of Section 3293(2) or depart from how other courts have interpreted affecting a financial institution. That section's "whole purpose . . . is to protect financial institutions, a goal it tries to accomplish in large part by deterring would-be criminals from including financial institutions in their schemes." *United States v. Serpico*, 320 F.3d 691, 694 (7th Cir. 2003). But the statute would not deter criminals from enlisting banks and bank insiders in their fraud if they could avoid Section 3293 and other provisions designed to enhance

6

penalties for offenses that affect financial institutions by characterizing the effect on the bank — financial penalties, restitution, disgorgement — as "solely a *litigation consequence*,"[5] and thus have the offense treated as if it did not affect the bank. In that scenario, the offenses that most affect and threaten the banks—those in which the bank participated and thus where, in Defendants' view, "an almost certainly catastrophic indictment" could be returned against the bank (Defs. Opp. 3) — are not subject to Section 3293(2), unless that indictment is returned and the bank convicted. That result would be perverse: a statute intended to protect financial institutions only applies upon the financial institution's criminal conviction. To the contrary, admissions of responsibility and the payment of civil penalties, restitution, and disgorgement made by banks, like Financial Institution A here, demonstrate that the offense affected them.

There is nothing novel about *Ohle*'s holding that such payments establish that the offense affected the bank. In *United States v. Bennett*, 161 F.3d 171, 192-93 (3d Cir. 1998), for instance, the court held that a bank's $18 million payment to settle a $150 million suit by the bankruptcy trustee, related to the use of the bank to perpetrate a fraud, affected the bank for purposes of a sentencing enhancement applicable only if the offense "affected a financial institution," U.S.S.G. § 2F1.1(b)(6)(B).[6] Similarly, in *United States v. Schinnell*, 80 F.3d 1064, 1070 (5th Cir. 1996), the court upheld the same enhancement where the bank was faced with the choice of negotiating a settlement or facing a lawsuit for the victim's lost funds.

---

[5] Reply Mem. of Law in Supp. of Defs.' Joint Mot. to Dismiss the Superseding Indictment as Time-Barred 1.

[6] Various provisions in the U.S. criminal code and the Sentencing Guidelines use the phrase affects, affected, or affecting a financial institution, and decisions interpreting the phrase in one provision are applicable in interpreting it in other provisions. *See United States v. Grass*, 274 F. Supp. 2d 648, 653-54 & n.5 (M.D. Pa. 2003) (relying on cases interpreting Section 3293(2) and U.S.S.G. § 2F1.1(b)(6)(B) to interpret 18 U.S.C. § 982(a)(2)(A), which authorizes criminal forfeiture of proceeds from a wire fraud "affecting a financial institution"); *United States v. Esterman*, 135 F. Supp. 2d 917, 919-20 (N.D. Ill. 2001) (same).

7

## II. The Government's Evidence Proving Effect and Loss Does Not Violate the Confrontation Clause nor Unduly Prejudice Defendants

Defendants' constitutional objection to the evidence's admissibility is premature and, ultimately, baseless. When the Government calls witnesses from Financial Institution A to testify about their participation in the wire fraud conspiracies and the effect those offenses had on Financial Institution A, Defendants can cross-examine them. To the extent the Government offers any documents, the Court can then decide first whether they are "testimonial statements" and, if so, whether the declarant is unavailable for cross-examination. *Crawford* holds that both these conditions are necessary to trigger the Confrontation Clause. *See* 541 U.S. at 68. In this case, any documents the Government offers will be non-testimonial or, if it seeks to admit testimonial statements, the Government will have the declarant testify or available to testify, thus avoiding any Confrontation Clause issue.

Likewise, Defendants' invocation of Rule 403 to prevent the Government from even offering probative evidence that Financial Institution A's paid millions of dollars as a result of its participation in the offense is equally dubious. "Because Rule 403 permits the exclusion of probative evidence, it is an extraordinary remedy that must be used sparingly." *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990). In the context of the trial, the Government will show Rule 403 does not preclude admission of this evidence because its probative value is not substantially outweighed by the danger of unfair prejudice. The proof of the payments is highly and uniquely probative of the actual loss. *Cf. United States v. Heinemann*, 801 F.2d 86, 95 (2d Cir. 1986) ("highly probative" evidence "easily outweighed any possible prejudice"). To protect Defendants from unfair prejudice, the Court can give the jury appropriate instructions limiting its consideration of the bank's agreement to pay $160 million. *See United States v. Abu-Jihaad*, 630 F.3d 102, 133 (2d Cir. 2010), *cert. denied* 131 S. Ct. 3062 (2011) ("[T]he district court properly

8

minimized the risk of unfair prejudice through limiting instructions."); *United States v. Snype*, 441 F.3d 119, 129-30 (2d Cir. 2006) (recognizing "strong presumption that juries follow limiting instructions"). In any event, if Defendants consider limiting instructions inadequate, they can ask the Court to hear the evidence of the payments and settlement outside the jury's presence. Either way would allow the Court to decide whether that evidence, combined with the other trial evidence, showed an effect on Financial Institution A that would require instructing the jury that Counts Four and Five are subject to a ten-year limitations period without creating any risk of unfair prejudice.[7] In any event, since the Court has held that Section 3293(2) requires an actual loss or a non- *de minimis* risk of loss, the Court should not bar the Government from offering probative evidence of that loss based on the magnitude of that loss.

## CONCLUSION

Because Financial Institution A suffered an actual loss in the form of payment of financial penalties, restitution, and disgorgement due to its culpable participation in the fraud conspiracies alleged in Counts Four and Five and therefore was affected by those offenses, this Court should clarify or reconsider its order and allow the Government to offer evidence of that effect at trial. And should the Government offer admissible evidence to establish that effect, the Court should instruct the jury that Counts Four and Five are subject to a ten-year statute of limitations.

---

[7] The Government would accept a stipulation by Defendants that Counts Four and Five affected Financial Institution A in place of offering evidence of the payments and settlement agreements. *Cf. Old Chief v. United States*, 519 U.S. 172, 191-92 (1997) (holding that Rule 403 requires exclusion of relevant evidence of name and nature of prior assault conviction in felon-in-possession prosecution if defendant offers to stipulate to prior felony conviction).

9

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | *Antonia Hill* |
| DEIRDRE A. McEVOY | ANTONIA R. HILL |
| Chief, New York Field Office | STEVEN TUGANDER |
| Antitrust Division | KEVIN B. HART |
| U.S. Department of Justice | JOSEPH MUOIO |
|  | Attorneys, Antitrust Division |
|  | U.S. Department of Justice |
| Dated:  New York, New York | 26 Federal Plaza, Room 3630 |
|         September 20, 2011 | New York, New York 10278 |
|  | (212) 335-8000 |