UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA :
:
      v. :
:
RUBIN/CHAMBERS, DUNHILL INSURANCE :
SERVICES, INC. dba CHAMBERS, DUNHILL :
RUBIN & CO. and CDR FINANCIAL : S1-09-CR-1058 (VM)
PRODUCTS, INC. :
DAVID RUBIN; :
ZEVI WOLMARK, :
    a/k/a "STEWART WOLMARK"; and :
EVAN ANDREW ZAREFSKY, :
:
              Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA :
:
      v. :
:
DOMINICK P. CAROLLO, : S1-10-CR-654 (HB)
STEVEN E. GOLDBERG, and :
PETER S. GRIMM, :
:
:
              Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
UNITED STATES OF AMERICA                            :
                                                    :
                                                    :
              v.                                    :
                                                    :
PETER GHAVAMI                                       :
(a/k/a "PETER GHAVAMILAHIDJI");                     :
GARY HEINZ; and                                     :   1:10-CR-01217(JFK)
MICHAEL WELTY,                                      :
                                                    :
                                                    :
              Defendants.                           :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S APPLICATION TO DISCLOSE *BRADY* MATERIAL AND IN OPPOSITION TO PRIVILEGE-CLAIMANTS' MOTION FOR A PROTECTIVE ORDER

DEIRDRE A. McEVOY  
Chief, New York Field Office  
Antitrust Division  
U.S. Department of Justice  

CHARLES V. REILLY  
LUCY MCCLAIN  
Trial Attorneys, Antitrust Division  
U.S. Department of Justice  
26 Federal Plaza, Room 3630  
New York, NY 10278  
(212) 335-8039  

Dated: November 14, 2011

## Table of Authorities

Cases

*Allied Irish Banks v. Bank of America*, 240 F.R.D. 96, 103 (S.D.N.Y. 2007) ............................... 4

*Brady v. Maryland*, 373 U.S. 87 (1963) ............................................................................. 5, 9

*Fisher v. United States*, 425 U.S. 391, 403 (1976) ............................................................... 3

*Grievance Comm. for the Southern District of New York v. Simels,*
48 F.3d 640 (2d Cir. 1995) ................................................................................................. 8

*Hickman v. Taylor*, 329 U.S. 495 (1947) .............................................................................. 4

*In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) ........................................................ 3

*In re Grand Jury Investigation,* 399 F.3d 527, 531 (2d Cir. 2005) ........................................ 3

*In re Pfizer Inc. Sec. Litig.,* No. 90 Civ. 1260, 1993 WL 561125 (S.D.N.Y. Dec.23, 1993) .......... 4

*Merrill Lynch & Co, Inc. v. Alleghany Energy, Inc.* 229 F.R.D. 441 (S.D.N.Y. 2004) .................. 4

*National Educ. Training Group v. Skillsoft*, 1999 WL 378337, at *3 (S.D.N.Y. June 10, 1999) .. 3

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) ....................................................... 4

*United States v. Buda*, 718 F. Supp. 1094 (W.D.N.Y. 1989) ................................................. 7

*United States v. Caceres*, 440 U.S. 741 (1979) .................................................................. 11

*United States v. Condon*, 170 F.3d 687 (7th Cir. 1999) ........................................................ 8

*United States v. Const. Prod. Research*, 73 F.3d 464, 473 (2d Cir. 1996) ............................. 3

*United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) .................................................... 5

*United States v. Edelin*, 128 F. Supp.2d 23 (D.D.C. 2001) ................................................... 6

*United States v. Hammad*, 858 F.2d 834, 840 (2d Cir. 1988) ................................................ 7

*United States v. Haynes,* 216 F.3d 789, 796 (9th Cir. 2000) ................................................. 7

*United States v. Longo*, 70 F. Supp.2d 225 (W.D.N.Y. 1999) ................................................ 7

*United States v. Lowery*, 166 F.3d 1119 (11th Cir. 1999)..............................................................8

*United States v. Mejia*, No 10-cr-2724, 2011 WL 3715293, at *6 (2d Cir. Aug. 25, 2011)........... 3

*United States v. Nouri*, 611 F. Supp.2d 380, 382 (S.D.N.Y. 2009) ................................................ 7

*United States v. Rittweger*, 524 F.3d 171, 180 (2d Cir.2008)......................................................... 5

*United States v. Sam Goody*, 518 F. Supp. 1223 (E.D.N.Y. 1981).................................................. 7

*United States v. Stringer*, 535 F.3d 929, 941 (9th Cir. 2008) ......................................................... 9

*United States v. Winner*, 641 F. 2d 825 (10th Cir. 1981)...............................................................6

