# LANKLER SIFFERT & WOHL LLP

ATTORNEYS AT LAW

33RD FLOOR
500 FIFTH AVENUE
NEW YORK, N.Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

December 16, 2011

Honorable Harold Baer, Jr.
Honorable Victor Marrero
Honorable Kimba Wood
United States District Judges
500 Pearl Street
New York, New York 10007-1312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/19/11

Re:  United States v. Carollo, et al., 10 Cr. 654 (HB)
     United States v. Rubin/CDR., et al., 09-CR-1058 (VM)
     United States v. Ghavami, et al., 10-CR-1217 (KW)

Dear Judges Baer, Marrero and Wood:

On behalf of defendants and third-party privilege claimants ("Counsel"), we respectfully enclose our version of the proposed Joint Statement, including our version of the Areas of Agreement and a revised Counsel's Statement.

Yesterday, we transmitted the attached version of the Areas of Agreement to the government for its comment, hoping to come to a resolution. The government did not respond. In order to comply with the Court Order dated December 7, we respectfully submit Counsel's version of the proposed Joint Statement, leaving blank the government's position.

Respectfully submitted,

John S. Siffert

JSS:ac

Enclosures

cc: Charles Reilly, Esq.
    Laura Heiser, Esq.
    Lucy McClain, Esq.
    Deirdre McEvoy, Esq.
    All defense counsel in *United States v. Carollo, et al.*
    All defense counsel in *United States v. Rubin/ CDR, et al.*
    All defense counsel in *United States v. Ghavami, et al.*
    Richard Scheff, Esq.
    Chris Hall, Esq.
    Nina Beattie, Esq.

## COUNSEL'S VERSION OF JOINT STATEMENT

### I. Areas of Agreement

***Format of the hearing and the order of presentation.*** The parties will each have an opportunity for an opening statement, and to call witnesses. The parties may introduce other relevant evidence, followed by closing remarks or post trial briefing, as the Court may direct.

***Witnesses.*** FBI Special Agents Mulvey and Zachariades will testify.

***Affidavits.*** The Government shall submit an affidavit of IRS Special Agent Eric Sullivan; affidavits of the prosecution team attorneys, Rebecca Meiklejohn, Steven Tugander and Kevin Hart; affidavits from the original filter team attorneys, Melvin Lublinsky, Jackie Distelman; and Charles Reilly, who served as the Government's filter team starting in April 2011. The parties agree that the subject matter of these affidavits shall cover matters relevant to the hearing, but the scope of the affidavits is not agreed upon. The parties agree that, upon request of Counsel, the government will call the affiants or make them available for Counsel to call, if the Court determines that their affidavits warrant their testimony. The government shall submit affidavits of the six confidential informants by December 19, as required by this Court's order dated December 15, 2011.

***Documents.*** The Government will produce (1) all public policies and protocols of the Department of Justice, the Antitrust Division, and the FBI in effect at the time of the tapings; (2) all relevant *Giglio* documents of all witnesses, affiants, and cooperators, including any instructions given to, reviewed by or acknowledged by any cooperator (written instructions and admonitions to be produced by December 14); (3) all section 3500 material for witnesses to testify at the hearing; (4) all 302s that relate to consensual recordings and all 302s that relate to the hearing; (5) all hard-copy and electronic written materials concerning recordings about communications with counsel; (6) all documents regarding the unredacted privileged tape mentioned in the government's November 22 letter to the Court; (7) all documents (and subject to further agreement with Counsel, possibly the electronic document metadata) showing when allegedly privileged material was identified and action taken as a result; (8) those portions of the transcripts of the monitored conversations setting forth the questions or statements posed by the cooperators to the targets that resulted in disclosure of privileged information to the extent that the production of those questions does not itself disclose privileged material; and (9) all documents set forth in this Court's order dated December 16, 2011.

### Counsel Position

***Scope of the Hearing.*** This Court ordered an evidentiary hearing "to further develop the factual record as to the management of the confidential informants and any potential related intrusion into any privilege during the government investigation related to the three above-captioned prosecutions." This hearing was necessitated, in part, by the government's position that Counsel are "wrong" that any taint occurred, 11/22/2011 Letter from Charles Reilly to the Court, at 2; and that the government acted appropriately because "the FBI instructed the

1

cooperating witnesses not to inquire about conversations with counsel and reiterated those instructions on an annual basis," Reilly Letter at 2-3, *see also* Tr. at 14, 15. The government repeatedly has declined Counsel's invitation to conduct its own investigation of what occurred and to put before the Court a full record of what happened.

