

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/23/11

**U.S. Department of Justice**

Antitrust Division



RECEIVED

DEC 23 2011

CHAMBERS OF
JUDGE MARRERO

*Laura Heiser*
*Attorney*

*Direct Dial: 215/597-7413*
*E-mail: laura.heiser@usdoj.gov*

*Philadelphia Field Office*

*The Curtis Center, Suite 650 W*
*170 S. Independence Mall West*
*7th and Walnut Street*
*Philadelphia, Pennsylvania 19106-2424*

*215/597-7401*
*(Commercial & FTS)*
*FAX 215/597-8838*

December 23, 2011

BY HAND DELIVERY

The Honorable Harold Baer, Jr.
United States District Court
Southern District of New York
500 Pearl Street, Suite 2230
New York, New York 10007-1312

The Honorable Kimba M. Wood
United States District Court
Southern District of New York
500 Pearl Street, Suite 1901
New York, New York 10007-1312

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street, Suite 1040
New York, New York 10007

Re:   *United States v. Carollo, et al.*, 10-CR-00654
      *United States v. Rubin, Chambers, Dunhill, et al.*, 09-CR-01058
      *United States v. Ghavami, et al.*, 10-CR-01217

Dear Judges Baer, Marrero, and Wood:

The Government respectfully submits this letter in response to the Court's request that it summarize the evidence produced at the December 20, 2011 hearing and inform the Court of the relevance of any consensual recording to any of the three filed cases.

**I.    Relevance of Consensual Recordings to Each of the Three Cases**

With respect to the relevance of the consensual recordings to the three filed cases, the Government represented at the outset of the hearing that it will not use any of the 325 consensual recordings during its cases-in-chief in any of the upcoming trials in the above-captioned cases. In addition, Dean Pinard will not be a witness in any of the above-captioned cases.

Of the 325 consensual recordings, there are currently 40 recordings with respect to which a potential claim of privilege has been flagged by the Government.  The Government's

1

privilege log reflecting those 40 recordings is attached as Exhibit A ("November 2, 2011 Log").[1] The Government already has provided the Court with 15 of those recordings in connection with its *Brady* Application and the December 20 Hearing. The Government also will provide the Court with a copy of any recording the Court might wish to hear.

In *United States v. Rubin, Chambers, Dunhill, et al.,* the Government intends to call the following cooperating witnesses to testify at trial: Dani Naeh, Douglas Goldberg, Douglas Campbell, Matthew Rothman, and Mark Zaino. The Government will not use any of the consensual recordings made by these cooperators in its case-in-chief at the *CDR* trial and the consensual recordings post-date the evidence that will be adduced at trial in that case.[2] Two of the recordings on the November 2, 2011 Log were made with defendant Wolmark, and there are no recordings on the log of defendants Rubin or Zarefsky.

In *United States v. Carollo, et al.,* the Government will not use any of the consensual recordings in its case-in-chief, and none of the 40 recordings on the November 2, 2011 Log involve defendants in that case. While the Government will call Goldberg, Naeh, Rothman and Zaino as witnesses in the *Carollo* case, none of the recordings made by those cooperators will be used in the Government's case-in-chief, and the consensual recordings post-date the evidence that will be adduced at trial in that case.

With respect to *United States v. Ghavami, et al.,* none of the consensual recordings will be used in the Government's case-in-chief. The cooperating witnesses that will be called in the *Ghavami* case include Goldberg, Naeh, Rothman, Zaino and Campbell. Five of the recordings on the November 2, 2011 Log involve defendant Gary Heinz, and there are no tapes on the log of defendants Ghavami or Welty. None of the consensual recordings of those cooperating witnesses will be used in the Government's case-in-chief, and with the exception of Count Six, the obstruction count, the evidence the Government will introduce at trial pre-dates the making of the consensual recordings.

## II.     There Is No Evidence That the Government Intentionally Intruded into Anyone's Attorney-Client Privilege

The Court also requested the parties address the Government's management of the confidential informants and any intentional intrusion by prosecutors or agents into the attorney-client privilege.

