UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>v.<br>DOMINICK P. CAROLLO,<br>STEVEN E. GOLDBERG, and<br>PETER S. GRIMM,<br>Defendants. | : : : : : : : : | S1-10-CR-654 (HB) |
| UNITED STATES OF AMERICA<br>v.<br>PETER GHAVAMI<br>(aka PETER GHAVAMILAHIDJI)<br>GARY HEINZ; and<br>MICHAEL WELTY,<br>Defendants. | : : : : : : : : : : : : : | 1:10-CR-01217 (KMW)<br><br>**PRIVILEGE CLAIMANT 7'S RESPONSE TO THE UNITED STATES' APPLICATION FOR AN ORDER RESOLVING CLAIMS OF ATTORNEY-CLIENT PRIVILEGE OR ATTORNEY WORK PRODUCT AS TO CONSENSUAL RECORDINGS** |

Privilege Claimant 7 ("Claimant 7") responds to the United States' Application for An Order Resolving Claims of Attorney-Client Privilege or Attorney Work Product As To Consensual Recordings. *See* Docket Entry Nos. 119 in 10-CR-654 and 85 in 10-CR-1217 ("Application"). As set forth herein, certain discrete portions of the following ten (10) consensual recordings contain attorney-client privilege and/or work product communications belonging to Claimant 7: CR-000014; CR-000018; CR-000023; CR-000026; CR-000028; CR-000030; CR-000034; CR-000040; CR-000041; and CR-000043. *See* Exhibit 1 to the accompanying Declaration of Kevin R. Sullivan ("Sullivan Decl.").[1] The Court should deny the

---

[1] In an effort to protect its attorney-client privilege and work product communications, Claimant 7 has not included in this response memorandum the specific details regarding the communications for which Claimant 7 seeks protection. Those details are included in the Sullivan Declaration and accompanying Exhibit 1 thereto, which have been submitted to the Court *in camera*, with a copy to the government.

Application as to the discrete portions of the above recordings because the Application is based on a mischaracterization of the recordings' contents, irrelevant or incorrect factual assertions, and/or is contrary to the law governing privilege, work product, and waiver.

As to attorney-client privilege, the government argues that the recordings are not privileged because they "are not between a client and his or her attorney" (*i.e.*, the recordings themselves are "not conversations with [Claimant 7's] counsel"). Application at 8-9. Although factually accurate, this is irrelevant because the law is clear that a communication is privileged if it recounts or reflects an earlier privileged communication with an attorney. The government also asserts that "the conversations appear to merely convey to a third party that the speaker has had a communication with an attorney." *Id.* at 8. Even a cursory review of the portions of the recordings identified in Exhibit 1 demonstrates that this is incorrect. The portions identified by Claimant 7 reflect the content and substance of discussions between Claimant 7's counsel and Claimant 7's employees relating to, among other things, an investigation into alleged anticompetitive activity in the municipal derivatives industry.

As to work product, the government argues that no protection exists because the "recordings were not made by counsel" or "with an eye toward litigation." Application at 10. The first argument is irrelevant because Claimant 7 is not asserting work product over the entirety of the recordings, but only over those portions of the recordings that disclose Claimant 7's counsels' mental impressions and legal conclusions. The second argument is incorrect because the recordings disclose numerous communications by Claimant 7's counsel at a time when counsel anticipated litigation in connection with alleged anticompetitive activity in the municipal derivatives industry.

Finally, the government asserts that any privilege or work product protections have been waived. *See* Application at 8-9; 10-11. This too is wrong. The fact that an employee of Claimant 7 chose to disclose protected communications without the knowledge or permission of Claimant 7, and in contravention of the employee's confidentiality obligations and/or instructions by counsel to keep such conversations confidential, does not and cannot constitute a waiver of Claimant 7's privilege.

Because the portions of the recordings at issue are subject to attorney-client privilege and/or work product protections, and those protections have not been waived by Claimant 7, the Court should: (1) deny the Application and (2) order the government not to disclose the portions of the recordings identified in Exhibit 1 and to claw back any of those portions that may have been provided to third parties.

