UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DOMINCK P. CAROLLO,<br>STEVEN E. GOLDBERG, and<br>PETER S. GRIMM,<br><br>       Defendants. | S1-10-CR-654 (HB) |
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER GHAVAMI<br>(aka PETER GHAVAMILAHIDJI),<br>GARY HEINZ, and<br>MICHAEL WELTY,<br><br>       Defendants. | 1:10-CR-01217 (KMW) |

**OPPOSITION OF UBS PRIVILEGE HOLDERS TO
APPLICATION OF UNITED STATES FOR AN ORDER RESOLVING CLAIMS OF
ATTORNEY-CLIENT PRIVILEGE OR ATTORNEY WORK PRODUCT AS TO
CONSENSUAL RECORDINGS**

Christopher N. Manning (CM-4231)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel.   (202) 434-5000
Fax.   (202) 434-5029
Email   cmanning@wc.com

*Counsel for UBS AG, UBS Financial
Services, Inc., and UBS Securities LLC*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND ..................................................................................................................... 1

    A.    The UBS Recordings ............................................................................................1

    B.    Efforts Taken by UBS to Protect Its Privilege ......................................................4

ARGUMENT ............................................................................................................................ 6

I.    EACH OF THE UBS RECORDINGS CONTAINS COMMUNICATIONS PROTECTED BY UBS'S ATTORNEY-CLIENT PRIVILEGE. ....................................... 6

    A.    The Recordings Contain Communications Protected by UBS's Attorney-Client Privilege. ...................................................................................7

    B.    There Has Been No Waiver of UBS's Attorney-Client Privilege. .......................9

CONCLUSION ..................................................................................................................... 14

EXHIBITS

    A.    UBS Privilege Log for UBS Recordings

    B.    Declaration of David Levy, Esq.

    C.    Declaration of John G. Moon, Esq.

    D.    Declaration of Pamela Peterson, Esq.

    E.    Declaration of Daniel Levinson

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

**Page**

*Alexander v. FBI*, 198 F.R.D. 306 (D.D.C. 2000) .................................................................13

*Business Integration Serv., Inc. v. AT&T Corp.*, 251 F.R.D. 121 (S.D.N.Y. 2008) ............7, 11, 13

*Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343 (1985) .................................7, 11

*Denny v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407 (S.D.N.Y. 2004) ..........................................11

*Fitzpatrick v. Am. Int'l Group, Inc.*, 272 F.R.D. 100 (S.D.N.Y. 2010) ....................................7, 12

*Gary Friedrich Enter., LLC v. Marvel Enter., Inc.*, No. 08-civ-1533, 2011 WL 2020586 (S.D.N.Y. May 20, 2011)................................................................................... 8-9, 12

*In re County of Erie*, 473 F.3d 413 (2d Cir. 2007) .......................................................................7

*In re Parmalat Sec. Litig.*, No. 04-MD-1653, 2006 WL 3592936 (S.D.N.Y. Dec. 1, 2006) .. 12-13

*In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407 (N.D. Ill. 2006)............................................10

*Jonathon Corp. v. Prime Comp., Inc.*, 114 F.R.D. 693 (E.D. Va. 1987).......................................11

*Resolution Trust Corp. v. Dean*, 813 F. Supp. 1426 (D. Ariz. 1993) ...........................................13

*Sackman v. Liggett Group, Inc.*, 173 F.R.D. 358 (E.D.N.Y. 1997).............................................13

*Suggs v. Capital Cities/ABC, Inc.*, No. 86-civ-2774, 1990 WL 182314 (S.D.N.Y. 1990)............13

*Surles v. Air France*, No. 00-civ-5004, 2001 WL 815522 (S.D.N.Y. July 19, 2001) .....................9

*United States v. Constr. Prod. Research, Inc.*, 73 F.3d 464 (2d Cir. 1996) .................................10

*United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,* 119 F.3d 210 (2d Cir. 1997)........................................................................7

*Upjohn Company v. United States*, 449 U.S. 383 (1981) ..............................................................8

*Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*, No. 06-civ-7785, 2007 WL 1573913 (S.D.N.Y. May 24, 2007) ................................................................12

*Wierciszewski v. Granite City Illinois Hosp. Co., LLC*, No. 11-cv-120, 2011 WL 5374114 (S.D.N.Y. Nov. 7, 2011).................................................................................10

*Winans v. Starbucks Corp.*, No. 08-civ-3734, 2010 WL 5249100 (S.D.N.Y. Dec. 15, 2010) .................................................................................................................................8

Third-Party Intervenors UBS AG, UBS Financial Services, Inc. and UBS Securities LLC (collectively, "UBS") hereby submit their Opposition to the government's Application for an Order Resolving Claims of Attorney-Client Privilege or Attorney Work Product as to Consensual Recordings ("Application"). The government's Application seeks permission to disclose five audio recordings of conversations that reveal the substance of privileged communications between UBS employees and UBS counsel without redacting the portions in which the privileged communications are discussed. Contrary to the government's contentions, these recordings contain communications protected by UBS's attorney-client privilege, and that privilege has not been waived by UBS. UBS therefore opposes any effort by the government to disclose unredacted copies of these recordings to the defendants, and requests that the Application be denied as it relates to the UBS Recordings.

## BACKGROUND

### A. The UBS Recordings.

There are five audio recordings at issue that contain information protected by UBS's attorney-client privilege (the "UBS Recordings").[1] These recordings, which were made by the government and its cooperating witnesses as part of the government's investigation, capture conversations with current and/or former employees of UBS. In four of the five recordings, the cooperating witness recording the conversation was a then-current employee of UBS. Based on the fact that a government agent can be heard marking the beginning and end of the recording for three of the UBS Recordings (CR-000011-011, CR-000011-002, and CR-000010), it appears that most, if not all, of the UBS Recordings were recorded at the direction and under the supervision of the government. The government has acknowledged in its Application that none of the UBS

---

[1] The Application refers to UBS as Privilege Claimant Six.

Recordings contain *Brady* material. *See* Mem. of U.S. in Support of Application for Order Resolving Claims of Attorney-Client Privilege or Attorney Work Product as to Consensual Recordings ("Mem.") at 4.

Relevant to the issues here, each recording captures the current or former UBS employees recounting the specific content of privileged and confidential communications that they had had with UBS counsel. On most of the recordings, it was the government's cooperating witness who divulged the privileged communications with UBS counsel. UBS has attached as exhibits to this Opposition declarations from the UBS counsel who participated in these communications. *See* Decl. of David Levy, Esq. (Ex. B) ("Levy Decl."); Declaration of John G. Moon, Esq. (Ex. C) ("Moon Decl."); Declaration of Pamela Peterson, Esq. (Ex. D) ("Peterson Decl."). These declarations confirm that (1) the communications were for the purpose of gathering information to provide legal advice to UBS, and (2) the UBS employees were informed during the respective communications that such communications were privileged, that the privilege belonged to UBS, and that the communications were not to be disclosed to other persons. UBS has also provided a declaration confirming the employment and job titles for the UBS participants on these audio recordings. *See* Decl. of Daniel Levinson (Ex. E) ("Levinson Decl.").

UBS is not asserting privilege over the entirety of each UBS Recording, but rather only over the portions that capture the discussion of communications with UBS counsel. The content of these communications with UBS counsel is protected by UBS's attorney-client privilege. Attached as Exhibit A is a privilege log identifying the specific portions of the UBS Recordings over which UBS is asserting privilege. The following is a summary of the relevant portions of the UBS Recordings:

1. ***CR-1000013-32 (August 31, 2006)***.  This recording captures a conversation between Mark Zaino, then a current UBS employee, and Gary Heinz, then a former UBS employee, regarding the specific contents of conversations that each of them, in turn, had recently had with UBS in-house counsel (David Levy and John Moon) as part of counsel's gathering of information for purpose of providing legal advice to UBS.  The communication discussed by Heinz related to issues concerning Heinz's prior employment at UBS.  At the time of the recording, Zaino was a cooperating witness and the individual who recorded this conversation.

