# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | Times Square Tower | SAN FRANCISCO |
| BRUSSELS | 7 Times Square | SHANGHAI |
| CENTURY CITY | New York, New York 10036 | SILICON VALLEY |
| HONG KONG | TELEPHONE (212) 326-2000 | SINGAPORE |
| LONDON | FACSIMILE (212) 326-2061 | TOKYO |
| LOS ANGELES | www.omm.com | WASHINGTON, D.C. |
| NEWPORT BEACH | | |

April 9, 2012

OUR FILE NUMBER
336,915-002

The Honorable Baer, Jr.
United States District Judge
United States Courthouse
500 Pearl Street
Room 2230
New York, NY 10007

WRITER'S DIRECT DIAL
(212) 326-2116

WRITER'S E-MAIL ADDRESS
hheiss@omm.com

Re:   *United States v. Carollo, et al., S1 10-CR-654 (HB)*

Dear Judge Baer:

  Defendants moved in limine to preclude the government from introducing evidence of certain conversations between Mr. Grimm and Mr. Goldberg when they were working for competing firms because of the significant risk that the jury would mistakenly conclude that defendants participated in an antitrust conspiracy, which the government has not charged. See Defendants' Motion In Limine to Limit the Government's Introduction of Evidence of Uncharged Acts on 404(b) Grounds, at 14-16. Defendants Grimm and Carollo respectfully submit this letter brief requesting that the Court also preclude the government, for the same reasons, from (1) introducing GE internal antitrust compliance materials that, in an example, instructed GE employees not to socialize with Mr. Goldberg; and (2) referencing the fact that its cooperating witnesses pled guilty to antitrust charges. Both types of evidence tend to unfairly suggest that the defendants were involved in an uncharged antitrust conspiracy among GIC providers, when what the government has actually charged is a fraud conspiracy between particular providers and particular brokers. This evidence threatens to confuse the issues, distract the jury from the actual charges, and subject the defendants to undue prejudice, in contravention of Federal Rule of Evidence 403.

## BACKGROUND

  Rule 403 of the Federal Rules of Evidence provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. The application of the Rule requires that the court balance "the probative value of and need for the evidence against the harm likely to result from its admission." FED. R. EVID. 403 advisory committee's note.

Evidence's probative value is measured largely by examining how closely it relates to the particular criminal activity with which a defendant is charged. United States v. Al Kassar, 660 F.3d 108, 123-24 (2d Cir. 2011) (probative value "properly discounted" where events took place many years earlier and would require extensive analysis to determine whether they provided any meaningful analogy to the charged crimes); United States v. Salameh, 152 F.3d 88, 111 (2d Cir. 1998) (per curiam) (evidence that "closely resembled the actual events" of the charged crime "had probative value in light of their similarity" to the crime). The availability of alternative means by which to present similar proof also informs the measure of probative value. Old Chief v. United States, 519 U.S. 172, 184 (1997); United States v. Awadallah, 436 F.3d 125, 132 (2d Cir. 2006); see 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5250 (1978) ("The probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point.").

Against probative value the court must weigh the countervailing factors listed in Rule 403, which include the evidence's potential prejudicial effect. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief, 519 U.S. at 180. In other words, "'[u]nfair prejudice' . . . means an undue tendency to suggest decision on an improper basis . . . ." Id.; see United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980) ("The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant."). "If the incremental value is slight, and the possibility of prejudice through misuse by the jury great, the court should exclude the evidence under Rule 403." 2 Weinstein's Federal Evidence § 404.21 (Matthew Bender 2d ed. 2012).

## ARGUMENT

### I.  GE Antitrust Compliance Policy Slides

The government intends to offer in evidence GE antitrust compliance training materials that state, as an example of how GE employees could help ensure that they did not violate any applicable regulations, "Don't go to lunch with Steve Goldberg." According to the government's theory, these materials supposedly will help establish that Grimm's contacts with Goldberg after Goldberg began working for FSA were improper, and that Grimm's conversations with Goldberg facilitated the charged fraud conspiracy by providing each of them with information that influenced his discussions with brokers and thereby aided the alleged manipulations of the bidding process.

The way that the government has articulated the structure of the charged conspiracies, however, makes that logic tenuous. The government has sharply defined each of the alleged "bilateral" conspiracies; its Indictment charges six "distinct and independent" conspiracies, each "between a particular provider that employed Defendants and a particular broker." Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, at 19 (emphasis added). The government has told the Court that each charged conspiracy is "not interdependent" with any other evidence of wrongdoing. That concession means that any evidence of alleged wrongdoing extrinsic to the charged

O'MELVENY & MYERS LLP

The Honorable Baer, Jr., April 9, 2012 - Page 3

conspiracies—including evidence of contacts between defendants where they are not alleged to have been coconspirators—is not necessary proof of the conspiracies actually charged. The government's conspicuously narrow definition of the charged conspiracies tightly constrains its ability to draw on far-reaching evidence of actions that fall beyond those close confines. The probative value of a piece of evidence is, of course, measured in large part by reference to how closely it resembles the charged crime. United States v. Al Kassar, 660 F.3d 108, 123-24 (2d Cir. 2011). As the government has emphasized that discussions and agreements between providers are not the crimes at issue here, whatever probative value such discussions or policies about them have—even if, as the government believes, they somehow contributed to or advanced the conspiracy actually charged—is significantly diminished. That type of evidence is at a meaningful remove from the government's definition of the charged conduct.

