UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

DOMINICK P. CAROLLO,
STEVEN E. GOLDBERG, and
PETER S. GRIMM,

      Defendants.

S1 10-CR-654 (HB)

---

# MEMORANDUM OF LAW IN SUPPORT OF DOMINICK CAROLLO'S MOTION FOR JUDGMENT OF ACQUITTAL

---

Walter F. Timpone
Michael B. Devins
Walter R. Krzastek
**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07960
(973) 993-8100

James Ross Smart
**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
30 Jelliff Lane
Southport, CT 06890
(203) 319-4000

*Attorneys for Defendant, Dominick Carollo*

## TABLE OF CONTENTS

ARGUMENT ........................................................................................................................1

   I.   THE INDICTMENT WAS UNTIMELY BECAUSE MR. CAROLLO WITHDREW FROM THE CHARGED CONSPIRACIES BEFORE JULY 27, 2004 .. 1

   II.   THE EVIDENCE PRESENTED AGAINST MR. CAROLLO IS INSUFFICIENT TO SUSTAIN A CONVICTION. ................................................................................ 6

      Count I – CDR/FGIC Conspiracy ................................................................................ 7

      Count II – IMAGE/FGIC Conspiracy ........................................................................ 8

CONCLUSION ................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*United States v. Carneglia*, 403 Fed. Appx. 581, 585-86, 2010 WL 5129122 (2d Cir., Dec. 17, 2010) .................................................................................................... 2, 4

*United States v. Goldberg*, 401 F.2d 644 (2d Cir. 1968) .............................................. passim

*United States v. Greenfield*, 44 F.3d 1141, 1150 (2d Cir. 1995) .......................................... 2

*United States v. Grunewald*, 353 U.S. 391, 396-97 (1957) ................................................. 5

*United States v. Nerlinger*, 862 F.2d 967 (2d Cir. 1988) .................................................... 3

*United States v. Roshko*, 969 F.2d 1, 8 (2d Cir. 1992) ....................................................... 5

*United States v. Salerno*, 868 F.2d 524, 534 n. 4 (2d Cir. 1989) ........................................ 2

*United States v. Salmonese*, 352 F.3d 608, 615-16 (2d Cir. 2003) .................................... 5

*United States v. U.S. Gypsum, Co.*, 438 U.S. 422, 464 (1978) ....................................... 2, 4

**Rules**

Fed. R. of Crim. P. 29 .................................................................................................. 1, 5, 6

## ARGUMENT

Defendant Dominick Carollo respectfully submits this memorandum of law in support of his motion for a judgment of acquittal on all counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Mr. Carollo is entitled to a judgment of acquittal because, as a matter of law, he withdrew from the charged FGIC-centric conspiracies outside the limitations period and because the government failed to present sufficient evidence against Mr. Carollo to sustain a conviction on the charged conspiracies.

### I. THE INDICTMENT WAS UNTIMELY BECAUSE MR. CAROLLO WITHDREW FROM THE CHARGED CONSPIRACIES BEFORE JULY 27, 2004

Following the Court's dismissal of Count III, Mr. Carollo remained charged with participating in two separate and distinct bilateral conspiracies, each alleging an agreement between one specific GIC provider and a one specific GIC broker.[1] As the Court instructed the jury, "[t]he first element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that there was an unlawful agreement between the particular provider and the particular broker as charged in each separate count. This means that the government must prove that there was a mutual agreement [involving ...] the respective corporate provider and broker ... to cooperate with each other to accomplish the objective of each charged conspiracy." Trial Transcript (Tr.) 3222. In particular, Mr. Carollo is alleged to have conspired with the GIC brokers CDR (Count I) and IMAGE (Count II) to defraud issuers and the IRS *for the benefit of his employer, FGIC*. As defendants' joint motion explains (at 3), the wire fraud

---

[1] Indeed, the government told the Court before trial that "each of the charged conspiracies consists of a *separate* criminal agreement *between a particular provider that employed Defendants and a particular broker* to defraud the issuers and the IRS using that broker to control and manipulate the bidding" for GICs. (Government's Memorandum of Law in Opposition to Defendants' Pretrial Motions, at 19) (emphasis added).

and *Klein* conspiracies alleged in Counts I and II have a five-year and six-year statute of limitations, respectively. The Indictment was returned on July 27, 2010. The prosecution is thus untimely if no overt act in furtherance of the conspiracy is proven on or after *July 27, 2004*. The government has not proven such acts; it could not because the undisputed evidence demonstrates that Mr. Carollo withdrew from the alleged conspiracy well before July 27, 2004.

