UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

DOMINICK P. CAROLLO,
STEVEN E. GOLDBERG, and
PETER S. GRIMM,

      Defendants.

: S1 10-CR-654 (HB)

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DOMINICK CAROLLO'S RULE 29 MOTION FOR A JUDGMENT OF ACQUITTAL

Walter F. Timpone
Michael B. Devins
Walter R. Krzastek
**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07960
(973) 993-8100

James Ross Smart
**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
30 Jelliff Lane
Southport, CT 06890
(203) 319-4000

*Attorneys for Defendant, Dominick Carollo*

# TABLE OF AUTHORITIES

**Cases**

*Radiation Dyn., Inc. v. Goldmuntz*, 464 F.2d 876 (2d Cir. 1972) .................................2

*U.S. v. Goldberg*, 401 F.2d 644 (2d Cir. 1968) ................................................2, 3

*U.S. v. Greenfield*, 44 F.3d 1141 (2d Cir. 1995) ...............................................2

*U.S. v. Nelson*, 277 F.3d 164 (2d Cir. 2002) ....................................................2

The government's arguments against Carollo's motion for a judgment of acquittal fail for at least the following five reasons.

*First*, the government fails to address vital aspects of Carollo's argument. The government claims that the jury reasonably concluded he had not withdrawn from the GE conspiracies because he failed to present evidence of "positive action to disavow or defeat the conspiracies' objectives." Gov. Br. 32. To support this claim, the government reduces Carollo's argument to the passive assertion that "his employment with GE had been terminated and RBC had given him a job," *id.* 31, entirely ignoring Carollo's uncontroverted evidence of direct and open competition against GE. *See* Car. Br. 3-4.[1] The government's silence here speaks volumes.

It is uncontested that "acts which are inconsistent with the objects of the conspiracy [accompanied by] reasonable efforts to communicate those acts to . . . co-conspirators" establish withdrawal, as the Court instructed. Tr. 3239. Significantly, in the government's own words, "the distinct goal of each charged conspiracy was for a particular broker to steer deals to a *particular provider.*" Gov. Br. 37 (emph. added). Therefore, Carollo's undisputed evidence of competition in the GIC market *against* GE – the "particular provider" in Counts One and Two – clearly demonstrates affirmative action inconsistent with the objects of the charged conspiracies. The government has no answer to this proof of withdrawal.

*Second*, the government's explanation of the verdict depends on rank speculation: Carollo "likely" highlighted his past work with CDR and Image to impress RBC, "could have" used the GE contracts to gain business, and "would not" disavow the conspiracies for fear of disrepute. Gov. Br. 34-36. Such conjecture confirms that no rational jury could find that Carollo

---

[1] Carollo's motion papers discussed the following evidence, for example: Tr. 1619-20 (Wolmark, on cross, testifying that Carollo became a direct competitor of FGIC); DC-DX 42 (FGIC's own Deal List, showing that RBC, under Carollo, beat out FGIC on many deals); DC-DX 01 (CDR Deal List, showing that RBC won numerous CDR deals); DC-DX 27A (FGIC's database, identifying RBC as a "competitor"); DC-DX 24 (letter from FGIC cautioning Carollo against using FGIC's confidential information at RBC).

remained in the GE conspiracies. *See U.S. v. Nelson*, 277 F.3d 164, 217 (2d Cir. 2002) (Parker, J., dissenting and concurring) (quoting *Radiation Dyn., Inc. v. Goldmuntz*, 464 F.2d 876, 887 (2d Cir. 1972) ("it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture")).

*Third*, the government relies upon improper use of the evidence of the RBC-FSA swaps. The government contends that this evidence "demonstrates that . . . [Carollo] *could have* . . . participated in the GE conspiracies" after he left GE. Gov. Br. 34 (emph. added). However, there was *no* evidence that he actually did so. Indeed, the swaps were admitted as to the FSA-centric charges against Goldberg, alone: the Court instructed that the jury "may consider evidence relating to Mr. Goldberg's conduct with the broker CDR and IMAGE after he went to work at FSA *solely* with respect to Goldberg as alleged in Count Five and Count Six." Tr. 1322 (emph. added). The fact that the government nevertheless now suggests that the jury used this evidence against Carollo, as proof of his propensity to commit the crimes actually charged, reveals the lack of merit in the government's position.

*Fourth*, the government misconstrues the relevant law. The government relies on the absence of evidence that Carollo "took any action to unwind the rigged contracts or to prevent the ongoing harm to" municipalities. *Id.* 33. However, there is no such requirement: the test for withdrawal does "not . . . compel a conspirator to inform on his or her co-conspirators or to warn-off possible victims, admirable as those actions might be." *U.S. v. Greenfield*, 44 F.3d 1141, 1150 (2d Cir. 1995). Under the correct standard, the evidence established as a matter of law that Carollo withdrew from the conspiracy by competing against GE in the GIC market in a manner that became known to his alleged conspirators. *See, e.g.*, DC-DX 24, 27A.

*Fifth*, the government's efforts to distinguish *U.S. v. Goldberg*, 401 F.2d 644 (2d Cir.

2

1968), are ineffectual. The government argues the case is inapplicable because Carollo's termination precluded a jury finding that he had "abandoned the illegal enterprise 'in a manner reasonably calculated to reach his co-conspirators.'" Gov. Br. 35 (quoting 401 F.2d at 649). However, the record contains no evidence that GE terminated Carollo, only an internal GE email explaining that he "decided to pursue other career opportunities." DC-DX 40. In any event, termination, as opposed to resignation, makes no difference: Carollo did not simply separate from GE; he competed against it, thereby acting against the goals of the alleged GE conspiracies.

The government also asserts that *Goldberg* is inapplicable because the Court rejected the "time bomb" analogy on a basis supposedly absent here: because defendant's conspiratorial acts "had reached fruition at the time the defendant abandoned the illegal enterprise." Gov. Br. 35. However, this is a misreading of the holding. The Court found withdrawal primarily on the grounds that the "[t]he 'lead cards' which the government contend[ed] the defendant left behind 'to do their destructive work' within the statutory period," did not remain "within his effective control." 401 F.2d at 649. So too here: Carollo began competing against GE, acting affirmatively against the conspiracies' objectives, and the supposed conspiratorial acts thereafter, *i.e.*, the interest payments, were beyond his effective control. Accordingly, as in *Goldberg*, Carollo's "withdrawal from the conspiracy months prior to [the critical statutory date] entitle[s] him to an acquittal under the statute of limitations as a matter of law." *Id.* In the alternative, the applicable limitations statutes bar the charges because, as explained in defendants' joint brief, the interest payments after Carollo's departure did not constitute acts in furtherance of the charged conspiracies.[2]

The Court should grant Carollo a judgment of acquittal.

---

[2] A judgment of acquittal is also warranted because of the insufficiency of the evidence against him. We respectfully reincorporate and rely upon the sufficiency arguments in our opening brief and in the joint reply.

3

Respectfully submitted:

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

By: /s/ Walter F. Timpone
Walter F. Timpone, Esq.
1300 Mount Kemble Avenue
Morristown, New Jersey 07962
(973) 993-8100

*Attorneys for Defendant Dominick Carollo*

Dated: September 12, 2012

4

## CERTIFICATE OF SERVICE

I, Walter F. Timpone, hereby certify that on this day, September 12, 2012, a copy of the foregoing document was filed electronically and served by mail on any party unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Walter F. Timpone*
Walter F. Timpone