*Upjohn v. United States*, 449 U.S. 383, 389 (1981) ....................................................................... 3

Rules

FBI's Manual of Investigative Operations and Guidelines........................................................... 14

Fed. R. Evidence 502(d)..................................................................................................................5

The Government respectfully submits this Reply Memorandum in Support of the Government's Application to Disclose *Brady* Material and in Opposition to Privilege-Claimants' Motion for a Protective Order in *United States v. Rubin/Chambers Dunhill Ins. Serv., Inc.*, No. S1 09-cr-1058 (VM), in *United States v. Carollo*, No. 10-cr-654 (HB) and in *United States v. Ghavami,* No. 10-cr-1217 (JFK) (collectively, "Filed Cases") and to Privilege-Claimant's Motion In Opposition to the Government's Application to Disclose Privileged Material.[1]

## I.     Introduction

The Privilege-Claimants, who are not defendants in any of the Filed Cases, claim that disclosure of portions of certain tapes to the Defendants in the Filed Cases pursuant to the Government's Application to Disclose *Brady* Material (*Brady v. Maryland*, 373 U.S. 87 (1963)) would result in the disclosure of privileged information and, therefore, should be prohibited.[2] In general, the tapes in question involve conversations between an employee of a company involved in the municipal bond investment business and someone who was secretly cooperating in the Government's investigation and recording the conversation.  During these conversations, the employee occasionally discussed prior conversations that he had had with counsel.  A Government filter team reviewing the tapes for privilege has identified portions of the taped conversations containing potentially privileged as *Brady* material.  It is those portions of the tapes that will be disclosed to defense counsel and the Government's trial teams  if the

---

[1]  One Privilege- Claimant appears to argue that any *Brady* material should not be disclosed based solely on selective quotations from the tapes in question without a hearing to determine what precautions were taken by the Government  to prevent intrusion into attorney-client privileged conversation.  (*See* Brune & Richard LLP Memorandum.)

[2]  The Government does not object to limiting any waiver of privileged material, should the Court determine that privilege material exists and that it must be disclosed, to the defendants in the Filed Cases.  *See* Federal Rule of Evidence 502(d).

1

Government's motion is granted.[3] The sum total of the portions of the tapes that contain *Brady* within claimed privileged material amounts to approximately 9 minutes and 30 seconds. Finally, any tapes disclosed to defense counsel are subject to a protective order that places limits on disclosure of discovery materials, including audio tapes, both prior to and during trial.

Before deciding whether the Privilege-Claimants are entitled to a protective order or a hearing, this Court should first determine whether any of the portions of tapes at issue in fact contain privileged information and whether the privilege has been waived. But even if the tapes at issue do contain privileged information, the Defendants in the Filed Cases have a constitutional right to obtain those tape selections because they contain *Brady* material. Moreover, three of the four individual privilege claimants have been identified as unindicted co-conspirators in at least one of the Filed Cases. To the extent that the tapes at issue contain information that could be viewed as *Brady* material with respect to the individual privilege claimants, that same information is likely to contain *Brady* material with respect to the charged defendants, or might lead to the discovery of other Brady material useful to a Defendant. Finally, to the extent that the Privilege-Claimants contend that the Government was guilty of misconduct in obtaining the subject tape recordings, that argument is both wrong and, in any event, premature.

**II.    Argument**

    **A. This Court Should First Determine Whether the Portions of the Tapes at Issue Contain Privileged Information and Whether the Privilege Has Been Waived**

The Privilege-Claimants seek a protective order and hearing on the ground that portions of the taped conversations constitute communications protected by the attorney-client privilege

---

[3] The government has already disclosed to the defense in the Filed Cases all of the tapes at issue with allegedly privileged material redacted. If the Government's motion is granted, those redactions that contain *Brady* material will be disclosed to the defendants and the trial teams.

or protected by the work product doctrine.  The Government takes no position on whether any of the tapes at issue contain privileged communications subject to the attorney-client privilege or on whether any claim of privilege has been waived.  For the Court's convenience, however, the Government briefly outlines the law governing the application of the attorney-client privilege and the work product doctrine and some of the factual issues the Court may wish to address in resolving the privilege issue.

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance."  *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (citing *United States v. Const. Prod. Research*, 73 F.3d 464, 473 (2d Cir. 1996)); *see also Const. Prods. Research*, 73 F.3d at 473 ("To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice.").  The purpose of the privilege "is to encourage attorneys and their clients to communicate fully and frankly and thereby to promote 'broader public interests in the observance of law and administration of justice.'"  *Erie*, 473 F.3d at 418 (*citing Upjohn v. United States*, 449 U.S. 383, 389 (1981)).  Because the privilege "has the effect of withholding relevant information," however, "it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege."  *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also In re Grand Jury Investigation,* 399 F.3d 527, 531 (2d Cir. 2005).