It is not disputed that the government engaged in a significant taping program of targets known to be represented by counsel. The tapes produced to date demonstrate that the government caused at least eight cooperators to tape at least 33 individuals on a total of 350 occasions. According to the privilege logs that have been produced, at least seven cooperators invaded the privilege of 15 people on 28 occasions.

Counsel disagree with the government's position that "the only issues to be addressed at the December 20, 2011 hearing are (1) ... whether the Government or its agents intentionally elicited attorney client privilege communications ... and (2) whether any member of the trial staffs ... may have been tainted..." The government ignores the issues raised and argued by Counsel on December 2; namely, that a hearing is required to test the following two, alternative hypotheses about the government taping program: either (1) the government violated the applicable Disciplinary Rules and this Court's precedent by instructing cooperators to inquire into conversations that they had with their counsel; or (2) the witnesses violated government instructions not to do so. At the December 2 argument, the government argued that the witnesses were given appropriate instructions, suggesting the possibility that both hypotheses may be correct. Inadequate or improper instructions may have been given to cooperators who were managed with inadequate oversight and who, nevertheless, ignored the insufficient instructions.

At the argument, the government made representations to the Court that were incomplete and did not explain what had happened. For example, the government did not set forth what specific instructions each government attorney and agent gave to each confidential informant on the subject at issue. Nor did the government set forth in detail what each attorney and agent did when he or she learned of the privilege intrusions to prevent any recurrence. It appears that an FBI Agent wired Dean Pinard, resulting in 11 occasions on which Pinard elicited privileged information from five targets. The government did not explain why *Hammad*'s teachings that require compliance with New York Rule of Professional Ethics 4.2 (formerly DR 7-104(A)(1) of the NY Code of Professional Responsibility), apparently were not followed. It is also difficult to jibe the recurrent intrusions into privileged communications with the government's assertion that it had acted properly when it established a taint team as of November 2006 to monitor the taping. Tr. at 14. It remains unclear which tapes the 2006 taint team reviewed for privilege and when; who heard such tapes before privileged portions were identified; why the government instituted a new taint team in or about April 2011; what (if any) different conclusions about privilege the April 2011 taint team reached; and why the taint team took no apparent steps to prevent further intrusions.

Common sense suggests that seven cooperators would not have asked 15 individuals about communications with their lawyers on 28 occasions, unless each had been trained to do so by the monitoring agent. This is especially so where, as here, most of the cooperators pled guilty and are dependent on the government to submit a favorable 5K.1 letter at sentencing.

2

In order to ascertain whether the cooperators were instructed to intrude into areas protected by privilege with knowledge that the rules and policies prohibit doing so, or whether it was an accident that occurred at least 28 times, requires a full record of how the taping program began, how it was managed by the agents and how it was supervised by Division attorneys. The government has been careful not to set forth the actual instructions and admonitions that were given; when they were given; to which cooperator(s) they were given; by whom they were given; and who has knowledge of them. The affidavits of the government attorneys that have been submitted do not provide these facts and raise many unanswered questions. Testimony from at least some of the government attorneys may be required. Counsel are not in a position to know which attorneys and which confidential informants should testify, until Counsel receive the affidavits of the confidential informants on December 19th. Counsel have reviewed the affidavit of supervising IRS Agent Sullivan, who acknowledges that the line IRS agents have knowledge of the handling of the confidential informants. In addition, the material that has been produced demonstrates that other line FBI Agents have have personal knowledge of the management of the taping program and the privilege intrusions. Counsel ask that the following agents submit affidavits or, if appropriate, testify: **FBI Special Agents Joy Mitchell, Brian Gander, Kevin Long, Alex Esconde, and Robert Silveri; IRS Special Agents Caroline Truesdell and Adrian Davila**.

Counsel are currently attempting to obtain from the government those portions of the transcripts that set forth the questions or statements posed by the cooperators to the targets that resulted in disclosure of privileged information (to the extent that the production of those questions does not itself disclose privileged material). Counsel will need those transcripts for the hearing. Counsel also have asked the government to produce all non-public policies and procedures of the Department of Justice, including sections of FBI manuals, that relate to the subject of the hearing.

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by _defendants and third parties_.
>
> **SO ORDERED.**
>
> 12-19-11
> DATE            VICTOR MARRERO, U.S.D.J.