First, there is no evidence that the Government prosecutors or agents instructed cooperators to elicit privileged material from the persons being recorded. To the contrary, the

---

[1] The third-party privilege claimants have not proven, nor has the Court ruled that any of the 40 recordings on the November 2, 2011 Log are in fact privileged. The Government continues its discussions with third parties concerning claims of privilege as to the 40 flagged recordings, as well as any other recordings the third parties identify.

[2] The consensual recordings began in February 2006. The substantive evidence of conspiracy in each of the three indicted cases pre-dates the Government's use of consensual recordings.

evidence presented reflects that cooperators were instructed <u>not</u> to elicit privileged information. FBI Special Agents Melissa Zachariades and Thomas Mulvey testified that they annually gave admonishments to the cooperators <u>not</u> to elicit attorney client privileged information, which are reflected in FBI records (Tr. 12/20/11 Hearing at pp. 11-12, 56-57 and GX 4-8, 13). The agents also testified that they gave oral instructions to the cooperators not to elicit attorney-client privileged information <u>every</u> time a cooperator made a consensual recording (Tr. 12/20/11 Hearing at pp. 14, 58).

Moreover, the affidavits submitted by three Government prosecutors establish that they did not instruct or direct witnesses to elicit or inquire into attorney-client privileged information.[3] Indeed, trial attorney Rebecca Meiklejohn instructed cooperators to avoid eliciting any such information (Affidavit of Rebecca Meiklejohn, at para. 4-5). Finally, the six cooperating witnesses confirm in their affidavits that they were never instructed to elicit attorney-client privilege communications.[4] Therefore, the evidence establishes that the Government followed proper procedures and did not attempt to elicit attorney-client privileged information. Neither defendants nor the privilege claimants have produced a scintilla of evidence even suggesting misconduct on the part of the Government in the making of the consensual recordings. Nor have they established that they were prejudiced as a result of any Government conduct.

Second, there are only three recordings in which the cooperators' questions may have elicited privileged information and those have been provided to the Court. *See* Exhibit A attached under seal to the Affidavit of Charles Reilly. Of those three recordings, two were made by Dean Pinard, who will not be a witness in any of the indicted cases. The third was made by Douglas Goldberg. That conversation however, represents the kind of ordinary ebb and flow of conversation that the court in *United States v. Nouri*, 611 F.Supp. 380, 384-85 (S.D.N.Y. 2009), recognized was not an attempt to intentionally elicit attorney-client privileged communication in a pre-indictment, non-custodial setting.

To the extent the defendants suggest that the Government must have done something wrong because it initially designated 40 (out of 325) recordings as potentially privileged, they are wrong. The Government took an overly cautious approach in designating recordings as potentially privileged to satisfy the privilege holders' demands while complying with its *Brady* obligations. But of those 40 recordings, only three arguably involve a situation in which a cooperating witness attempted to inquire into communications with counsel. Therefore, the number of instances where the cooperators' questions may have elicited privilege information is far fewer than defendants claim. Indeed, of the 40 recordings, the vast majority involve instances where the person being recorded volunteered information about an attorney and the cooperating witness merely responded in the ordinary flow of conversation. Accordingly, the Government respectfully submits that the Court should reject defendants' and privilege

---

[3] Affidavits of Kevin Hart, at para. 5; Steven Tugander, at para. 5; and Rebecca Meiklejohn, at para. 6.

[4] Affidavits of Dani Naeh, at pp. 1-2; Douglas Goldberg, at para. 4; Matthew Rothman, at para. 4 and 6; Mark Zaino, at para. 2; Douglas Campbell, at para. 4-6; Dean Pinard, at para. 3 and 8.

claimants' allegation that the prosecution or agents instructed cooperators to elicit, or otherwise intentionally elicit privileged material during the making of the consensual recordings.