## Statement of Facts

Claimant 7 is a corporation. *See* Docket Entry No. 119 in 10-CR-654 at Ex. A (general description of Privilege Claimants 1-7). The consensual recordings related to Claimant 7 involve phone calls or in-person meetings in October, November, and early-December 2006 between a then employee of Claimant 7 ("Employee") and employees of other companies involved in the municipal derivatives industry. *See* Sullivan Decl. at ¶ 5. At the time the recordings were made, Claimant 7 anticipated litigation relating to alleged anti-competitive conduct in the municipal derivatives industry. *Id.* at ¶ 6.

A.   Meetings Between the Employee and Claimant 7's Counsel

Claimant 7 asserts attorney-client privilege and/or work product protection over certain portions of ten consensual recordings wherein the Employee disclosed the content of conversations that he had with Claimant 7's in-house and outside counsel during the course of

numerous meetings. *See* Sullivan Decl. at ¶¶ 12-13; Ex. 1. Specifically, Claimant 7's counsel spoke with the Employee in early October 2006 and then met with the Employee on a number of other occasions in November 2006. *Id.* at ¶¶ 7-9; 12. These meetings related to, among other things, Claimant 7's investigation regarding the allegations of anticompetitive conduct in the municipal derivatives industry and/or reflected Claimant 7's and its counsels' strategy, conclusions, thought processes, and/or responses to the on-going federal investigation and/or anticipated civil litigation. *Id.* at ¶ 7-9; Ex. 1 at Entry Nos. 6-27.[2] Many of these meetings were also held so that Claimant 7's counsel could provide legal advice to Claimant 7 regarding the allegations of anticompetitive conduct in the industry and/or Claimant 7's potential exposure to criminal and/or civil liability. *Id.*

Importantly, at the first November 2006 meeting with the Employee, Claimant 7's counsel issued an *Upjohn* warning to the Employee, informing the Employee that: (1) Claimant 7's in-house and outside counsel represent Claimant 7, and not the Employee; (2) their meetings were confidential and protected by the attorney-client privilege; and (3) that the privilege belongs to Claimant 7, and not to the Employee. *Id.* at ¶ 7. The Employee was also directed not to discuss his communications with Claimant 7's counsel with anyone (other than his own attorneys). *Id.*[3] Additionally, at the conclusion of the first November meeting, Claimant 7's in-

---

[2] There are other portions of the ten recordings that refer to the November meetings with Claimant 7's counsel over which Claimant 7 does not assert privilege that, on their face, appear similar in content to the portions identified by Claimant 7 as privileged and/or work product communications. Based on Claimant 7's investigation to date, Claimant 7 has concluded that some of the underlying "communications" referred to by the Employee did not actually occur in the November 2006 meetings. Claimant 7 is not asserting privilege over references to the November 2006 meetings that Claimant 7 does not believe occurred.

[3] Apart from the *Upjohn* warning, the Employee was also separately bound to keep such communications confidential. *See* Sullivan Decl. at ¶ 10, Ex. 2 (Claimant 7's 2006 Code of Ethics confidentiality provisions).

house counsel placed the Employee on administrative leave, stripping the Employee of any ability to act on behalf of Claimant 7. *Id.* at ¶ 8.

B.  The Employee's Unauthorized Disclosures of Information from the Meetings with Claimant 7's Counsel

As detailed in the Sullivan Declaration, in direct contravention to the *Upjohn* warnings and/or the Employee's other confidentiality obligations, and without Claimant 7's or its counsels' knowledge or permission, the Employee disclosed specific content and discussions from his November 2006 meetings with Claimant 7's counsel during the consensual recordings. *See* Sullivan Decl. at ¶¶ 12-13. In many instances, these disclosures occurred shortly after meeting with Claimant 7's counsel. *See id.* at ¶ 12. In addition, in a few instances, based on the content of the recordings, the Employee appears to disclose the substance of earlier communications between counsel and employees of Claimant 7 that appear to be for the purpose of seeking or providing legal advice. *See id.* at ¶ 12 n.1; Ex. 1 at Entry Nos. 1-5.