2. ***CR-000011-011 (September 13, 2006)***.  This recording captures a conversation between Zaino, then a UBS employee, and an employee of another company.  On the recording, Zaino discloses the specific contents of conversations that he had recently had with UBS in-house counsel (David Levy and John Moon) as part of counsel's gathering of information for purpose of providing legal advice to UBS.  At the time of the recording, Zaino was a cooperating witness and the individual who recorded this conversation.

3. ***CR-000011-002 (September 13, 2006)***.  This recording captures a conversation between Zaino, then a UBS employee, and an employee of another company.  On the recording, Zaino discloses the specific content of conversations that he had recently had with UBS in-house counsel (David Levy and John Moon) as part of counsel's gathering of information for purpose of providing legal advice to UBS.  Zaino also discloses the specific contents of a conversation that he had previously had, while an employee of UBS, with UBS in-house counsel (Pamela Peterson) and UBS outside counsel as part of counsel's gathering of information for purpose of providing legal advice to UBS.  At the time of the recording, Zaino was a cooperating witness and the individual who recorded this conversation.

4.  ***CR-000010 (August 31, 2006).***  This recording captures a conversation between James Engel, then a current UBS employee, and an employee of another company.  On the recording, Engel discloses the specific content of conversations that he or other UBS employees had recently had with UBS in-house counsel as part of counsel's gathering of information for purpose of providing legal advice to UBS.[2]  At the time of the recording, the employee from the other company was a cooperating witness and the individual who recorded this conversation.

5.  ***CR-1000000013-68 (September 7, 2006).***  This recording captures a conversation between Zaino, then a current UBS employee, and Heinz, then a former UBS employee.  On the recording, Zaino discloses the specific contents of a conversation that another then-current UBS employee (Dan Irvin) had recently had with UBS in-house counsel (David Levy) as part of counsel's gathering of information for purpose of providing legal advice to UBS.  At the time of the recording, Zaino was a cooperating witness and the individual who recorded the conversation.

### B. Efforts Taken by UBS to Protect Its Privilege.

Since on or about November 1, 2011, when UBS was first informed that a potentially privileged communication may have been captured on a UBS Recording, UBS has consistently and repeatedly asserted privilege over the portions of the UBS Recordings that capture the content of privileged communications.  On November 1, the government sent UBS a copy of one UBS Recording (CR-10000013-032) and asked UBS counsel to review it for privilege.  On November 22, 2011, UBS informed the government that the recording did contain

---

[2] Prior to his employment at UBS, Engel was an employee at another company that is one of the other privilege claimants in this proceeding.  It is not entirely clear from the call whether the privileged communications he discussed on the call were communications that Engel had had with UBS counsel while an employee of UBS, or rather communications with counsel for the other privilege claimant while an employee of that company.

4

communications protected by UBS's attorney-client privilege, and that UBS was asserting its privilege over those communications. Doc. No. 107 [*Carollo*]; 76 [*Ghamavi*]. UBS provided the government with the factual and legal basis for its assertion of privilege over the initial recording, and asked the government to provide it with any other recording that referenced communications with UBS counsel so that it could make its own privilege determinations prior to any review by government personnel. *Id*.

UBS did not hear further from the government on this issue until mid-December, when UBS learned that this Court was reviewing defendants' rights to obtain certain audio recordings that contained potentially privileged information. At that time, UBS promptly requested leave to intervene for the purpose of asserting its privilege over the one UBS Recording of which it was then aware. Doc. No. 109 [*Carollo*]; 76 [*Ghavami*]. The Court denied UBS's request because, at that time, "the Government has not sought to disclose to defendants the recordings identified by UBS," and thus "any privilege or protection held by UBS is not currently at issue in these proceedings before the Court." Doc. No. 108 [*Carollo*]; 79 [*Ghavami*].