Measured against the evidence's reduced probative value, the threat of prejudice to the defendants and confusion of the issues weighs heavily in favor of excluding the compliance materials under Rule 403. Those materials—which specifically mention Goldberg by name in connection with potential compliance issues—unfairly suggest that Grimm and Goldberg violated antitrust rules and GE compliance policies, even though they have not been charged with any antitrust violation. The risk that that document will unduly influence the jury is especially acute in this case because the GIC industry involves complicated deal structures and esoteric terminology that can be difficult for the jury to sort out; the jury may therefore be susceptible to being misled by the simple logic that (1) the compliance materials tied Goldberg to potential antitrust compliance problems, (2) Grimm and Goldberg had some contact, so (3) they must have done something illegal. That path to the conclusion that the defendants have committed a crime, however, threatens to misdirect the jury away from the substance of the conspiracies actually at issue in this case. That kind of reasoning is precisely what Rule 403 aims to prevent. See United States v. Elfgeeh, 515 F.3d 100, 128 (2d Cir. 2008) ("The term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." (quotation omitted)); see also United States v. Curley, 639 F.3d 50, 60 (2d Cir. 2011) (risk that jury will be distracted from "focusing on the allegations in the indictment" is among harms that Rule 403 aims to avoid under the rubric of unfair prejudice); United States v. Siegel, 717 F.2d 9, 17 (2d Cir. 1983) (Rule 403 aims to preclude introduction of evidence that presents unjustified risk that "the jury may base its decision on an improper basis.").

To avoid the risk that the jury will assign undue weight to the compliance materials and determine that the defendants must be guilty of something because contact with Goldberg was specifically identified as a potential problem in GE's antitrust compliance training materials, Rule 403's balancing test weighs against allowing the government to use the document describing those policies.

II.   **Cooperators' Antitrust Conspiracy Guilty Pleas**

As is common where the prosecution relies on testimony from cooperating witnesses to prove its case, the government intends to elicit information about the content of its witnesses'

O'Melveny & Myers llp

The Honorable Baer, Jr., April 9, 2012 - Page 4

plea agreements on direct examination to neutralize its potential impact on the jury's perception of the witness if it were brought up for the first time on cross-examination. Discussion of the details of those agreements would reveal that, in addition to charges arising from the "bilateral" broker-provider conspiracies with which defendants are charged, the government's cooperators also pled guilty to antitrust conspiracy charges. Because defendants have not been charged with participation in an antitrust conspiracy, mention of the fact that the cooperators admitted to committing antitrust offenses threatens to unfairly prejudice the defendants and confuse the issues for the jury by putting this other, uncharged type of criminal wrongdoing into the mix at trial. Because the government does not need to mention the particulars of the additional conspiracy charges covered by the cooperators' guilty pleas, use of the term "antitrust conspiracy" to describe those charges should be prohibited pursuant to Rule 403.

Specific mention of the witnesses' "antitrust conspiracy" guilty pleas is likely to confuse the issues and to unfairly prejudice the defendants. If the jury is told that the government's witnesses have admitted that they were involved in both the type of conspiracy with which defendants are actually charged and an antitrust conspiracy, there is an unacceptable risk that the jury will infer that the defendants, too, were involved in a broader, more far-reaching conspiracy than that with which they are charged—especially if the jury also is permitted to consider the type of antitrust evidence defendants have moved to exclude, such as the GE compliance materials and the conversations between Grimm and Goldberg.

The jury may well assume that the "bilateral" conspiracies at issue in this case are necessarily tied to a larger web of criminality. The problem is exacerbated by the fact that the structure of the uncharged antitrust conspiracy is intuitively easier for the jury to grasp, given the complex dynamics of the GIC bidding process; once the specter of an antitrust conspiracy is introduced into the case, the jury's focus may well gravitate to that more readily understood—but uncharged—conduct. Rule 403 guards against just this type of situation; it is aimed at ensuring that the jury does not reach the conclusion that a defendant is guilty on any basis other than proof of the specific offense with which he is charged.

The government does not need to use the term "antitrust conspiracy" in order to fairly describe the cooperators' plea agreements for the jury. Instead, it can easily elicit testimony to the same effect by focusing on the fact that the cooperators pled guilty to the conspiracies with which the defendants are charged and also to other conspiracy charges. Any potential value to be gained by invoking the cooperating witnesses' "antitrust conspiracy" guilty pleas is therefore diminished by the fact that the same substantive point—that they pled guilty to multiple charges of conspiracy—can readily be made by other means. See, e.g., United States v. Massino, 546 F.3d 123, 133 (2d Cir. 2008). In fact, the rationale behind disclosure of cooperating witnesses' plea agreements is generally to provide the defense with a basis for impeaching the credibility of those witnesses on cross-examination. See California v. Trombetta, 467 U.S. 479, 485 (1984) (citing Giglio v. United States, 405 U.S. 150 (1972)). While the government will often introduce the subject of a witness's plea agreement on direct examination in order to take the sting out of the defense's cross-examination on the subject, if, as here, it is the defense that seeks to avoid prejudice by precluding mention of certain particulars of the agreement, the government will be

O'MELVENY & MYERS LLP

The Honorable Baer, Jr., April 9, 2012 - Page 5

put at no disadvantage if it must refrain from eliciting those prejudicial details on direct examination. Given the substantial risk of undue prejudice to the defendants and confusion of the issues, the government should be precluded under Rule 403 from describing the other conspiracies to which its witnesses pled guilty as "antitrust" violations.

## CONCLUSION

For the foregoing reasons, defendants Grimm and Carollo respectfully request, pursuant to Federal Rule of Evidence 403, that the Court exclude from evidence the GE antitrust compliance materials and preclude its witnesses from referring to the "antitrust conspiracy" included in their guilty pleas and cooperation agreements.

Respectfully submitted,

Howard E. Heiss
of O'MELVENY & MYERS LLP


cc:     Counsel of Record (via e-mail)