It is well-settled that the statute of limitations as to a particular conspirator begins to run once he "withdraw[s] from the conspiracy." *United States v. Salerno*, 868 F.2d 524, 534 n. 4 (2d Cir. 1989). A person withdraws from a conspiracy by taking some affirmative step to terminate or abandon his participation in the alleged conspiracy. This can be accomplished by "putting himself in a position where he could not participate in the conspiracy; or by doing acts which are inconsistent with the objects of the conspiracy." *United States v. Carneglia*, 403 Fed. Appx. 581, 585-86, 2010 WL 5129122 (2d Cir., Dec. 17, 2010). The courts have emphasized that no particular action is required to effect withdrawal. *See United States v. U.S. Gypsum, Co.*, 438 U.S. 422, 464 (1978). For example, the standard does "not compel a conspirator to inform on his or her co-conspirators or to warn-off possible victims, admirable as those actions might be." *United States v. Greenfield*, 44 F.3d 1141, 1150 (2d Cir. 1995).

Termination of employment from a company allegedly involved with a conspiracy coupled with an absence of proof of any subsequent acts in furtherance of the conspiracy has been repeatedly found to constitute valid withdrawal. In *United States v. Goldberg*, 401 F.2d 644 (2d Cir. 1968), for example, one defendant, Scheftel, resigned from the company more than five years prior to the indictment being issued against him, and therefore outside of the statute of limitations. *Id.* at 648. During his employment, Scheftel provided customers with fraudulent information to induce them to purchase stock in essentially worthless companies. *Id.* The

government argued that even though Scheftel resigned, he left behind lead cards which the government characterized as a "time bomb" waiting to do their damage. *Id.* Because damage from these lead cards occurred after Scheftel's resignation and within the limitations period, the government contended that the indictment was timely. *Id.* The Second Circuit, however, rejected this argument and found that Scheftel had effectively withdrawn from the conspiracy and was entitled to an acquittal as a matter of law. *Id.* at 649; *see also United States v. Nerlinger*, 862 F.2d 967 (2d Cir. 1988) (resignation plus actions that "disabled [defendant] from further participation" in the conspiracy established withdrawal).

Similarly, Mr. Carollo's "withdrawal from the conspiracy months prior to [July 27, 2004], entitle[s] him to an acquittal under the statute of limitations as a matter of law." *Goldberg*, 401 F.2d at 649. The evidence at trial established beyond dispute that Mr. Carollo withdrew from the charged conspiracies in November 2002 as he stopped working for FGIC and thereafter committed acts inconsistent with the objects of the alleged conspiracy – *i.e.*, he directly competed in the GIC marketplace against FGIC's interests. *See* DC-DX 40 (FGIC email announcing Mr. Carollo's departure on November 8, 2002) and DC-DX 30A (FINRA registry form showing Mr. Carollo's RBC dates of employment, from July 2003 to July 2007). For example, GIC broker, Stewart Wolmark, testified that Mr. Carollo was a direct competitor of FGIC after he left it and began to work for Royal Bank of Canada ("RBC").[2]

The record also demonstrates that while its GIC operation was run by Mr. Carollo, RBC successfully competed in the GIC marketplace against FGIC. As set forth on the CDR Deal List,

---

[2] Tr. 1619-20 ("Q. Now, let's turn, if we could, to your testimony concerning RBC. You testified that Mr. Carollo left FGIC and went to work at RBC, right? A. Yes, I did. Q. The time period, Mr. Carollo left FGIC about November 8, 2002, and he started at RBC about July 18, 2003. Does that sound right? A. Yes. Q. And Mr. Carollo went to RBC to start up a GIC desk, didn't he? A. Yes. Q. And he competed -- RBC competed in the GIC marketplace against other GIC providers like FGIC, didn't it? A. Yes.").