Importantly, the privilege is waived "by a voluntary disclosure of an otherwise privileged communication to a third party."  *National Educ. Training Group v. Skillsoft*, 1999 WL 378337, at *3 (S.D.N.Y. June 10, 1999); *see also United States v. Mejia*, No 10-cr-2724, 2011 WL

3

3715293, at *6 (2d Cir. Aug. 25, 2011).  Finally, "the party claiming the privilege bears the burden of establishing that it has not been waived." *Allied Irish Banks v. Bank of America*, 240 F.R.D. 96, 103 (S.D.N.Y. 2007).

In this case, the recorded conversations are not between a client and his attorney. Accordingly, the issue the court must resolve is whether a discussion of a prior conversation between an attorney and an employee during an otherwise non-privileged recorded conversation makes that portion of the recorded conversation privileged.  If so, the Court would then have to decide whether any claim of privilege was waived by the disclosure of the allegedly privileged information to a non-attorney third-party.  The Government believes that both of these issues can be resolved without the need for an evidentiary hearing.  Moreover, should the Court conclude either that the privilege does not apply or has been waived, the Court need not resolve the issue of whether *Brady* trumps the attorney client privilege.

The attorney work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-511 (1947)).  "The work product privilege is not automatically waived by any disclosure to third persons.  Rather, the courts generally find a waiver of the work product privilege if the disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'"  *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445 (S.D.N.Y. 2004) (quoting *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993).

In this case, the recorded conversations are not that of an attorney providing legal theories or strategies.  In fact, it cannot be determined from the recorded conversations whether

the statements made were true or accurate in purporting to represent what an attorney may have previously related. Thus, the Court should resolve whether statements by a person who is not an attorney which may or may not truthfully or accurately represent what the person was told by an attorney were made with "an eye toward litigation." And if so, whether the broadcasting of such information to another person in whom there may be misplaced trust is a waiver. Again, these are matters that can be decided without a hearing.

> **B. Even if Portions of the Tapes Contain Privileged Information, Any Privileged Information That is *Brady* Material Must be Disclosed to the Defendants in the Filed Cases**

Throughout its supporting Memorandum, the Privilege-Claimants have argued that the portions of the consensual recordings that the Government intends to disclose to the Defendants in the Filed Cases contain attorney-client, work product, or joint defense privileged information, and they have asked this Court for a protective order precluding such disclosure. Noticeably absent from the Privilege-Claimants' Memorandum, however, is any claim that the Government is incorrect in asserting that these portions of the consensual recordings at issue contain exculpatory material that must be disclosed to the Defendants under *Brady v. Maryland*, 373 U.S. 87 (1963).[4] Since the Court has been provided with copies of the relevant tapes and transcripts, it can confirm for itself that the portions of those tapes at issue here contain *Brady* material.

As set forth in the Memorandum in Support of the Government's Application to Disclose *Brady* Material, *Brady* recognized that, in order to ensure a constitutionally fair trial, a criminal defendant has an absolute right to exculpatory information. *See United States v. Rittweger*, 524 F.3d 171, 180 (2d Cir. 2008); *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001)

---

[4] The Government's Application seeks a Court Order to disclose portions of the tapes. It does not seek disclosure of any of the seven tapes in their entirety.

5

("Because *Brady* and its progeny are grounded in the Due Process Clauses of the Constitution, the essential purpose of the rule enunciated in these cases is to protect a defendant's right to a fair trial by ensuring the reliability of any criminal verdict against him."). One Privilege-Claimant argues that *United States v. Winner*, 641 F.2d 825 (10th Cir. 1981) and *United States v. Edelin*, 128 F. Supp.2d 23 (D.D.C. 2001), support its contention that a valid claim of privilege precludes the disclosure of *Brady* material. (*See* Brune & Richard Memorandum at 10). The Government seriously doubts that the Privilege-Claimant is suggesting that the Government can withhold *Brady* information simply because that information is in an otherwise privileged document. In any event, as the Privilege-Claimant concedes, the *Winner*" court did *not* explicitly hold that evidentiary privileges trump *Brady*" (emphasis added). *Id*. Indeed, the primary issue in that case was whether the Tenth Circuit should issue a writ of mandamus to prevent certain high level Department of Justice Officials from testifying at a post conviction hearing. In *Edelin*, the Court correctly rejected the defendant's attempt to discover a purely internal written recommendation to the Attorney General concerning the death penalty in a particular criminal prosecution. In contrast, the audio tapes at issue here contain purely factual information gathered during the Government's investigation that might lead the defense to the discovery of admissible evidence.