## III.   There Has Been No Taint That Warrants Disqualification of a Prosecutor

The Court also asked the parties to address whether the Government's prosecution teams were tainted by exposure to any of the privileged material. Based on the evidence presented by the Government at the December 20 hearing, the Court should summarily reject defendants' assertion that the prosecution teams have been tainted. In determining whether any member of the prosecution teams in the three pending cases may have been tainted, *United States v. Nardone*, 308 U.S. 338 (1939), is controlling. *Nardone* holds that the defendants must show that the allegedly tainted evidence constitutes a substantial portion of the Government's case. *Id*. at 341; *see also United States v. Sacco*, 563 F.2d 552, 558 (2d Cir. 1977) (quoting *United States v. Sapere*, 531 F.2d 63, 66 (2d Cir. 1976)). This the defendants cannot do because as the Government has already stated it will not seek to introduce any of the allegedly privileged tapes in its cases-in-chief in any of the three above-captioned cases. Nor will the Government seek to introduce evidence that is derivative of these consensual recordings in its case-in-chief.

Moreover, the evidence presented at the December 20, 2011 hearing demonstrated that none of the prosecution teams were tainted by any of the consensual recordings. Agents Zachariades and Mulvey testified that they initially screened within 24 to 48 hours all the privileged recordings and referred any recording which contained potentially privilege information to the original filter team (Tr. 12/20/11 Hearing at pp.19-20, 45, 59).[5] This testimony was confirmed by the affidavits of the filter team attorneys (Affidavits of Melvin Lublinski and Jackie Distelman). The filter team also reviewed every tape for potential privilege, including *but not limited to*, those submitted to them as potentially privileged by the FBI (*see* Letter to the Court dated 11/22/11 at p. 2; Reply in Support of *Brady* Application dated 11/14/11 at p. 3, para. 12). This fact is confirmed by the Affidavit of Charles Reilly, who states that earlier filter teams identified 67 recordings as potentially privileged which exceeds the number of recordings the FBI turned over to the taint team (Affidavit of Charles Reilly at para. 5-6). Therefore, the filter team did not simply wait for the FBI to identify potentially privileged tapes, but reviewed the consensual tapes themselves to make an independent determination of whether any of the recordings were privileged. [6]

---

[5] Agents Zachariades and Mulvey further testified that they never shared potentially privileged tapes with the trial team (Tr. 11/20/11 hearing at 20-59).

[6] Contemporaneous documents, to which the FBI Agents did not have access, show that the filter team reviewed more than the recordings submitted to them by the FBI. *See e.g.*, 2/21/08 email from Jacqueline Distelman to John McReynolds stating that she and the other member of the filter team "have reviewed approximately 55-60 consensual recordings, generally within a couple of days of receipt. We have played the tapes for the staff stopping the tape and skipping the portion that we deem to be arguably privileged. . ." (Attached hereto as Exhibit B) (MUNI-MISC 000721); *see* Memorandum from Melvin Lublinski to a paralegal, dated 5/25/07 stating that he and Jacqueline Distelman "have reviewed for privilege the following consensual monitored recordings (identified on the basis of the FBI's log numbering:" He then lists approximately 33 recordings (Attached hereto as Exhibit C) (MUNI-MISC 000716).

The filter team, after its review of the consensual recordings, kept any potentially privileged recordings under their custody and control. While the filter team did play non-privileged segments of consensual recordings that were flagged as containing potentially privileged material for the prosecution team, they redacted the recordings before they were played so that no member of the prosecution team would have access to the privileged portions of the recordings (Affidavits of Jacqueline Distelman, at para. 6, Melvin Lublinski, at para. 6). Accordingly, while a prosecution team member may have listened to a recording designated as potentially privileged or on the Government's privilege log, he or she did not listen to those portions of the recording that contained the allegedly privileged information.

When the initial members of the filter team retired, additional filter team members were put in place to perform a review of the consensual tapes for privilege and to keep the trial team attorney's from accessing any privileged portions of any recording. Three of the Government's prosecutors have provided affidavits expressly stating that they never listened to any recording that contained potentially privileged information (Affidavits of Rebecca Meiklejohn, at para. 10-12 , Steven Tugander, at para. 7-9, and Kevin Hart, at para. 7-9).