## Procedural History

On January 13, 2012, the Employee's own counsel informed Claimant 7's counsel of the existence of the consensual recordings at issue in this matter and the fact that they likely implicate Claimant 7's privileges. *See* Docket Entry No. 122 in 10-CR-654 (K. Sullivan 1/25/12 Ltr.) at 2. This was the first time that either Claimant 7 or its counsel learned that the Employee had acted contrary to Claimant 7's counsels' express instructions and his separate confidentiality obligations by disclosing the content of the Employee's meetings with Claimant 7's counsel to third parties and that recordings of those disclosures existed. *Id.* That same day, Claimant 7's counsel contacted the DOJ and requested a copy of the recordings in order to review them. *Id.* The DOJ refused this request. *Id.* After a number of discussions with DOJ, the DOJ ultimately agreed and Claimant 7 received ten recordings from the DOJ on January 18, 2012.

On January 19, 2012, Claimant 7's counsel informed the DOJ that two of the ten recordings did not contain privileged material, but that Claimant 7 believed that the remaining eight recordings may contain attorney-client and/or work product protected communications and that Claimant 7 needed additional time to identify the specific portions in these recordings that contained protected material. *See* Docket Entry No. 122 in 10-CR-654 (K. Sullivan 1/25/12 Ltr.) at 2.  DOJ filed the Application on January 19, noting the eight recordings identified by Claimant 7 as potentially privileged. *See* Application, Ex. B.[4]  On January 25, 2012, Claimant 7 requested permission to intervene for the limited purpose of asserting its rights with respect to attorney-client privilege and/or work product material contained in the recordings. *Id.* at Docket Entry No. 122 in 10-CR-654 (K. Sullivan 1/25/12 Ltr.) at 1.  Claimant 7 also requested that the Court set a February 15, 2012 deadline to respond to the Application. *Id.* at 2.  On January 26, the Court granted Claimant 7's requests. *Id.* at 3.

## Argument

The DOJ argues that the attorney-client privilege does not protect the portions of the recordings identified by Claimant 7 because the recordings are "not conversations with the corporation's counsel" and "the conversations appear to merely convey to a third party that the speaker has had a communication with an attorney." Application at 8-9.  The Court should deny the Application because the DOJ's arguments are based on mischaracterizations of the content of those portions of the recordings at issue and incorrectly-applied law. *See infra* at 7-9.  The DOJ also argues that no work product protection exists because the "recordings were not made by

---

[4] On January 25, 2012, Claimant 7's counsel learned of three additional consensual recordings that may implicate Claimant 7's privileges. *See* Sullivan Decl. at ¶ 11.  Claimant 7's counsel has since reviewed those additional recordings and determined that two contain communications protected by Claimant 7's attorney-client privilege and work product. *Id.*  Therefore, Claimant 7 asserts protection over portions of ten recordings—eight from the original ten recordings provided by DOJ and two from the later production.

6

counsel" or "with an eye toward litigation." Application at 10. These arguments are similarly misplaced or incorrect. *See infra* at 12-14. Finally, the Court should reject the DOJ's alternative waiver argument because only Claimant 7, and not the Employee, could waive these protections, and Claimant 7 did not do so. *See infra* at 9-11; 14.

## I. PORTIONS OF THE RECORDINGS PERTAINING TO CLAIMANT 7 ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.

### A. The Attorney-Client Privilege Attaches To Portions of The Recordings

It is well established that the attorney-client privilege applies to corporations as well as individuals. *See Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 348 (2000) (citations omitted). The privilege protects "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *U.S. v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). Further, the privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. U.S.*, 449 U.S. 383, 396 (1981) (holding that a corporate counsel's fact gathering communications with corporate employees regarding potential legal claims are covered by the attorney-client privilege).

First, the DOJ mischaracterizes what Claimant 7 seeks to protect. The portions of the recordings identified by Claimant 7 do not, as the DOJ suggests, "merely convey to a third party that the speaker has had a communication with an attorney." Application at 8. Rather, many of those portions repeat specific content from conversations between Claimant 7's counsel and the Employee in response to and related to an on-going federal investigation, as well as Claimant 7's own investigation regarding potential civil litigation, and Claimant 7's counsels' provision of legal advice to Claimant 7. *See* Sullivan Decl. at ¶ 13; Ex. 1 at Entry Nos. 12-20; 22-27. Other