On January 12, 2012, the government provided UBS with two additional recordings to review for privilege (CR-000011-011 and CR-000011-012). One week later, on January 19, the government provided UBS with another two recordings to review (CR-000010 and CR-100000013-68). That same day, while UBS was still reviewing these four new recordings, the government filed the instant Application with the Court. UBS promptly renewed its request to intervene in these proceedings for the purpose of asserting its privilege, and the Court granted UBS's request. Doc. No. 121 [*Carollo*]; 86 [*Ghavami*].

**ARGUMENT**

The government makes two arguments as to why it should be permitted to disclose the complete, unredacted UBS Recordings to defendants. First, the government asserts that the UBS Recordings do not contain any communications protected by UBS's attorney-client privilege. Second, the government argues that, even if the recordings do capture privileged communications, the privilege was waived by the UBS employees' (including the government informant's) disclosure of the privileged communications to non-attorney third parties. Both of these arguments fail as a matter of law and logic.

**I.   EACH OF THE UBS RECORDINGS CONTAINS COMMUNICATIONS PROTECTED BY UBS'S ATTORNEY-CLIENT PRIVILEGE.**

It is important to frame at the outset UBS's assertion of its attorney-client privilege. UBS is <u>not</u> contending, as the government's papers suggest, that the entire UBS Recording represents a privileged communication protected by the attorney-client privilege. Rather, UBS is only claiming privilege over the portions of the UBS Recordings in which UBS employees disclose privileged and confidential communications that they (or other UBS employees) previously had had with UBS counsel. The questions presented are thus two-fold. First, are the underlying communications with counsel discussed on these recordings protected by UBS's privilege? If so, does the disclosure by the government's informants and other UBS employees of these privileged communications, as captured on these recordings, waive the privilege? As established below, the communications with UBS counsel discussed on the UBS Recordings <u>are</u> protected by UBS's privilege, and the disclosure of these communications on the recordings <u>did not</u> waive UBS's privilege.

> **A.      The Recordings Contain Communications Protected by UBS's Attorney-Client Privilege.**

Each of the UBS Recordings captures a UBS employee describing the specific content of communications that he or other UBS employees had had with UBS counsel as part of counsel's gathering of information for purposes of providing legal advice to UBS. The government does not dispute in its Application that these underlying communications with UBS counsel are privileged communications. Nor could it, for the communications with UBS counsel are classic attorney-client privilege communications.

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). A party invoking the privilege must show "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Id.* at 419. Where the client is a corporation, it is well established that "any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee." *United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,* 119 F.3d 210, 215 (2d Cir. 1997).[3] Thus, the privilege here belongs to UBS—not its current or former employees and certainly not the government's informant—and the corresponding authority to assert or waive the privilege rests with UBS. *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 348 (1985).

---

[3] *See also Fitzpatrick v. Am. Int'l Group, Inc.*, 272 F.R.D. 100, 107 (S.D.N.Y. 2010) ("[T]he attorney-client privilege belongs to the corporation."); *Business Integration Serv., Inc. v. AT&T Corp.*, 251 F.R.D. 121, 123 (S.D.N.Y. 2008) (recognizing that "privilege lies with the client, in this case AT&T").

7

The communications with UBS counsel discussed on the UBS Recordings satisfy all the requisite elements of the attorney-client privilege: (1) they were communications between UBS employees and UBS counsel, (2) that were intended to be confidential, and (3) that were made for the purpose of allowing UBS counsel to provide legal advice to UBS. UBS has provided declarations from the UBS in-house attorneys involved in the underlying communications confirming these facts. *See* Exhibits B ¶¶ 3-5 (Levy Decl.); C ¶¶ 3-6 (Moon Decl.); D ¶ 3 (Peterson Decl.). These communications are the very type that the Supreme Court found to be protected by a corporation's attorney-client privilege in *Upjohn Company v. United States*, 449 U.S. 383 (1981), the seminal case holding that communications made by corporate employees to corporate counsel are protected by the corporation's privilege. *Id.* at 394. As the Court held, "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390.[4] The privileged nature of these types of communications is well-established. *See Winans v. Starbucks Corp.*, No. 08-civ-3734, 2010 WL 5249100, at *2 (S.D.N.Y. Dec. 15, 2010) (collecting cases).