1799431_2

3

RBC won 14 GIC transactions bid out by CDR *after* Mr. Carollo began work at RBC. *See* DC-DX-01 at pp. 1-8 (CDR Deal List). The evidence at trial from FGIC's own internal database shows that RBC won 41 additional transactions on which FGIC bid. *See* DC-DX-42 (FGIC Deal List). Indeed, FGIC was RBC's cover (*i.e.*, the second place bidder) on at least three of those transactions, and RBC was the second place bidder on fifteen further transactions. *Id.*

By starting up a GIC desk at RBC and directly competing against FGIC, Mr. Carollo clearly communicated to his alleged co-conspirators and the entire GIC marketplace that he was no longer acting for the benefit of FGIC. In fact, he was openly acting *against* the interests of FGIC -- so much so that Mr. Carollo's successor at FGIC, Shailesh Shah, sent Mr. Carollo a warning letter cautioning him against using FGIC's confidential information in order to quell his competitive threat. *See* DC-DX-24 (Nov. 13, 2003 letter from Shah to Carollo) and DC-DX-40 (FGIC organizational announcement). FGIC's own internal deal tracking database even identified RBC as a "competitor" during Mr. Carollo's tenure at RBC. *See* DC-DX-27A.

Simply put, the record establishes beyond controversy that Mr. Carollo "put[] himself in a position where he could not participate in the conspiracy [and] d[id] acts which [we]re inconsistent with the objects of the conspiracy." *Carneglia*, 403 Fed. Appx. at 585-86, 2010 WL 5129122. And "[t]here is no question that his [alleged] co-conspirators knew of his withdrawal from [FGIC's] operations." *Goldberg*, 401 F.2d at 648; *cf. US Gypsum Co.*, 438 U.S. at 464 (resumption of competitive activity constitutes "[a]ffirmative acts inconsistent with the object of the conspiracy [to fix prices and restrain trade] and communicated in a manner reasonably calculated to reach coconspirators").

The government failed to submit evidence to rebut Mr. Carollo's withdrawal or otherwise show that Mr. Carollo took any actions in furtherance of the charged FGIC-centric conspiracies

1799431_2

4

after he stopped working for FGIC in November 2002. At most, the government argued that Mr. Carollo's participation in the FGIC-CDR conspiracy continued because his post-FGIC employer, RBC, entered into a swap transaction with FSA that caused a brokerage commission to be paid to CDR. *See* Tr. 3190. However, the RBC-FSA swaps (which were approved by Mr. Carollo's superiors at RBC, Tr. 1622) were not in furtherance of the charged FGIC-CDR conspiracy. That activity had nothing to do with FGIC and did not benefit FGIC in any manner.

Indeed, the RBC-FSA swap cited by the government was completely outside the scope of the alleged FGIC-centric conspiracies. The "scope of the conspiratorial agreement ... determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *United States v. Grunewald*, 353 U.S. 391, 396-97 (1957). Here, it was an essential element of the charged conspiracies that they involve "an unlawful agreement between the particular provider [*i.e.*, FGIC] and the particular broker as charged in each separate Count." Tr. 3222. The pleaded purpose of the conspiracies against Mr. Carollo was to benefit his employer, FGIC. *See* Superseding Indictment, ¶¶ 21, 29. Thus, even accepting the government's position that Mr. Carollo (while he was at RBC) engaged in concerted activity with Mr. Goldberg (while he was at FSA), such actions were clearly not within the scope of the charged conspiratorial agreement and "were not in furtherance of the conspiracy's pleaded purpose." *United States v. Salmonese*, 352 F.3d 608, 615-16 (2d Cir. 2003) (citing *United States v. Roshko*, 969 F.2d 1, 8 (2d Cir. 1992)). While the evidence of those actions was undoubtedly confusing to the jury, those actions are irrelevant for statute of limitations purposes as a matter of law. Indeed, the government's purported rebuttal evidence could possibly be relevant to Mr. Carollo's withdrawal defense only if the case involved a single,

overarching conspiracy rather than the specific, narrow bilateral conspiracies actually charged. Thus, an obvious problem of multiplicity would inhere if the rebuttal evidence were credited.[3]