      Since the Privilege-Claimants do not contest the Government's determination that the portions of the tapes the Government seeks to disclose are *Brady* material, and the Constitution requires disclosure of *Brady* material to the defense, the Government's motion to disclose should be granted and the motion of the Privilege-Claimants for a protective order and hearing should be denied. That the Privilege-Claimants contend that the Government improperly intruded on their attorney-client privilege to obtain the tapes is irrelevant. Even if true, which it is not, how

the Government acquired *Brady* information does not relieve the Government of its obligation to disclose exculpatory evidence to the defense. To be sure, if the Privilege Claimants are ever indicted, they could move to dismiss that indictment or suppress the tapes in question in their case. *United States v. Haynes*, 216 F.3d 789, 796 (9th Cir. 2000). But they cannot deny the defendants in the Filed Cases of their right to obtain exculpatory evidence in the Government's possession.

### C. The Privilege-Claimants' Remaining Arguments Do Not Require Either a Protective Order or a Hearing

In addition to arguing that the Government has intruded on their attorney-client privilege, the Privilege-Claimants claim that the Government's conduct fell below certain ethical and professional standards, citing a litany of guidelines, cases, and even the Constitution. (*See* Privilege Claimants' Memorandum at pp. 12-20; Privilege Claimant's Memorandum at pp. 7-9). Significantly, however, the authorities the Privilege-Claimants cite concern rights afforded to *defendants*, not third parties, and, in any event, do not establish that the Government engaged in any misconduct in this investigation.

First, the Privilege-Claimants argue that the Government violated DR 7-104(A)(1) of the American Bar Association's Code of Professional Responsibility, which "prohibits a lawyer (or someone acting on the lawyer's behalf) from communicating with a party the lawyer knows to be represented by counsel 'in that matter,' unless the lawyer has the consent of other counsel or the lawyer is 'authorized by law' to make the communication." *United States v. Nouri*, 611 F. Supp. 2d 380, 382 (S.D.N.Y. 2009). The Privilege-Claimants rely upon *United States v. Hammad*, 858 F.2d 834, 840 (2d Cir. 1988), and its progeny for their claim.[5] Their reliance is misplaced, however. In *Hammad*, a cooperator who had been provided with a sham subpoena by the

---

[5] The Privilege-Claimants also cite to *United States v. Longo*, 70 F. Supp. 2d 225 (W.D.N.Y. 1999), *United States v. Buda*, 718 F. Supp. 1094 (W.D.N.Y. 1989) and *United States v. Sam Goody*, 518 F. Supp. 1223 (E.D.N.Y. 1981).

7

prosecutor recorded a conversation with a person represented by counsel. The Second Circuit expressly recognized that the government does not violate any ethical rule when it uses an informant to contact a person represented by counsel in a pre-indictment, non-custodial setting. *Id.* at 840; *see also Grievance Comm. for the Southern District of New York v. Simels*, 48 F.3d 640, 644, 648-50 (2d Cir. 1995) (narrowly interpreting *Hammad* and DR 7-104(A)(1) and stating that state ethical rules restricting contacts with represented persons should be narrowly interpreted to avoid "broad and unwarranted changes in traditional law enforcement and defense practice and procedures."); Model Rules of Prof'l Conduct R. 4.2 cmt. 5 (2011) ("Communications authorized by law [within the meaning of ABA Rule 4.2] may also include investigative activities of lawyers representing governmental entities, directly or through investigative agents, prior to the commencement of criminal or civil enforcement proceedings.").

The only misconduct the *Hammad* court found was the Government's use of a sham subpoena but it nevertheless refused to suppress any evidence. 858 F.2d at 840. In this case, there was no sham subpoena and the pre-indictment contacts at issue were completely consistent with the conduct recognized as authorized by law in *Hammad* and *Simels*. Moreover, even assuming that a third party can seek suppression of evidence in a criminal case based on an alleged ethical violation, the courts have consistently held that "a state rule of professional conduct cannot provide an adequate basis for a federal court to suppress evidence that is otherwise admissible." *United States v. Lowery*, 166 F.3d 1119, 1124 (11th Cir. 1999); *United States v. Condon*, 170 F.3d 687, 690 (7th Cir. 1999); *United States v. Parker*, 165 F. Supp. 2d 431, 447 (W.D.N.Y. 2001). Accordingly, the Privilege-Claimants cannot seek suppression of the

tapes at issue in this case[6] and cannot prevent their disclosure as *Brady* material merely because they erroneously claim a violation of an ethical rule.