Moreover, any exposure to allegedly privileged material in these cases was *de minimus,* resulted in no benefit to the Government's investigation of the defendants, and has caused the defendants in the three cases no prejudice. The Government's exhaustive internal investigation has revealed that there were only three instances involving four recordings in which there was an inadvertent disclosure of the potentially privileged material. Each instance involved a recording that, in an abundance of caution, the Government flagged as containing potentially privileged information, but upon further review, none of those recordings appear to contain privileged information as to those recorded. Copies of those recordings were provided to the Court as Exhibit B under seal to the Reilly Affidavit. Further, defendants' suggestion at the December 20 hearing that the prosecution team was tainted by exposure to indices of consensual recordings or briefings with FBI agents also should be rejected.[7] Defendants presented no evidence that either the indices or the agents exposed the three prosecuting teams to privileged material that constitutes a substantial portion of the Government's evidence, or was used to advance the Government's case against the defendants in these cases.

<table>
<tr><td>

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by

*the Government* .

**SO ORDERED.**

*12-23-11*

DATE      VICTOR MARRERO, U.S.D.J.

</td><td>

Respectfully submitted,

*[signature]*

LAURA HEISER
LUCY MCCLAIN
Trial Attorneys, Antitrust Division
United States Department of Justice

</td></tr>
</table>

cc: All defense counsel (by email)
      Counsel for privilege-claimants (by email)

---

[7] Defendants sought to rely on an email from Agent Mulvey briefing the prosecution team on one of the consensual recordings of a person who is not a defendant in any of the filed cases (DX 5). Agent Mulvey's email simply states that the person recorded told the cooperator that the statute of limitations was running out. Even assuming this recording contained privileged material, the person recorded waived any privilege to the extent he voluntarily revealed to the cooperator what his attorney said.

# Exhibit A

Subject to Work Product Stipulation

**Consensual Recording Privilege Log**
Originally Produced June 22, 2011, Updated August 4, 2011, Updated November 2, 2011