7

portions appear to reflect communications between Claimant 7's counsel and employees (including the Employee) that appear to be for the purpose of seeking or providing legal advice. *Id.* at ¶ 12 n.1; Ex. 1 at Entry Nos. 1-5.  As a result, those portions of the recordings are protected by Claimant 7's attorney-client privilege.  *See, e.g., Upjohn*, 449 U.S. at 394 (holding that in-house counsel's questionnaires and interview notes of corporate employees that were taken as part of an internal investigation were privileged); *First Chicago Intern. v. United Exch. Co. Ltd.*, 125 F.R.D. 55, 57-58 (S.D.N.Y. 1989) (holding that information detailing investigation and results of investigation that was conducted by corporation's officers and counsel (at the request of counsel) were privileged); *Leucadia, Inc. v. Reliance Ins. Co.*, 101 F.R.D. 674, 676-680 (S.D.N.Y. 1983) (granting in part a motion for protective order and holding that a report and attached exhibits by outside counsel detailing findings of an investigation into past transactions of the corporation was privileged).

  Second, the DOJ argues that the recordings are not privileged because the recordings are between two non-lawyers and are not conversations with counsel.  *See* Application at 9 (arguing that "conversations discussed on the recordings are not privileged since they are not conversations with the corporation's counsel").  This is simply wrong.  It is well settled that an employee's recitation of his or her conversations with company counsel are privileged to the same extent as the underlying conversation with counsel.  *See, e.g., Galvin v. Hoblock*, No. 00-Civ-6058, 2003 WL 22208370, * 1 (S.D.N.Y. Sept. 24, 2003) (noting that the privilege is "not limited . . . to communications directly between client and counsel"); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995) (noting that "the privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation").  *See also Adamowicz v. I.R.S.*, 672 F. Supp. 2d 454,

472 (S.D.N.Y. 2009) (noting that "[t]he law is well settled that a client's memorialization of her confidential legal communications with her attorney are privileged").[5]

### B. Claimant 7 Did Not Waive Its Attorney-Client Privilege

The DOJ's waiver argument is equally misplaced because it rests on the erroneous assumption that the Employee had the authority to waive Claimant 7's privilege. *See* Application at 8-9. In the context of the corporate attorney-client privilege, the privilege belongs to the corporation (*i.e.,* Claimant 7) and not the corporation's employees. *See, e.g., U.S. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 119 F.3d 210, 215 (2d Cir. 1997) (noting that "any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee"). It follows that "the power to waive the corporate attorney-client privilege rests with the corporation's management . . . ." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (2000) (emphasis added).

Here, the Employee did not have the authority to waive the attorney-client privilege on behalf of Claimant 7. Courts in the Second Circuit typically require that "because the corporation is inanimate, its decisions and communications as a client . . . must be made by its chosen representatives, typically its Board acting collectively or, in appropriate circumstances, its senior officers." *Fitzpatrick v. Amer. Intern. Group, Inc.*, 272 F.R.D. 100, 107 (S.D.N.Y. 2010) (citations omitted). The Employee was neither a member of Claimant 7's Board of Directors, nor a senior officer of Claimant 7, and did not have authority to waive Claimant 7's privilege. *See* Sullivan Decl. at ¶ 8. More importantly, at the time of all but one of the

---

[5] The recorded conversations at issue here are between the Employee and non-employees of Claimant 7. However, this fact is relevant only to whether Claimant 7's privilege has been waived (see Section II.B. *infra*). It does nothing to undercut the fundamental proposition that a lawyer need not be part of a communication in order for privilege to attach to a communication the recounts previous communications with a lawyer.

recordings at issue, Claimant 7 had placed the Employee on administrative leave and, as such, his job responsibilities and powers had been suspended and he could not act on Claimant 7's behalf.  *Id.*  Moreover, the Employee was under a general obligation to keep non-public information about Claimant 7 confidential and, during the first meeting in November 2006, Claimant 7's counsel expressly instructed the Employee not to share the contents of their discussions with anyone (other than the Employee's own counsel). *Id.* at ¶¶ 7; 10.  The fact that the Employee chose to ignore Claimant 7's express instruction to keep the conversations with Claimant 7's counsel confidential and disclosed these communications without Claimant 7's knowledge or authorization cannot, as a matter of law, constitute a waiver of Claimant 7's privilege.  *See Suggs v. Capital Cities/ABC, Inc.*, No. 86 Civ. 2774, 1990 WL 182314, *7 n. 7 (S.D.N.Y. April 24, 1990) (holding that the "unauthorized disclosure of privileged information by a non-managerial employee will ordinarily not be treated as an implied waiver of the privilege by the employer since such disclosure was beyond the employer's control").  *See also Fry v. McCall*, No. 95 Civ.1915, 1998 WL 273035, *5 (S.D.N.Y. May 28, 1998) (granting in part employer's motion for a protective order regarding a memorandum of a then-employee's notes of a conversation between the employee and the employer's counsel that the employee subsequently produced to the opposing party).