The fact that one of the UBS employees, Gary Heinz, was a former employee at the time of his communications with UBS counsel does not alter the privileged nature of such communications. "Virtually all courts hold that communications between company counsel and former company employees are privileged if they concern information obtained during the course of employment." *Gary Friedrich Enter., LLC v. Marvel Enter., Inc.*, No. 08-civ-1533,

---

[4] The Supreme Court reasoned that "[m]iddle-level and indeed lower-level-employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." *Id.* at 391.

2011 WL 2020586, at *5 (S.D.N.Y. May 20, 2011) (collecting cases); *see also Surles v. Air France*, No. 00-civ-5004, 2001 WL 815522, at *6 (S.D.N.Y. July 19, 2001) (same). That is exactly the case here, where Heinz was being questioned by in-house counsel regarding issues concerning Heinz's former employment at UBS. *See* Ex. B ¶ 3 (Levy Decl.); Ex. C ¶ 5 (Moon Decl.). Accordingly, each of the UBS Recordings contains communications protected by UBS's attorney-client privilege.

      **B.**    **There Has Been No Waiver of UBS's Attorney-Client Privilege.**

The government makes two arguments as to why the communications captured on the UBS Recordings are not protected by UBS's attorney-client privilege. First, the government contends that the recorded conversations are not protected by UBS's attorney-client privilege because they are "not conversations with the corporation's counsel," and "there is no indication that these recorded conversations were made for the purpose of giving or obtaining legal advice." Mem. at 8, 9. Second, the government asserts that any privilege was waived "to the extent the client described that conversation to a third-party during the tape recorded conversations." *Id.* at 8. Although phrased differently, both arguments boil down to the same waiver-based argument: that the disclosure of these privileged communications to non-attorney third parties waives UBS's attorney-client privilege.

The government's waiver arguments are particularly remarkable, given that on virtually every UBS Recording, it was the *government's own cooperating witness* who disclosed confidential communications as part of a conversation that was being recorded *at the direction of the government*. In other words, the government is contending that its own cooperating witness, in a conversation being recorded at its direction, effectively could waive UBS's attorney-client privilege by making unauthorized disclosures of privileged communications to third parties. Such a position would lead to a perverse result of encouraging cooperating witnesses to disclose

confidential communications on government-recorded calls as a way of causing a waiver of a company's privilege. This cannot be the law—and as explained below, it fortunately is not.

The government's first argument—that the lack of an attorney on the recording defeats UBS's claim of privilege—fundamentally misstates both the position of UBS and the relevant legal inquiry.[5] As noted above, UBS is not contending that the entirety of the UBS Recordings is protected by the attorney-client privilege; rather, it is asserting privilege over only those portions that capture the discussion of prior, privileged communications that the UBS employees had had with UBS counsel. It is the privileged nature of those underlying communications with UBS counsel upon which UBS bases its claim for privilege. Contrary to the government's suggestion otherwise, "the privilege issue is not settled by authorship or participation. The question is whether the communications rest on confidential information obtained from the client, or would reveal the substance of a confidential communication by the client." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 433 (N.D. Ill. 2006). Thus, the relevant question is <u>not</u> whether the recorded conversations themselves were with corporate counsel or were for the purpose of giving or obtaining legal advice, but rather whether the recordings "reveal the substance" of privileged communications between UBS counsel and UBS employees. For the reasons given above, they most certainly do.