Moreover, the cited RBC-FSA swaps took place well *before* July 27, 2004. *See* GX 74-12 (MOHEFA – August 26, 2003) and GX 74-10 (West Virginia Water – October 23, 2003). Consequently, these swaps – even if they could somehow constitute acts in furtherance of the charged FGIC-CDR conspiracy – were not within the limitations period in any event.

In short, in light of the framing of the charges and the applicable law regarding those charges, the evidence provided no basis for a reasonable conclusion that Mr. Carollo remained involved in the charged conspiracies during the limitations period. Consequently, Count I fails as a matter of law.

As for Count II, the government has not even tried to argue that Mr. Carollo committed any acts in furtherance of the alleged FGIC-IMAGE conspiracy after Mr. Carollo stopped work for FGIC and began to openly compete against it through his work at RBC. In fact, the government presented no evidence that Mr. Carollo even interacted with IMAGE after leaving FGIC. Thus, Count II also fails as a matter of law.

## II. THE EVIDENCE PRESENTED AGAINST MR. CAROLLO IS INSUFFICIENT TO SUSTAIN A CONVICTION.

Mr. Carollo is also entitled to a judgment of acquittal because the government generally failed to present sufficient evidence against him to sustain a conviction. Fed. R. of Crim. P. 29. As the Court instructed the jury, "guilt or nonguilt is personal and individual" and "must be determined separately and with respect to that defendant solely on the evidence or lack of evidence presented." Tr. 3211. It is not sufficient for the government to merely show that a

---

[3] If the Court denies the instant motion, Mr. Carollo, in the alternative, joins in and adopts co-defendants' motion to vacate the convictions on the grounds of multiplicity.

1799431_2

6

defendant associated "with another member of the alleged conspiracy" as "[a] person may know, work with or enter into business or friendship with a criminal without being a criminal himself." Tr. 3232. Instead, to satisfy its burden, the government must present evidence that each defendant "engaged or participated in the fraudulent scheme with an understanding of its fraudulent or deceptive character and with an intention to be involved in the scheme and to help it succeed for the purpose of causing actual financial or property harm to the issuers" and/or the IRS. Tr. 3230. Here, the government failed to present such individualized evidence against Mr. Carollo for a rational trier of fact to find him guilty beyond a reasonable doubt.

### Count I – CDR/FGIC Conspiracy

The government presented six cooperating witnesses on this count (Doug Goldberg, Dani Naeh, Matthew Rothman, Evan Zarefsky, Mark Zaino, and Stewart Wolmark). Five of the six cooperating witnesses had little to no dealings with Mr. Carollo. The sixth cooperating witness, Stewart Wolmark, testified that:

- Mr. Carollo did not participate in the bidding of any of the CDR featured deals;
- It was normal for Mr. Carollo to not be involved in bidding deals; and
- Mr. Carollo was busy with other responsibilities and difficult to get in touch with.

Tr. 1604-06. As for the audio evidence, the government played only three calls involving Mr. Carollo on this count (GX 6883, GX 565654, GX 573977). Only one of these calls, GX 573977, was between Mr. Carollo and any CDR representative. That call lasted a mere one minute and nine seconds. Tr. 1609. On the call, Mr. Wolmark tries to take credit for Peter Grimm winning the featured St. Louis Pharmacy deal. During cross-examination, Mr. Wolmark conceded that Mr. Carollo was not involved in the St. Louis Pharmacy transaction and that he did not give Mr. Carollo any details about the transaction or the bidding. Tr. 1608. Mr. Wolmark also conceded

that CDR's business with FGIC "soon died down" after this call and that he "seldom spoke" with Mr. Carollo. Tr. 1609-10.