The Privilege-Claimants also cite cases recognizing a Fifth Amendment due process claim where there is a "claim of outrageous government conduct premised upon deliberate intrusion into the attorney-client relationship." *See, e.g.*, *United States v. Stringer*, 535 F.3d 929, 941 (9th Cir. 2008) (internal citations omitted). One Privilege-Claimant asserts that witnesses cooperating with the government "engaged in repeated and systematic questioning regarding … communications with counsel" and further claims, without citing any evidence, that such conduct "can hardly be deemed inadvertent." (*See* Bruni & Richard Memorandum at 9). But the cases on which the Privilege-Claimants rely all involve defendants seeking relief in their criminal case. In contrast to those defendants, the Privilege-Claimants have not been charged with any crime and have no right to interfere with the constitutional rights of the defendants in the Filed Cases to obtain exculpatory evidence. If the Privilege-Claimants are charged with some offense arising from this investigation, they can seek whatever relief they believe is appropriate in their own criminal case. Indeed, it is at best premature to address claims of alleged prosecutorial misconduct raised by persons who are not defendants in the criminal case when the Government does not intend to use the tapes in question as part of its case-in-chief. Since there is nothing to suppress, there is no reason to conduct a hearing to determine whether there is any basis for suppression.[7]

---

[6] In any event, there is no evidence to suppress in this case since the Government does not intend to introduce any of the tapes in question in its case in chief in any of the Filed Cases.

[7] Should the defense seek to use the tapes at issue as part of their case, or the Government decides to use those tapes as part of its rebuttal case, the Court can determine at that time whether the tapes in question are admissible for any purpose.

In any event, the Government was fully aware of its legal and ethical obligations with respect to the attorney-client privilege and work-product protection during all phases of the Filed Cases. Indeed, the privilege issue is before the Court because the Government filed an application to disclose potentially privileged audio tapes that also contain *Brady* information to the Defendants in these cases. The Government knew this issue existed because it had all the audio tapes reviewed for privilege by a filter team to a make sure that the prosecutors conducting the investigation were not exposed to any potentially privileged information. And when the Government's filter team discovered potentially privileged information on some tapes, it provided notice to possible privilege holders so they could assert any claims they wished to make. Thus, to the extent any privileged conversations may have been recorded, the Government did not profit from that information because the filter team redacted that information from the tapes provided to the prosecutors who, in any event, will not be using the tapes in question at trial during the Government's case in chief. Under these circumstances, there is no reason to hold a hearing about issues that will likely have no impact on the cases currently scheduled for trial.

Finally, the Privilege-Claimants may not rely on the FBI's Manual of Investigative Operations and Guidelines for two reasons. First, while the Privilege-Claimants argue that the Government violated § 137-4(12) of those internal FBI Guidelines,[8] that section expressly limits the use of informants to elicit information once an individual "has been charged by indictment." In this case, the recordings in questions were not made after the Privilege-Claimants were charged by an indictment. Rather, at the time the recordings were made, they had not been

---

[8] Section 137-4(12) reads: "Informants will not be used to obtain information relating to legal defense plans or strategies. When a person has been formally charged with a crime and criminal proceedings are still pending, informants will not be used to deliberately elicit information concerning the crime(s) for which the person was charged. An individual is formally charged when he/she has been charged by indictment or information or after his/her initial appearance following arrest."

10

charged with any crime and, to this day, are not under indictment. Hence, the FBI's use of informants cannot be challenged in the current litigation. Second, nothing in an internal Government manual can create any procedural or substantive rights, privileges, or immunities that can be invoked against the Government in any civil or criminal case. *United States v. Caceres*, 440 U.S. 741 (1979). Accordingly, even if the Government had violated § 137-4(12) in this case, and as previously noted it did not, that violation would not entitle them to any relief.

### III.  Conclusion

For the reasons set forth in this Memorandum, the Privilege-Claimants' Motion for a protective order and hearing should be denied.

Respectfully submitted,

*/s/ Charles V. Reilly*

| | |
|---|---|
| DEIRDRE A. McEVOY | CHARLES V. REILLY |
| Chief, New York Field Office | LUCY MCCLAIN |
| Antitrust Division | Trial Attorney, Antitrust Division |
| U.S. Department of Justice | U.S. Department of Justice |
| | 26 Federal Plaza, Room 3630 |
| | New York, NY  10278 |
| | (212) 335-8039 |

Dated:  November 14, 2011
        New York, New York

11