| # | ID | Recording Date | Recording Individual | Person Recorded | Holder of the Privilege | Type of Privilege Claimed | Reason for Redaction | Times Redacted | Brady Portions | Original Duration | Redacted Duration |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CR-0000002 | 2/15/2006 | Douglas Campbell | Martin McConnell | Douglas Campbell | Attorney Client | Discussions with counsel about investigation. | 0:24:49-0:25:10 | - | 00:31:37.431 | 00:31:16.414 |
| 2 | CR-0000006 (enhanced)' | 8/16/2005 | Mark Zaino | Gary Heinz | Mark Zaino | Attorney Client | Discussions with counsel about business article | 0:02:59-0:03:01 | 0:17.20 | 0:17:20 | 0:17:17 |
| 3 | CR-0000010 | 8/31/2006 | Douglas Campbell | James Engel | James Engel | Attorney Client | Discussions with counsel about investigation. | 0:53:24-0:53:27; 0:53:50-0:55:30; 0:56:22-0:56:35; 0:57:36-0:57:44; 0:58:08-0:58:10; 1:36:07-1:38:11 | - | 02:00:38.588 | 01:56:37.508 |
| 4 | CR-0000011-001-R | 9/13/2006 | Mark Zaino | Chris Winters, Stewart Wolmark, Chris Winters and others unknown | Mark Zaino and UBS | Attorney Client | Discussions with counsel about potential investigation. | 0:34:00-0:34:10; 0:37:00-0:37:10 | - | 00:57:54.013 | 00:57:33.992 |
| 5 | CR-0000011-002-R | 9/13/2006 | Mark Zaino | Stewart Wolmark, Chris Winters and others unknown | Mark Zaino and UBS | Attorney Client | Discussions with counsel about investigation. | 0:31:48-0:31:57; 1:04:45-1:06:54 | - | 01:21:58.574 | 01:19:40.548 |
| 6 | CR-0000012-R | 9/13/2006 | Mark Zaino | Mark Zaino | Mark Zaino | Attorney Client | Discussions with counsel about investigation | 0:32:40 - 0:32:50; 1:06:38-1:07:03; 0:47:45-0:48:05; 1:18:40-01:20:00; 1:35:45- | - | 01:24:22.215 | 01:22:47.207 |
| 7 | CR-0000014 | 10/12/2006 | James Engel | Dean Pinard | Dean Pinard | Attorney Client | Discussions with counsel about investigation. | 01:36:30; 1:37:00-01:37:50; 01:39:00-01:39:35 | - | 02:21:54.803 | 02:19:14.766 |
| 8 | CR-0000018-R | 11/15/2006 | Dean Pinard | Michael Frasco | Dean Pinard | Attorney Client | Discussions with bank attorneys about investigation. | 03:05-03:07; 0:06:26-0:06:55; 0:10:40-0:11:00; 0:14:28-0:14:40 | - | 00:18:42.021 | 00:17:41.008 |
| 9 | CR-0000023-R | 11/16/2006 | Dean Pinard | Martin Stallone | Dean Pinard and Martin Stallone | Attorney Client | Discussions with counsel about investigation. | 0:06:55-0:08:15; 0:08:30-0:09:57; 0:28:06-0:28:42; 0:49:23-0:49:30 | - | 00:58:13.836 | 00:54:43.772 |
| 10 | CR-0000026-R | 11/17/2006 | Dean Pinard | Martin Stallone, Dean Pinard | Martin Stallone | Attorney Client | Discussions with counsel about investigation. | 0:28:24 - 0:28:42 | 0:06:50-07:00; | 00:58:13.836 | 00:57:55.820 |
| 11 | CR-0000028-R | 11/20/2006 | Dean Pinard | Martin Stallone, Dean Pinard | Dean Pinard and Martin Stallone | Attorney Client | Discussions with counsel about investigation. | 0:2:00-0:2:35; 0:5:14-07:00; 0:11:48-0:13:20 | 0:12:03-0:12:12 | 00:25:32.628 | 00:21:39.620 |
| 12 | CR-0000029 | 11/20/2006 | Dean Pinard | Gene Cahalan | Dean Pinard | Attorney Client | Email to counsel | 0:06:17-0:06:37 | - | 00:08:49.116 | 00:08:29.092 |
| 13 | CR-0000030-R | 11/20/2006 | Dean Pinard | Gib Carpenter; Dean Pinard | Dean Pinard and Gib Carpenter | Attorney Client | Discussions with counsel about investigation. | 0:03:30-0:05:00; 0:08:00-0:08:44; 0:09:10-0:09:34; 0:11:20-0:12:50; 0:14:26-0:15:40; 0:16:51-0:17:06; 0:18:05-0:18:35; 0:20:10-0:20:35 | 0:14:26-0:15:40; 0:16:51-0:17:06; 0:18:05-0:18:35 | 00:31:53.484 | 00:25:21.420 |