       The cases offered by the DOJ in support of waiver belie the weakness of the argument.  *See* Application at 9 (citing *Jonathan Corp. v. Prime Computer, Inc.,* 114 F.R.D. 693, 699 (E.D. Va. 1987) and *Denny v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 414 (S.D.N.Y. 2004)).  In *Jonathan Corp.*, a corporation's employee "voluntarily produced the document without any reservation of the attorney-client privilege prior to any litigation between the parties and during the ordinary course of their business dealings." *Id.* at 699.  The court found waiver because the

corporation had not designated the material as confidential, that it "both intentionally put the [employee] in a position to make the disclosure as well as gave him the information to disclose," and because the employee was acting within the scope of his employment when he made the disclosure. *Jonathan Corp.*, 114 F.R.D. at 700.  The facts here are clearly distinguishable.  The Employee was subject to Claimant 7's general confidentiality obligations and/or Claimant 7's counsels' express instruction to keep the conversations at issue confidential, the communications were made in connection with an ongoing federal investigation (not in the ordinary course of business dealings), the Employee had been placed on administrative leave at the time of the disclosures (thereby removing any of the Employee's responsibilities or authority), and the Employee made the consensual recordings at the DOJ's request.  *See supra* at 3-5.  The *Denny* case is even more inapplicable—it concluded that a partner could waive the privilege on behalf of the partnership.  *Denny*, 362 F. Supp. at 413-14 (holding that "[i]t is far from clear that *Weintraub* has any application to the present case…[the partner] was a partner in [the partnership], *not its employee*, and…[u]nder basic principles of partnership law, [the partner's] decision to disclose the memo to [a third party] must be imputed to [the partnership]") (emphasis added).  This concept is irrelevant to this matter.

      Simply put, an employee who had no authority to waive Claimant 7's privilege (and indeed, who was on administrative leave at the time of most of the disclosures), who was under an obligation to keep these conversation confidential and/or had been specifically instructed not to disclose the conversations at issue, and who decided to disclose those communications, cannot waive Claimant 7's privilege.

**II.    PORTIONS OF THE RECORDINGS PERTAINING TO CLAIMANT 7 ARE PROTECTED BY THE WORK PRODUCT DOCTRINE.**

    **A.    The Recordings Contain Attorney Work Product**

Portions of the ten consensual recordings also reflect Claimant 7's attorney work product. *See* Sullivan Decl., Ex. 1 at Entry Nos. 4-27. The attorney work product doctrine protects materials, including "mental impressions, conclusions, opinions, or legal theories," prepared "in anticipation of litigation" by or for a party or his representative. *See* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 514 (1947).[6] The work product doctrine is "[d]istinct from and broader than the attorney-client privilege," *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975), and it "establish[es] a zone of privacy for strategic litigation planning and [ ] prevent[s] one party from piggybacking on the adversary's preparation." *United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir.1995). Further, the work product doctrine applies to both written *and unwritten* materials. *See U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Local Union*, No. 00 Civ. 4763, 2002 WL 31296430, *5 (S.D.N.Y. October 11, 2002) (noting that the work product doctrine "applies to intangible work product: an attorney's analysis made in anticipation of litigation which has not been memorialized"); *Transmirra Prod. Corp. v. Monsanto Chem. Co.*, 26 F.R.D. 572, 579 (S.D.N.Y. 1960) (holding that "[n]or would the fact that oral communications or conversations, rather than written materials, are involved seem to preclude application of the 'work product' immunity").