The government's second waiver argument—that the disclosure of these communications to third parties, as captured on the UBS Recordings, effects a waiver of the privilege—fares no

---

[5] Neither of the cases cited by the government support its position. *Wierciszewski v. Granite City Illinois Hosp. Co., LLC*, No. 11-cv-120, 2011 WL 5374114 (S.D.N.Y. Nov. 7, 2011), stands only for the uncontroversial proposition—not at issue here—that the attorney-client privilege does not "protect the communications of employees amongst themselves for the purposes of obtaining information that might later be disclosed to counsel." *Id.* at *2. Likewise, *United States v. Constr. Prod. Research, Inc.*, 73 F.3d 464 (2d Cir. 1996), merely holds that the information on a party's privilege log was insufficient to support the party's claims. *Id.* at 473-74.

better because the UBS employees who disclosed the privileged communications were not authorized to waive UBS's attorney-client privilege. Where the privilege holder is a solvent corporation, as is the case here, "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Weintraub*, 471 U.S. at 348. Although a few cases suggest that mid- or lower-level employees can waive a corporation's attorney-client privilege in certain, narrow circumstances, those cases are limited to situations where the employee who disclosed the information was acting "within the scope of his responsibilities within the company" and the material was disclosed "in the [employee's authorized dealings with [the third party]." *See Business Integration Serv., Inc. v. AT&T Corp.*, 251 F.R.D. 121, 123 (S.D.N.Y. 2008) (disclosure of privileged memorandum by regional manager to contract counterparty as part of negotiations constituted a waiver where regional manager was the employee authorized to negotiate with counterparty and memorandum was disclosed as part of the authorized negotiations).[6]

Here, the UBS employees on these UBS Recordings—James Engel, Gary Heinz, and Mark Zaino—did not hold positions at UBS that authorized them to waive UBS's privilege. Heinz was not employed by UBS at the time of the recording, and none of the three was ever part of UBS senior management. All were, or had been, employees of the Municipal Reinvestment and Derivatives Desk—which was just one of many business desks within the broader Municipal Securities Group. *See* Ex. E ¶¶ 2-4, 6 (Levinson Decl.). At the time of the recorded

---

[6] *See also Jonathon Corp. v. Prime Comp., Inc.*, 114 F.R.D. 693, 696-700 (E.D. Va. 1987) (holding that voluntary production of memorandum by defendant's marketing representative to customer during ordinary course of business negotiations over contract dispute with customer waived company's privilege); *Denny v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 412-15 (S.D.N.Y. 2004) (holding that disclosure of memorandum by partner in accounting firm waived firm's privilege where firm authorized partner's possession of memorandum and authorized the discussions with the third-party during which the memorandum was disclosed).

conversations, Zaino held the job title of Associate, Engel had the job title of Derivatives Marketer, and Heinz was a former employee who had held a mid-level employee position at UBS.[7] *Id.* None of the three was a member of UBS's Group Executive Board, Group Management Board or Board of Directors or sat on any governance committee or board of UBS. Moreover, Zaino was working at the direction of the government, which was investigating UBS at the time.

Moreover, unlike in the few cases discussed above, Engel, Heinz, and Zaino did not disclose the privileged communications while acting within the scope of their UBS job responsibilities during authorized discussions with third parties. The waiver of a corporation's attorney-client privilege must be made by an individual "speaking for the client" and "acting in his corporate fiduciary capacity." *Fitzpatrick v. Am. Int'l Group, Inc.*, 272 F.R.D. 100, 107 (S.D.N.Y. 2010); *see also Gary Friedrich Enter., LLC*, 2011 WL 2020586, at *3 (power to waive corporation's attorney client privilege "must be exercised consistently with management's fiduciary duties"). Accordingly, courts have held that "[u]nauthorized disclosure of privileged documents . . . does not automatically result in a waiver of the privilege immediately upon dissemination to third parties." *See In re Parmalat Sec. Litig.*, No. 04-MD-1653, 2006 WL

---

[7] As a former employee, Heinz was clearly unauthorized to waive privilege on behalf of UBS. Courts have "rejected the notion" that a former employee of a corporation, "even if previously vested with the power to exercise the privilege while a corporate official . . . may subsequently claim any authority to exercise or waive the privilege at all." *Fitzpatrick v. Am. Int'l Group, Inc.*, 272 F.R.D. 100, 108 (S.D.N.Y. 2010) (citing *Weintraub*, 471 U.S. at 349); *see also Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*, No. 06-civ-7785, 2007 WL 1573913, at *4 (S.D.N.Y. May 24, 2007) (holding that former employee "did not have the authority to waive the privilege on behalf of his former employer"). Moreover, even during the period in which Heinz was employed by UBS, he never held a position that gave him the power to exercise or waive UBS's privilege.