Mr. Wolmark also testified that he complained to Mr. Carollo about the lack of swap business, but Mr. Carollo provided no firm commitments. At most, Mr. Carollo repeated what Mr. Grimm told Mr. Wolmark on GX 565654 that FGIC would give CDR the opportunity to broker swaps when the need arose. Tr. 1613. In fact, Mr. Wolmark had no recollection of the amount of swap business received from FGIC. Tr. 1611.

Finally, the government played an audio recording between Mr. Grimm and Mr. Carollo related to a non-featured Massachusetts Development Finance Authority deal. GX 6883. In that call, Mr. Grimm speculates that CDR is looking to get paid more than its customary five basis point brokerage commission on the deal. Mr. Carollo responds that he was unaware of CDR's expectations and asks Mr. Grimm whether Mr. Wolmark made such a request. Mr. Grimm replies that he did not. In any event, FGIC did not win the deal in question and did not pay CDR anything related to it. Tr. 1615-16. In fact, there was not even any evidence that FGIC tried to win the deal. Thus, this phone call and non-featured deal – while potentially confusing the jury – did not evidence a conspiratorial agreement or fraudulent intent.

The government thus failed to present sufficient evidence that Mr. Carollo entered into a conspiratorial agreement with CDR to defraud issuers and the IRS for the benefit of FGIC or that he had a specific intent to effectuate the alleged objects of the conspiracy. Consequently, Mr. Carollo is entitled to a judgment of acquittal on Count I.

### Count II – IMAGE/FGIC Conspiracy

The government presented no cooperating witnesses on this count. Instead, they introduced audio recordings related to four IMAGE transactions without supporting testimony.

Mr. Carollo does not speak with an IMAGE representative on any of these audio recordings. In fact, there is no evidence he participated in or even knew about three of the four featured deals.

The fourth deal, the Puerto Rico Highway and Transportation Authority Deal, was bid "out to the world." GX 589514. IMAGE showed the deal to 17 providers and received 12 bids and 5 passes. FGIC won the deal by outbidding this large pool of competitors and paying an aggressive rate well-above its initial indication. During pre-bid calls, Mr. Carollo is advised that FGIC may receive a last look, but the audio recordings only show that IMAGE pushes Mr. Goldberg's bid higher without revealing any competitors' bids. GX 589529. There was simply no evidence that Mr. Carollo intended to defraud the issuer or that the issuer was defrauded in any way by the bidding conduct.

The government thus failed to present sufficient evidence against Mr. Carollo to show that he entered into a conspiratorial agreement with IMAGE to defraud issuers or the IRS for the benefit of FGIC or that he had a specific intent to effectuate the alleged objects of the conspiracy. Consequently, Mr. Carollo is entitled to a judgment of acquittal on Count II.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion for a judgment of acquittal.

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

By: *Walter F. Timpone*
Walter F. Timpone, Esq.
1300 Mount Kemble Avenue
Morristown, New Jersey 07962
(973) 993-8100

*Attorneys for Defendant Dominick Carollo*

Dated: July 13, 2012

1799431_2

9

## CERTIFICATE OF SERVICE

I, Walter F. Timpone, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Mr. Carollo's Motion for Judgment of Acquittal was served on all parties of record this 13th day of July, 2012 by the Court's ECF system on the following:

| | |
|---|---|
| Antonia Hill, Esq.<br>**U.S. DEPARTMENT OF JUSTICE,<br>ANTITRUST DIVISION**<br>26 Federal Plaza, Room 3630<br>New York, New York 10278 | Steven Tugander, Esq.<br>**U.S. DEPARTMENT OF JUSTICE,<br>ANTITRUST DIVISION**<br>26 Federal Plaza, Room 3630<br>New York, New York 10278 |
| Kevin B. Hart, Esq.<br>**U.S. DEPARTMENT OF JUSTICE,<br>ANTITRUST DIVISION**<br>26 Federal Plaza, Room 3630<br>New York, New York 10278 | Wendy Wei-Wenne Huang Waszmer<br>**U.S. ATTORNEY'S OFFICE,<br>SOUTHERN DISTRICT OF NEW YORK**<br>86 Chambers Street<br>New York, NY 10007 |

*/s/ Walter F. Timpone*
Walter F. Timpone