| 14 | CR-0000034 | 11/20/2006 | Dean Pinard | Gene Cahalan | Dean Pinard | Attorney Client | Discussions with counsel about investigation. | 0:02:20-0:03:19 | - | 00:07:51.048 | 00:06:52.040 |
| 15 | CR-0000036-R | 12/4/2006 | Dean Pinard | Gib Carpenter, Dean Pinard | Dean Pinard and Gib Carpenter | Attorney Client | Discussions with counsel about investigation. | 0:02:30 - 0:05:18; 0:07:03 - 0:07:30; 0:11:14 -; 0:12:55; 0:14:00 - 0:14:30; 0:18:43 | - | 00:26:06.804 | 00:18:40.716 |
| 16 | CR-0000037-R | 12/6/2006 | Dean Pinard | Martin Stallone, Dean Pinard | Dean Pinard and Martin Stallone | Attorney Client | Discussions with counsel about investigation. | 0:06:24 - 0:08:50; 0:12:09 - 0:12:25; 0:17:18 - | 0:06:24-0:08:50; 0:16:09-0:16:49 | 00:21:08.292 | 00:17:10.236 |
| 17 | CR-0000040-R | 12/8/2006 | Dean Pinard | Martin Stallone, Dean Pinard | Dean Pinard and Martin Stallone | Attorney Client | Discussions with counsel about investigation. | 0:32:27 - 0:32:42; 0:48:44 - 0:50:00; 0:58:20 -; 1:00:00 | - | 02:12:32.323 | 02:09:21.287 |
| 18 | CR-0000041-R | 11/29/2006 | Dean Pinard | Dean Pinard and Martin Stallone | Dean Pinard | Attorney Client | Discussions with counsel about investigation. | 0:04:56 - 0:06:18; 0:07:25 - 0:26:40; 0:27:00 -; 0:27:14 (end) | - | 00:27:14.412 | 00:06:24.984 |
| 19 | CR-0000043-R | 11/29/2006 | Dean Pinard | Martin Stallone | Martin Stallone | Attorney Client | Discussions with counsel about investigation. | 0:08:34 - 0:08:54 | - | 00:15:18.372 | 00:14:58.356 |
| 20 | CR-0000053-R | 9/24/2007 | Dani Naeh | Patrick Marsh | Patrick Marsh | Attorney Client | Discussions with counsel about bond market re: investigation | 0:13:25-0:13:55 | 0:13:25-0:13:55 | 00:15:51.672 | 00:15:21.664 |
| 21 | CR-0000054 | 11/29/2007 | James Engel | John Trefethen, Johan Rosenberg | John Trefethen, Johan Rosenberg | Attorney Client | Discussions with counsel about investigation. | 1:11:31-1:11:40 | - | 02:55:14.274 | 02:55:05.263 |
| 22 | CR-0000055 | 11/29/2007 | James Engel | Johan Rosenberg | Johan Rosenberg | Attorney Client | Discussions with counsel about investigation. | 1:09:44-1:09:53 | 0:17:30-0:18:50; 0:21:40-0:22:40; 0:23:40-0:24:03 | 02:53:16.502 | 02:53:07.489 |
| 23 | CR-0000057-R | 11/9/2007 | Dani Naeh | Dani Naeh, Patrick Marsh | Patrick Marsh | Attorney Client | Discussions with counsel about investigation. | 0:17:30 - 0:18:54; 0:19:07 - 0:24:09 (end) | | 00:24:09.024 | 00:17:42.984 |
| 24 | CR-0000058-R | 1/27/2008 | Dani Naeh | Dani Naeh, Patrick Marsh | Patrick Marsh | Attorney Client | Discussions with counsel about investigation. | 0:04:56 - 0:09:40; 0:11:25 - 0:13:45 | - | 00:16:18.572 | 00:09:14.548 |
| 25 | CR-0000059-R | 3/2/2008 | Dani Naeh | Patrick Marsh | Patrick Marsh | Attorney Client | Discussions with counsel about investigation. | 0:02:37-0:02:41 | - | 00:03:34.728 | 00:03:30.704 |
| 26 | CR-0000063-R | 6/4/2008 | Doug Goldberg | Patrick Marsh | Patrick Marsh | Attorney Client | Discussions with counsel about investigation. | 0:52:56-0:55:10; 0:55:19-0:57:45 | - | 01:26:47.121 | 01:22:07.049 |
| 27 | CR-0000082 | 1/4/2008 | James Engel | Jay Saunders | Jay Saunders | Attorney Client | Discussions with counsel about investigation. | 0:10:07-0:10:21; 0:10:39-0:10:45 | - | 00:18:49.968 | 00:18:29.920 |
| 28 | CR-0000185-R | 11/28/2006 | Mark Zaino | Gary Heinz | Mark Zaino and Company employing Zaino | Attorney Client | Directions of Counsel to employees | 0:04:11 - 0:05:15 | - | 00:09:55.632 | 00:08:51.624 |
| 29 | CR-0000205-R | 9/20/2007 | Doug Goldberg | Patrick Marsh | Patrick Marsh | Attorney Client | Discussions with counsel about investigation. | 0:2:15-0:4:10 | 0:04:08-0:04:15 | 00:05:25.592 | 00:03:30.376 |