Here, portions of the recordings at issue reflect the communications between Claimant 7's counsel and the Employee as part of counsels' investigation for Claimant 7 in anticipation of litigation over alleged anticompetitive conduct in the municipal derivatives industry, as well as Claimant 7 counsels' conclusions and mental impressions regarding the alleged conduct based on its investigations. *See, e.g.,* Sullivan Decl. at ¶ 13, Ex. 1 at Entry Nos. 4-21; 23; 26-27. Such

---

[6] Importantly, materials and information protected as work product will not be disclosed absent a showing of substantial need and undue hardship. *See* Fed. R. Civ. P. 26(b)(3). No such showing, let alone even an argument, has been advanced by the DOJ here, and the Court should not permit the disclosure of any work product unless and until such a showing has been made.

material is clearly attorney work product.  *See, e.g.*, *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, No. 08-Civ-1533, 2011 WL 2020586, *6 (S.D.N.Y. May 20, 2011) (holding that "any inquiry into 'statements made or questions posed' that may reveal counsel's legal analysis is barred by the work product doctrine") (citation omitted); *Ross v. Bolton*, 106 F.R.D. 22, 24 (S.D.N.Y. 1985) (holding that the transcripts of unsworn depositions taken by a staff attorney as part of an investigative effort were work product material because "the witnesses deposed as well as the questions asked reveal the nature and direction of [the] investigation").  Additionally, portions of the recordings are also work product because they reveal Claimant 7's counsels' selection of specific materials that were shown to the Employee.  *See* Sullivan Decl., Ex. 1 at Entry Nos. 22; 24-25.  *See, e.g., Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir.1987) (noting that "the selection and compilation of documents by counsel for litigation purposes" is protected opinion work product).

Importantly, it is irrelevant that "the recordings were not made by counsel," Application at 10, because Claimant 7 is not asserting work product over the entirety of the recordings. Instead, Claimant 7 is only claiming work product protection over those portions of the recordings in which the Employee disclosed Claimant 7's counsels' mental impressions, strategies, conclusions, opinions, and/or legal theories.  *See, e.g.,* Sullivan Decl., Ex. 1 at Entry Nos. 4-27.  Further, the DOJ is incorrect that the communications with Claimant 7's counsel were not made "with an eye toward litigation."  Application at 10.  The interviews by Claimant 7's counsel of the Employee were clearly conducted "with an eye toward litigation" because the interviews were directly motivated by the ongoing federal investigation and/or were part of Claimant 7's investigation to evaluate its potential civil exposure.  *See* Sullivan Decl. at ¶¶ 6; 9. *See also Garrett v. Metro. Life Ins. Co.*, No. 95 CIV. 2406, 1996 WL 325725, *3 (S.D.N.Y. June

12, 1996) (holding that "[r]egulatory investigations by outside agencies present more than a mere possibility of future litigation, and provide reasonable grounds for anticipating litigation") (citing *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir.1993)).

### B. Claimant 7 Did Not Waive Its Work Product Protection

The standards for waiver of attorney-client privilege and work product protections differ, with a greater protection afforded to work product. *See Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 478 (S.D.N.Y. 1993). A waiver of work product protection "will be found only if the party has *voluntarily* disclosed the work-product in such a manner that it is likely to be revealed to his adversary . . . ." *Id.* at 479 (emphasis added) (citations omitted). As discussed above, the Employee did not have the authority to act on behalf of Claimant 7 at the time he made the recordings at issue. *See supra* at 4-5; 9-11. As such, Claimant 7 cannot be said to have voluntarily disclosed the information at issue that would result in the waiver of the protections afforded to the work product of its counsel.

### Conclusion

For the foregoing reasons, Claimant 7 respectfully requests that the Court rule that: (1) the portions of the recordings identified by Claimant 7 are protected by the attorney-client privilege and/or work product doctrine; (2) Claimant 7 did not waive any such protections; and (3) the DOJ claw back the portions of the recordings identified in Exhibit 1 that may have been provided to third parties.

Dated: February 15, 2012       By: _____
                                   Kevin R. Sullivan (admitted *pro hac vice* in 08-CIV-2516 S.D.N.Y.)
                                   Shannon M. Kasley (admitted *pro hac vice* in 08-CIV-2516 S.D.N.Y.)

                    KING & SPALDING LLP
                    1700 Pennsylvania Avenue, N.W.
                    Washington, D.C.  20006-4706
                    Telephone: (202) 626-2426
                    Facsimile: (202) 626-3737

                    Attorneys for Privilege Claimant 7