3592936, at *4 (S.D.N.Y. Dec. 1, 2006).[8]  In cases involving unauthorized or inadvertent disclosures, courts consider such factors as "(1) the reasonableness of the precautions to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the extent of the disclosure, [and] (4) an overarching issue of fairness and the protection of an appropriate privilege which must be judged against the care or negligence with which the privilege is guarded." *Business Integration Serv., Inc.*, 251 F.R.D. at 129 (internal quotation marks and brackets omitted).

Here, these factors overwhelmingly counsel against waiver.  First, UBS took reasonable precautions to prevent the unauthorized disclosure.  As confirmed by the declarations of the UBS counsel who participated in these privileged communications, it was made clear to the UBS employees that these were privileged communications, that the privilege belonged to UBS, and that communications were not to be disclosed to other persons. *See* Exhibits B ¶¶ 4-5 [Levy Decl.]; C ¶ 6 [Moon Decl.]; D ¶ 3 [Peterson Decl.].  Second, since UBS first learned of the existence of these privileged recordings just a few months ago, it has acted consistently and repeatedly to affirm its assertion of privilege over these communications and prevent further disclosure of the privileged material, including requesting leave to intervene twice in this action.  Third, the disclosure was a limited one, occurring on just a handful of recordings.  Finally, the "overarching issue of fairness" weighs heavily against waiver, as the disclosure occurred not

---

[8] *See also Suggs v. Capital Cities/ABC, Inc.*, No. 86-civ-2774, 1990 WL 182314, at *5 n.7 (S.D.N.Y. 1990) ("[U]nauthorized disclosure of privileged information by a non-managerial employee will ordinarily not be treated as an implied waiver of the privilege by the employer since such disclosure was beyond the employer's control."); *Alexander v. FBI*, 198 F.R.D. 306, 315 (D.D.C. 2000) (holding that individual outside the "control group" of corporation did not have power to waive corporation's privilege through unauthorized disclosure of privileged communications); *Sackman v. Liggett Group, Inc.*, 173 F.R.D. 358, 365 (E.D.N.Y. 1997) (holding that assertion of privilege by corporation "is not waived through public disclosure of a stolen, privileged document" by disloyal employee); *Resolution Trust Corp. v. Dean*, 813 F. Supp. 1426, 1428-30 (D. Ariz. 1993) (holding privilege was not waived as to internal memorandum that was leaked through unauthorized means to newspaper).

13

through any inadvertence or negligence on the part of UBS, but in phone conversations being secretly recorded by government informants at the government's direction and with the government's assistance. In the vast majority of the cases, in fact, the unauthorized disclosure was made by the government informant. In such circumstances, there is simply no basis for finding a waiver of UBS's privilege.

## CONCLUSION

For the foregoing reasons, the UBS Recordings capture the substance of communications protected by UBS's attorney-client privilege. Therefore, the Application should be denied insofar as it seeks to produce the UBS Recordings in unredacted form.

Dated: February 15, 2012

Respectfully submitted,

**WILLIAMS & CONNOLLY LLP**

By: /s/ Christopher N. Manning (CM 4231)
Christopher N. Manning (CM 4231)

725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000
Fax. (202) 434-5029
Email cmanning@wc.com

*Counsel for UBS AG, UBS Financial Services, Inc., and UBS Securities LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that (1) on February 15, 2012, I caused the foregoing Opposition of UBS Privilege Holders to Application of United States for an Order Resolving Claims of Attorney-Client Privilege or Attorney Work Product as to Consensual Recordings ("Opposition") to be served by email to the known email addresses for each party's attorney of record; and (2) on February 16, 2012, I caused the foregoing Opposition to be served upon each party's attorney of record by transmission through the Court's electronic filing system.

/s/ Christopher N. Manning
Christopher N. Manning (CM 4231)