Subject to Work Product Stipulation

**Consensual Recording Privilege Log**
Originally Produced June 22, 2011, Updated August 4, 2011, Updated November 2, 2011

| # | ID | Recording Date | Recording Individual | Person Recorded | Holder of the Privilege | Type of Privileged Claimed | Reason for Redaction | Times Redacted | Brady Portions | Original Duration | Redacted Duration |
|---|----|----|----|----|----|----|----|----|----|----|----|
| 30 | CR-0000215-R | 11/30/2006 | Mark Zaino | Gary Heinz | Mark Zaino | Attorney Client | Discussions with counsel about investigation. | 0:01:31 - 0:02:04 | - | 00:03:02.256 | 00:02:29.256 |
| 31 | CR-0000222 | 5/9/2008 | James Engel | Jason Michaels | James Engel's employer | Attorney Client | Discussions with counsel about investigation. | 0:10:00-0:10:26 | - | 00:27:02.712 | 00:26:36.696 |
| 32 | CR-0000235 | 9/11/2009 | Martin Kanefsky | Martin Kanefsky, Vince Bernadeau, John Hsu, Shannon LNU[2] | Vincent Bernadeau | Attorney Client | Discussions with counsel about investigation. | 1:43:40-01:45:20; 1:44:00-1:45:20 | - | 02:52:03.034 | 02:49:03.020 |
| 33 | CR-0000236 | 11/12/2009 | Martin Kanefsky | Martin Kanefsky Chris Fairchild | Chris Fairchild | Attorney Client | Discussions with counsel about investigation. | 0:44:49-0:45:49 | - | 01:56:24.562 | 01:55:24.551 |
| 34 | CR-1000013-032-R | 8/31/2006 | Mark Zaino | Gary Heinz; Mark Zaino | Mark Zaino, Gary Heinz and UBS | Attorney Client | Discussions with counsel about investigation. | 0:1:29-0:6:42 | - | 00:08:21.760 | 00:03:08.744 |
| 35 | CR-1000016-c | 11/15/2006 | Dean Pinard | David Eckhart | Dean Pinard | Attorney Client | Discussions with counsel about investigation. | 0:1:56-0:2:00 | - | 00:04:49.344 | 00:04:45.337 |
| 36 | CR-1000019-c-R | 11/15/2006 | Dean Pinard | David Eckhart | Dean Pinard and David Eckhart | Attorney Client | Discussions with counsel about investigation. | 0:01:29 - 0:01:30; 0:01:30 - 0:04:49 (end) | 0:02:46-0:02:50 | 00:04:49.344 | 00:01:29.000 |
| 37 | CR-2000000-19-a-R | 11/15/2006 | Dean Pinard | David Eckhart | Dean Pinard | Attorney Client | Discussion with counsel about investigation. | 0:1:56-0:2:00 | - | 00:04:49.344 | 00:04:45.343 |
| 38 | CR-2000000-19-c-R | 11/15/2006 | | | | | Duplicate of CR-2000000-19-a-R | | | | |
| 39 | CR-2000000-247 | 2/18/2010 | Martin Kanefsky | Mike Frasco | Mike Frasco | Attorney Client | Discussions with counsel about investigation. | 0:37:00-0:37:15; 0:37:40-0:39:50 | - | 02:25:04.325 | 02:23:39.304 |
| 40 | CR-1000013-68 | 9/7/2006 | Mark Zaino | Gary Heinz | Mark Zaino | Attorney Client | Discussions with counsel about investigation. | 0:00:18-0:00:24; 0:01:10-0:01:15 | - | 02:31.664 | 02:21.008 |

**FOOTNOTES:**
1) Call ID # CR-0000006 was originally inaudible. An enhanced version is available and contains privileged material.
2) LNU = Last Name Unknown

**MODIFICATIONS FROM PREVIOUS VERSIONS:**
1) CR-0000038-R was eliminated from the privilege log because any claim of privilege was waived by the privilege holder
2) CR-0000089 was eliminated from the privilege log because any claim of privilege was waived by the privilege holder
3) CR-0000216 was eliminated from the privilege log because any claim of privilege was waived by the privilege holder
4) CR-2000000-243 was eliminated from the privilege log because any claim of privilege was waived by the privilege holder
5) Call ID# CR-0000036 Times redacted: 0:07:53-0:08:00; 0:17:15-0:17:45; 0:21:10-0:21:40 were eliminated, and 0:17:15-0:17:45 was eliminated from the "Brady" portion
6) Call ID# CR-0000057, Times redacted was changed from 0:17:30-0:24:09 (end) to 0:17:30-0:18:54; 0:19:07-0:24:09 (end)

# Exhibit B

## Lublinski, Melvin

**From:** Distelman, Jacqueline
**Sent:** Thursday, February 21, 2008 11:51 AM
**To:** McReynolds, John
**Cc:** Giordano, Ralph; Lublinski, Melvin; Meiklejohn, Rebecca
**Subject:** Review of Material Claimed to Be Privileged

Mel and I wanted to comment on the discussion of the privilege team's work in your e-mail of January 30, 2008. First, we want to describe the team's work to date with respect to the review of consensual recordings made by cooperating individuals. We have reviewed approximately 55-60 consensual recordings, generally within a couple of days of receipt. We have then played the tapes for the staff, stopping the tape and skipping the portions that we deem to be arguably privileged. (I recently reviewed a tape made January 27, 2008 and played it for Kevin.) There are no unreviewed tapes in my possession.

We have consistently followed the priorities set by the staff regarding the order in which material is to be reviewed and will continue to do so. It makes sense to give priority to reviewing e-mails asserted to be privileged which were identified pursuant to an electronic search using search terms selected by the investigative staff, obtained from the e-mail of individuals selected by the staff. E-mails so identified are somewhat likely to be relevant to the investigation. This contrasts with the hard copy documents claimed to be privileged, seized during the warrant search, which includes some very diverse material.

I have recently confirmed the status of the new database containing e-mails asserted to be privileged, as well as of the database which contains the seized, hard-copy documents claimed to be privileged, with Michele Neverdon and Cameron Conway of ISSG. The e-mail database is currently comprised of an estimated 1933 e-mails identified by IMAGE and SCM (Sound Capital Management). Presumably, CDR is still in the process reviewing e-mails for privilege. The database of privileged hard copy documents totals some 939 records seized from IMAGE and CDR. (The documents claimed to be privileged by Sound need to be added.) We note that, in the case of both databases, the number of record is <u>not</u> a page count since records may consist of a number of pages.

MUNI-MISC-000721

6/3/2009

# Exhibit C

# Memorandum



| Subject | Review of Consensually Monitored Recordings | Date | 5/25/2007 |
|---|---|---|---|

To   EWells NYO File                      From   Melvin Lublinski

Jackie Distelman and I have reviewed for privilege the following consensual monitored recordings (identified on the basis of the FBI's log numbering):
17, 18, 19-a, 19-b, 20, 23-34, 37-38, 40.  Items 17, 18, 19-a and 19-b are on cassettes.  The others are on CDs.

Today, I expect to be handing over the recordings, which are copies and which have been in my custody, to Special Agent David Lum, who will have them transcribed.

I will also give him copies of ten (10) recordings provided to me on Tuesday, May 22, by Frank Parker:
2-5, 9, 10, 13, 14, 22 and 42 These are all on CDs.

I will also give him copies of five (5) other consensual monitored recordings which have been in my custody:
15(Cinderella Man and Johan Rossenberg)?, 39, 41, 12/21/06 (1 of 2)? and 12/21/06 (2 of 2)?

H:\NYO\Taint team Muni Bonds\Recordings-Review.wpd

MUNI-MISC-000716